Rev. 3/19

FILED ___ LODGED
___ RECEIVED

AUG 3 1 2022

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

Michael A Wood
_____
*Plaintiff's full name and prisoner number*

Plaintiff,

v.

_____

See Attached

_____
*Defendant's/defendants' full name(s)*

Defendant(s).

(If you cannot fit all of the defendants' names in the space provided, please write "see attached" in the space above and attach additional sheets of paper, as necessary, with the full list of names. The names listed here must be identical to those in Section II. Do not include addresses here. **Individuals whose names are not included in this section will not be considered defendants in this action.**)

Case No. ___2:22-cv-00636-DGE-DWC___
(leave blank – for court staff only)

### SECOND AMENDED
### PRISONER CIVIL RIGHTS
### COMPLAINT

Jury Demand?
☒ Yes
☐ No

## WARNINGS

1.    Do not use this form if you are challenging the validity of your criminal conviction or your criminal sentence. If you are challenging your conviction or sentence, or if you are seeking restoration of good-time credits that would shorten your sentence, you must file a Petition for Writ of Habeas Corpus. If you use this form to challenge your conviction or sentence, you risk having your claim dismissed. Separate forms are available for filing a habeas petition.

2.    Under the Prison Litigation Reform Act ("PLRA"), you are required to exhaust all remedies in your institution's grievance system that are available to you before filing suit. This generally means that you must file a grievance and, if it is denied, appeal it through all available levels of review. Your case may be dismissed if you fail to exhaust administrative remedies, unless the administrative grievance process was not "available" to you within the meaning of the PLRA. You are not required to plead or show that you have exhausted your claim in this complaint.

3.      Please review your complaint carefully before filing.  If your case is dismissed, it may affect your ability to file future civil actions while incarcerated without prepaying the full filing fee.  Under the PLRA, a prisoner who has had three or more civil actions or appeals dismissed as frivolous, malicious, or for failure to state a claim cannot file a new action without first paying the full filing fee, unless the prisoner is in imminent danger of serious bodily injury.

4.      Under Federal Rule of Civil Procedure 5.2, papers filed with the court, including exhibits or attachments to a complaint, may not contain certain information, which must be modified as follows:

| Do not include: | Instead, use: |
|---|---|
| • a full social security number | → the last four digits |
| • a full birth date | → the birth year |
| • the full name of a minor | → the minor's initials |
| • a complete financial account number | → the last four digits |

5.      You may, but do not need to, send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.  Any documents you submit *must relate directly to the claims you raise in this lawsuit.*  They will become part of the court record and *will not be returned to you.*

## I.      PLAINTIFF INFORMATION

WOOD   Michael A
Name (Last, First, MI)                                                    Aliases/Former Names

32370-086
Prisoner ID #

FDC SeaTac
Place of Detention

PO BOX 13900
Institutional Address

King   SeaTTle          WA              98198
County, City                        State           Zip Code

*Indicate your status:*

☒ Pretrial detainee                      ☐ Convicted and sentenced state prisoner
☐ Civilly committed detainee             ☐ Convicted and sentenced federal prisoner
☐ Immigration detainee

TRULINCS  32370086 - WOOD, MICHAEL - Unit: SET-D-B

---------------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/26/2022 08:59:20 PM

DEFENDENT INFORMATION

DEFENDENT # 1
MASON COUNTY SHERRIFFS OFFICE
322 N.3RD STREET
MASON SHELTON WA 98584

DEFENDENT # 2
ANDERSON NATHAN
MASON COUNTY SHERRIFF DEPUTY BADGE # 1420
322 N.3RD STREET
MASON SHELTON WAS 98584

DEFENDENT # 3
OGDEN
MASON COUNTY SHERRIFF DEPUTY
322 N.3RD STREET
MASON SHELTO WA 98584

DEFENDENT # 4
SIMMINGTON
MASON COUNTY SHERRIFF DEPUTY
322 N.3RD STREET
MASON SHELTON WA 98584

DEFENDENT # 5
HESLER
MASON COUNTY SHERRIFF DEPUTY
322 N.3RD STREET
MASON SHELTON WA 98584

DEFENDENT # 6
BREMERTON POLICE DEPARTMENT
1025 BURWELL STREET
KITSAP BREMERTON WA 98337

DEFENDENT # 7
GORANG BROCK
BREMERTON POLICE OFFICER BADGE # 456
1025 BURWELL STREET
KITSAP BREMERTON WA 98337

DEFENDENT # 8
GARLAND MARTIN BADGE # 430
BREMERTON POLICE OFFICER
1025 BURWELL STREET
KITSAP BREMERTON WA 98337

DEFENDENT # 9
MERITT M
BREMERTON POLICE DEPARTMENT
1025 BURWELL STREET
KITSAP BREMERTON WA 98337

Page 3

TRULINCS 32370086 - WOOD, MICHAEL - Unit: SET-D-B

-------------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/28/2022 03:15:13 PM

DEFENDENT # 10
LILJE M
US MARSHAL
700 STEWART STREET SUITE 9000
KING SEATTLE WA 98101

DEFENDENT # 11
DOE JOHN
US MARSHAL
700 STEWART STREET SUITE 2000
KING SEATTLE WA 98101

DEFENDENT # 12
BOP
FEDERAL BUREAU OF PRISONS

DEFENDENT # 13
POSALSKI KEVIN
FDC SEATAC NURSE
2425 S 200TH STREET
KING SEATTLE WA 98198

DEFENDENT # 14
CORLISS JAMES
FDC SEATAC NURSE
2425 S 200TH STREET
KING SEATTLE WA 98198

DEFENDENT # 15
DY MARIA LOUISA
FDC SEATAC MEDICAL DIRECTOR
2425 S 200TH STREET
KING SEATTLE WA 98198

DEFENDENT # 16
BUSSELL SCOTTIE
FDC SEATAC CLINICAL DIRECTOR
2425 S 200TH STREET
KING SEATTLE WA 98198

DEFENDENT # 17
JACQUEZ ISRAEL
FDC SEATAC WARDEN
2425 S 200TH STREET
KING SEATTLE WA 98198

DEFENDENT # 18
BOP
FEDERAL BUREAU OF PRISONS
320 FIRST STREET N.W
WASHINGTON DC 20534

page 4

TRULINCS 32370086 - WOOD, MICHAEL - Unit: SET-D-B

--------------------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/26/2022 07:17:31 PM

CLAIM # 1

1.1. 14TH AMENDMENT / FAILURE TO SUMMON MEDICAL AID
ANDERSON NATHAN
OGDEN
SIMMINGTON
HESLER
MASON COUNTY SHERIFFS OFFICE

1.2. 6-10-21 5:30 am at 4400 NE Hurd RD Tahuya WA where i was residing. A multi agency task force served a warrant.

1.3. Me and my friend Karl Portz were sitting at a campfire at the bottom of the property.

1.4. We heard my dogs crying as they were being shot and explosions coming from the top of the property.

1.5. It was impossible to know form the bottom of the property that the police were serving a warrant.

1.6. We took off running in fear to hide.

1.7. As i was running i ran into a bob wire fence that ran along a 100-150 ft cliff that led down to the Tahuya River.

1.8. I lost my balance and fell halfway down the cliff knocking myself unconscious and partially paralyzing myself.

1.9. At approximately 8:00 am i woke to deputy Anderson threatening " ill shoot you in your fucking face if you move".

1.10. I yelled back "dont shoot im hurt".

1.11. Then deputies Ogden, Simmington and Hesler made their way down the cliff to clear me of any weapons.

1.12. I told the deputies i was hurt and knocked unconcious and couldnt feel half my body.

1.13. Deputies yelled up to deputy Anderson that i was hurt and couldnt make it up the cliff.

1.14 Deputy Anderson told US Marshals Lilje , Doe and unknown task force members who were observing to find a rope.

1.15. Unknown task force member returned with a dog leash that was thrown down the cliff.

1.16. Deputy Anserson instructed deputies Ogden, Simmington and Hesler to tie it around my wrist.

1.17. Either deputy Ogden, Simmington or Hesler yelled back that i was hurt.

1.18. Deputy Anderson replied " Mike dont care about people so why should we care about him.

1.19. Deputies and unknown task force members linked hands and pulled me up the cliff by the dog leash.

1.20. As i was being pulled up something popped in my neck and shoulder causing alot of pain.

1.21. When i told the deputies . Deputy Anderson started to debate if i fell or was hiding with other deputies.

1.22. Once at the top of the cliff I was zip tied behind my back causing more pain.

1.23. I said i needed medical care

pags 5

TRULINCS 32370086 - WOOD, MICHAEL - Unit: SET-D-B

------------------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/26/2022 07:16:43 PM

1.24. I was told by deputy Hesler that id receive medical care once we got to the top of the property.

1.25. He said that there was no way that an ambulance could make it down to where we were unless it was 4-wheel drive.

1.26. That he didn't believe i could walk to the top of the property due to my injuries.

1.27. I was transported to the top of the property transferred over to officers Gorang, Garland and Meritts custody.

1.28. Hesler informed the officers that i needed medical attention.

1.29. Deputies Anderson, Ogden, Simmington and Hesler. Failed their constitutional duty under the 4th amendment and its objective reasonableness standard. To summon medical attention to any one injured during the act of arrest directly following

1.30. Deputies Anderson, Ogden , Simmington and Hesler could have fulfilled their constitutional obligation by immediately summoning medical aid or driving me directly to the hospital.

### INJURY

1.31. I suffered c-spine, brain, shoulder trauma when i fell. Further harm was caused when deputies Anderson, Ogden, Simmington and hessler failed to summon and or provide medical attention before moving me.

CLAIM # 2

2.1. EXCESSIVE USE OF FORCE
ANDERSON NATHAN
OGDEN
SIMMINGTON
HESLER
MASON COUNTY SHERRIFFS OFFICE


2.2. Deputies Anderson, ogden, Simmington and hesler used and illegal means of restraint.

2.3. The use of a dogleash tied around my wrist to restrain and pull me up the Cliff was unreasonable.

2.4. Deputies Anderson, Ogden, Simmington, Hesler and unknown task force members linked hands to pull me up the cliff by the dogleash.

2.5. I had been cleared of weapons and posed no threat to myself or others.

2.6. The only threat was of further injury should of been realized by any objective deputy. would of arose out of the use of force being used on me with injuries to pull me up the cliff.

### INJURY

2.7. Further harm to the injuries i sustained in the fall. Unwarranted pain when my neck and shoulder popped.

page 6

TRULINCS 32370086 - WOOD, MICHAEL - Unit: SET-D-B

--------------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/26/2022 07:15:49 PM

CLAIM # 3

3.1. 14TH AMENDMENT DELIBERATE INDIFFERENCE / SERIOUS MEDICAL NEEDS

ANDERSON NATHAN
OGDEN
SIMMINGTON
HESLER
MASON COUNTY SHERRIFFS OFFICE

3.2. Anderson, Ogden, Simmington and hesler made a intentional decision in not summoning medical aid.

3.3. Any objective deputy would've known to move some one with possible neck and head injuries would pose a serious risk of further harm.

3.4. Deputies Anderson, Ogden, Simmington and Hesler didnt take no precautions to provide support to my c-spine or to even access all possible injuries.

3.5. The were deliberate indifferent to my injuries, life. safety and health.

## INJURY

3.6. Further harm to the injuries i sustained when i fell.

CLAIM # 4

4.1. 1ST AMENDMENT  RETALIATION

ANDERSON NATHAN
OGDEN
SIMINGTON
HESLER
MASON COUNTY SHERRIFFS OFFICE

4.2. 2 months prior to my arrest. Someone had felony eluded the Mason County Sherriffs.

4.3. The person had led the sherriffs out to my property.

4.4 The person escaped the deputies by running down the same cliff i fell down.

4.5. The deputies had found my phone on the front seat of the vehicle.

4.6. Assuming i was the driver they had a grudge against me.

4.7. Giving some excuse for they're outrageous behavior and actions during my arrest.

4.8. The named deputies were present the day of the felony elude.

4.9. Mason County Sherriffs office should be held liable aswell through washington states vacarious liabilty rule.

TRULINCS 32370086 - WOOD, MICHAEL - Unit: SET-D-B

--------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/26/2022 07:19:10 PM

4.10. Mason County Sheriffs Office should of been aware that the deputies may act in a unprofessional manner.

4.11. Mason County Sheriffs office assigned the deputies to secure the area of the property where they knew i resided.

4.12. The only plausibility for the outrageous behavior and actions of deputies Anderson, Ogden, Simmington and Hesler was they were retaliating on me.

## INJURIES

4.13. The deputies actions caused further harm to the injuries i sustained during arrest.

CLAIM # 5

5.1. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

ANDERSON NATHAN
OGDEN
SIMMINGTON
HESLER
MASON COUNTY SHERRIFFS OFFICE

5.2. Anderson, Ogden, Simmington and Hesler acted with malicious intent and in a wanton and reckless manner.

5.3. Andersons threats of " ill shoot you in your fucking face". Cant be mistaken as giving a order to comply.

5.4. Anderson. Ogden, Simmington and Hesler acted with malice with the intent to cause or knowingly risk the possibility of causing great bodily harm.

5.5. The known intent is revealed when a deputies concern for my injuries was answered with " Mike don't care about people why should we care about him.

5.6. I was then pulled up with a dog leash with total disregard of my safety or life.

5.7. Even after i tried to stop them as they were pulling me up the cliff. They continued their actions.

5.8. Anderson, Ogden, Simmington and Hesler would've known as any objective officer would that their actions would cause emotional distress.

5.9. Actions and behavior that would shock the conscious of any reasonable person in the community.

## INJURY

5.10. PTSD, sleepless nights, nightmares I've had to seek out psychological help

page 8

TRULINCS  32370086 - WOOD, MICHAEL - Unit: SET-D-B

-----------------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/26/2022 07:21:23 PM

CLAIM # 6

6.1. FAILURE TO INTERVENE

LILJE M
DOE JOHN
UNKNOWN TASK FORCE MEMBERS

6.2. Marshals Lilje, Doe and unknown task force members would of been aware that the deputies were violating a clearly established right.

6.3. The marshals and unknown task force had plenty of time to intervene and summon medical aid and stop the deputies from tying a leash around my wrist to pull me up the cliff.

6.4. Lilje, Doe and unknown task force members should be just as liable as the deputies Anderson, Ogden, Simmington and Hesler.

6.5 For the excessive use of force and failure to summon medical aid.

INJURIES

6.6. further harm to injuries sustained in my fall.

CLAIM # 7

7.1. 14TH AMENDMENT / DELIBERATE INDIFFERENCE / SERIOUS MEDICAL NEEDS

GORANG BROCK
GARLAND MARTIN
MERITT A
BREMERTON POLICE DEPARTMENT

7.2. 8:30 AM i was place into officer Meritts patrol vehicle.

7.4. By officers Gorang, Garland and Meritt.

7.5. I said o needed medical attention. I asked the officers where the ambulance was at. i was told that it was on its way.

7.5. They read me my rights and said that they were going to ask a few questions and record the conversation.

7.6. I had to stop the officers after 5 minutes of the interview. The pain was to much from the zipties and my injuries from the fall off the cliff.

7.7. Either officer Gorang or Garland told officer meritt to remove the zip ties and cuff me in the front.

7.8. The pain from my injuries was making it to difficult for the officers to place me back in the rear of officer Meritts patrol vehicle.

7.9. So they took me to officer Gorangs vehicle and i was placed in the front seat. I asked again where the ambuylance was at.

7.10. Officer Gorang told me that i knew how far away it was to the nearest firestation and that it would take an emergency vehicle 40 minutes to make it down the DNR road i lived on.

Page 9

TRULINCS  32370086 - WOOD, MICHAEL - Unit: SET-D-B

---------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/26/2022 07:23:38 PM

7.11. Officer Garland jumped into the back seat and officer Gorang started driving down the dead end DNR road deeper into the rain forest.

7.12. I asked where we were going and i was informed some where quiet.

7.13. i was assured as soon as they were done asking questions id recieve medical attention.

7.14. About an hour , hour and 1/2 into the interview i remember being woke up by Gorang and Garland.

7.15. I was confused and didnt know what was going on. I was told by Gorang and Garland that i must be having a adrenaline crash.

7.16. I was questioned for another hour where i was in and out of conciousness.

7.17. I dont even remember what i was saying it wasnt making sense.

7.18. I said i need a Dr and was told that they would make sure the Marshals got me medical attention.

7.19. Telling me that it would be much faster that way. Cause of being out in the rain forest.

7.20. Gorang and Garland had to drive me all the way to the next town. Belfair to a safeway parking lot.

7.21. The Marshal had got tired of waiting and left.

7.22. At the Safeway parking lot Gorang and Garland informed Marshals Lilje and Doe that i still nedded to be seen.

7.23. The Marshals assured Gorang and Garland id recieve care at the US District Court House.

7.24. Officers Gorang and Garland were deliberatly indifferent to my serious medical needs.

7.25. They used my injuries and need for medical attention to creat an advantagous enviroment to try and get me to confess to a crime.

INJURIES

7.26. Further harm to the injuries i sustained during my arrest in denying me medical attention.

CLAIM # 8

8.1. 14TH AMENDMENT / DELIBERATE INDIFFERENCE / TO SERIOUS MEDICAL NEEDS

LILJE M
DOE JOHN

8.2. Once i was placed into the Marshals vehicle i was read my rights and placed under arrest for a probation violation warrant.

8.3. They told me they were recording the ride so they could ask me some questions.

8.4. I told them i needed medical attention and i was told id recieve it once we arrived at the US Court House.

8.5. They had to have me there to be arraigned by 2:00 pm.

page 10

TRULINCS 32370086 - WOOD, MICHAEL - Unit: SET-D-B

--------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/26/2022 07:26:53 PM

8.6. During processing after i was arraigned i asked Lilje and Doe again about recieving medical attention.

8.7. I was told now id have to wait till i was at the Federal Detention Center Seatac.

8.8. Lilje and Doe failed to provide me medical attention that is gauranteed by the constitution for serious medical needs.

INJURIES

8.9. Further harm due to denial of medical aid for the injuries i sustained during my arrest.

CLAIM # 9

9.1. 4TH AMENDMENT / MEDICAL ASSAULT AND BATTERY
LILJE M
DOE JOHN
POSALSKI KEVIN
BOP

9.2. 4:00 PM 6-21-22 I was being helped out of the US Marshals van by Lilje and Doe.

9.3. As i was being held up still fully shackled and cuffed nurse Posalski without explanation or consent assaulted me with the Covid-19 test Q-tip.

9.4. Not understanding what was going on i tried to pull away as he jammed the Q-tip up my nostril .

9.5. The Marshals then informed Posalski that i was injured during my arrest and needed medical attention. That id been knocked unconcious, sufferd neck trauma and injury to my left shoulder.

9.6. Posalski assured the Marshals id recieve medical attention from the DR during screening.

9.7. The force that was used caused me further pain and injury to my neck and also gave me a black eye.

9.8. I was not even in BOP custody Posalski assaulted me as i was still shakled in US Marshal custody with no way to protect myself.

9.9. Violating the informed consent doctrine.

INJURY

9.10. Further pain and harm to the injuries i sustained in the fall during my arrest and adding a black eye.

CLAIM # 10
10.1. 14TH AMENDMENT / DELIBERATE INDIFFERENCE / TO SERIOUS MEDICAL NEEDS

POSALSKI KEVIN
BOP

10.1. 4:00 pm 6-21-22 Nurse Posalski as a trained paramedic would've been aware of the need for medical attention.

10.2. Along with the risks posed if i was'nt ceared and evaluated by a qualified medical DR.

10.3. Posalski had me sent to quarantine without recieving medical attention.

10.4. Posalski knew that id have no access to health services once i was placed in isolation to be quarantined.

Page 11

TRULINCS  32370086 - WOOD, MICHAEL - Unit: SET-D-B

---------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-CV-636-DGE-DWC
DATE: 08/26/2022 07:25:30 PM

10.5. 11-17-21 I approached Posalski about my worsening condition and extreme pain.

10.6. I told him ive put in sick call requests almost dailey.

10.7. He told me he seen my requests and wouldnt read them past the word neck saying id been seen for that injury last 7-9-21.

10.8. I tried to explain that i was seen and told id have an appointment the following week of my 7-9-21. That it had never happend.

10.9. He told me if i wanted him to read my sick calls dont put the word neck in them.

10.10. I followed his avice and was still never seen.

10.11. 10-16-21 during pill line Posalski was standing with officer Abigano seen me in my wheelchair and asked what had happend.

10.12. Officer Abigano informed him i died 3 days ago and she had to provide narcan and chest compressions.

10.13. I said i had a stroke i had never used heroin.

10.14. He asked if officer Abigano had croke my sternum and i said my chest was bruised and hurt to be breath.

10.15. He then told officer Abigano to give him a high five. Abigano was reluctant but did so at Posalski's persistence.

10.16. Posalski faied to provide me medical attention when i was booked into the prison.

10.17. He showed his indifference with his response to my sick call requests.

10.18. His state of mind towards me was shown giving a high 5 after id just suffered a major traumatic medical emergency.

10.19. Posalski was indifferent to my seriouse medical needs. Delays in recieving treatment for my injuries.

INJURY

10.20. Further harm in delaying medical attention for the injuries i sustained during arrest. Further ongoing pain.

CLAIM # 11

11.1. 14TH AMENDMENT / DELIBERATE INDIFFERENCE / TO SERIOUS MEDICAL NEEDS

CORLISS JAMES
BOP

11.2. 6-17-21 nurse Corliss responded to a medical emergency called in by officer Roza of the quarantine unit to my cell.

11.3. Officer Roza had been trying to obtain medical attention for since i had arrived on 6-10-21.

11.4. My injuries id suffered during arrest had become unbearable i had blood in my urine and my kidney were in pain. my neck shoulder and other injuries had gotten so bad i couldnt get out of bed to eat.

11.5. I told Corliss i needed to go to the hospital.

TRULINCS  32370086 - WOOD, MICHAEL - Unit: SET-D-B

-------------------------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/26/2022 07:25:04 PM

11.6. Corliss informed me that he couldnt do nothing while i was in quarantine.

11.7. He said the most he could do was offer me a shot for the pain.

11.8. Corliss knew as a trained medical personal there was high risks of further harm if i wasnt seen by a medical doctor.

11.9. Corliss denied me medical attention i wasnt even positive for covid-19.

11.10. He knew id suffered traumatic injuries that needed attention. He was deliberately indifferent to my serious medical needs.

11.11. I wasnt seen for anothe month left with no access to medical care or further pain managment.

INJURY

11.12. Further harm to the injuries id sustained during my arrest. Left with unmanaged extreme pain.

CLAIM # 12

12.1. 14TH AMENDMENT / DELIBERATE INDIFFERENCE / TO SERIOUS MEDICAL NEEDS

DY MARIA LOUISA
BOP
12.2. 7-9-21 I was released from quarantine . I was given x-rays and they were gone over with DR Dy.

12.3. She explained that id suffered trauma to my entire c-spine from my fall during arrest.

12.4. Dy explained that id see a provider the following week to go over treatment options and possible surgery. Telling me that my provider would go over the rest of my injuries.

12.5. I told her i needed pain managment but i was allergic to opiates. So she perscribed me Ibuprophen. Saying that my provider would also go over pain managment.

12.6. I was never seen the following week by my provider.

12.7. I contacted Dy through the email sick call system atlest 50 time the following 3 months. About concerns of worsening condition and unbearable pain and not being seen by a provider.

12.8. Id even contacted the warden Jacquez, assistant warden Green and case manager Fernandez who all sent emails to medical requesting i be seen.

12.9. 10-13-21 I suffered a stroke from complications of my injuries i sustained in the fall uring my arrest.

12.10. When i was released from the ER DR Ian T schreiner of ST Mary's hospital.

12.11. Dr Ian T Schreiner ordered Dr Dy to follow up my conditions the following day without fail. Recommending that i see cardiologist and have a CAT and MRI that was refused to be done by DR Bussell from health services.

12.12. DR Schreiner also ordered that i be returned immediately if i had further symptoms.

TRULINCS  32370086 - WOOD, MICHAEL - Unit: SET-D-B

-------------------------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/26/2022 07:39:42 PM

12.13. I was never seen the followin day or returned to the hospital after suffering to more possible mini strokes on 11-1-21 and 11-2-21.

12.14. DR Dy failed to provide me treatment for my injuries, failed to follow up on wether i was ever seen by my provider, failed to follow Dr Schreiners orders and failed to respond to months of sick calls and emails from the institutions administrators.

12.15. Her deliberate indifference led to a stroke that almost killed me.

INJURY

12.16. Further harm to injuries id suffered in the fall during arrest. Loss of life and unmanaged pain.

CLAIM # 13

13.1. 14TH AMENDMENT / DELIBERATE INDIFFERENCE / TO SERIOUS MEDICAL NEEDS
BUSSELL SCOTTIE
BOP

13.2. During my medical emergency DR Bussell was contacted by DR Ian T Schreiner from ST Marys Hospital.

13.3. DR Ian T Schreiner recommended that i have a CAT and MRI done. With concerns of injuries id sustained on 6-10-21 and possibility of stroke.

13.4. DR Bussell refused the recommendations of the ER DR Schreiner.

13.5. Later revealed through medical records DR Bussells reasoning for refusing a CAT or MRI was he was entertaining that had an overdose.

13.6. Even though at the time DR Schreiner called Bussell the paramedics and drug tests showed there was no heroin in my system.

13.7. Bussell knew of the injuries i sustained during arrest and knew that i had not been fully assessed or treated for them.

13.8. As A medical doctor Bussell wouyldve known the need to follow DR SChreiners recommendations.

13.9. 10-26-21 Bussell was asked by the warden to see me about concerns of not recieving medical attention.

13.10. During his assesment he had to call an emergency for concerns of about to have another stroke.

13.11. He then diagnosed me as having a brain injury and spinal cord injury. Telling me the stroke was more than likely from high blood pressure HTN caused by the pressure on my spinal cord in my neck. From the injuries sustaine in my fall during arrest.

13.12. He then ordered a Cat and MRI to be done

13.13. Hospital lab resaults also showed that had in fact suffered a kidney injury that was in at that time stage 2 failure.

13.14. Bussell denied me standards of care he failed to follow recomendations of the ER DR with known to be false reasoning of me having an overdose.

INJURY

13.15. Further harm to injuries i sustained during my arrest and unmanaged pain and further harm in delays to recieving treatment.

Page 14

TRULINCS 32370086 - WOOD, MICHAEL - Unit: SET-D-B
------------------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/26/2022 07:29:14 PM

CLAIM # 14

14.1. 14TH AMENDMENT / DELIBERATE INDIFFERENCE / TO SERIOUS MEDICAL NEEDS
JACQUEZ ISRAEL
BOP

14.2. Warden Jacquez and the institutions administrators ahd all been made aware of my condition and the inadequate medical care i was recieving.

14.3. The awarness is shown by the multiple attempts made by himself and the institutions administrators that i recieve medical attention.

14.4. Along with his own personal knowledge when he and his staff seen me in the unit.

14.5. Warden Jacquez has been more than aware of health services not responding to medical conditions.

14.5. Jacquez was contacted by US Congressman Adam Smith and other house representatives investigating FDC Seatacs substandard medical care.

14.6. The warden is ultimately responsible for my over all care i recieve while in his institution.

14.7. Jacquez failed to follow up in wether i was recieving the care he requested from his medical staff. Even after i asked him in person through emails and grievences that i still wasnt recieving medical attention.

14.8 I explained that against policy i was booked into his institution for serious medical needs.

14.9. Even though he had actual knowledge that i wasnt recieving care in a request sent to him by US Congressman Derik Kilmer and ACLU Cherie Williams on 12-27-21 on my familys behalf.

14.10. Jacquez wrote a response to Congressman Kilmer and ACLU williams that i was recieving standards of care.

14.11. Jacquez knownly made a false claim that i was recieving care and failed to make sure that his requests to medical were being followed.

INJURY

14.12. Further harm to the injuries i sustained during arrest and further unmanaged pain from not recieving care.

CLAIM # 15

15.1. 1ST AMENDMENT / RETALIATION / DEFAMATION / CONSPIRACY
JACQUEZ ISRAEL
BUSSELL SCOTTIE
BOP

15.2. I had a stroke that was not only mishandled as a heroin overdose but covered up as well.

15.3. My attorneys contacted the attorney for the institution ?????? , DOJ and the prosecutors about my worsening condition from the injuries id sustained during my arrest and my stroke on 10-13-21

15.4. My girlfreind Carrie Mcconnell and my family started filling out online grievences with the institution, contacting the warden and US Congressman Derik KIlmer and ACLU Cherie Williams. About not recieving care for my injuries suffered during arrest or my stroke on 10-13-21.

Page 15

TRULINCS  32370086 - WOOD, MICHAEL - Unit: SET-D-B

--------------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/26/2022 07:40:26 PM

15.5. I started filing greivences with the institution, regional director, central office and bop director in Washington DC.

15.6. On 12-27-21 US Congressman Derik Kilmer and ACLU Cherie Williams sent a request to warden Jacquez asking that i recieve medical care for the injuries i sustained during my arrest on 6-10-21 and for my stroke on 10-13-21.

15.7. Warden Jacquez and DR Bussell wrote a response saying that i was recieving standards of care and that my claim of a stroke was a heroin overdose.

15.8. Supporting their response by bringing up that i have a previous medical history of drug abuse.

15.9. After my family, congress and aclu recieved the response. My brother stopped talking to me and offering financial support.

15.10. Congressman Derik Kilmer and ACLU Cherie Williams stopped their requesting and investigation into my medical care.

15.11. After hearing from the warden and medical they belived that i was in here using heroin.

15.12. I contacted the warden through the email system asking him to please write an apology to my family, congress and ACLU.

15.13. He refused to write a retracted statement.

15.14. The warden jacquez and Clinical Director Bussell knew with 100% certainty that there was no drugs in my system on the day of my stroke.

15.15. All drug test panels were negative and the paramedics when they arrived said there was no signs of a heroin overdose.

15.16. The warden also knew that i wasnt recieving standards of care. He had to contact the medical department on multiple occasions to try and get me medical attention.

15.17. I also told him i was relying on the investigation report from congress to use for pre-trial release and a medical departure. That his statment was going to affect my possible release.

15.18. The warden told me that his reesponse had nothing to do with my possible release and that if i continued to email him on the matter i would lose my email privledges.

15.19. I have continued to file grievences but the wardens office refuses to respond.

15.20. This was out of retaliation for contacting ACLU, CONGRESS, DOJ, REGION and filing grievences.

15.21. My last 2 grievences have been returned for untimliness without even being filed.

15.22. Jacquez and Bussell retaliated against me for exercising my 1st amendment rights.

15.23. Jacquez and Bussell knownly defamated my character with known false statements and accusations of heroin overdose

15.24. Jacquez and Bussell conspired to interfere with my 1st amendment and 14th amendment rights. To cover up the fact that they overdosed me on narcan and mishandled my stroke. Killing me that day.

15.25. Their interference denied me the possibility to recieve medical care and has affected my attempts to get a downward departure for being denied medical care.

INJURY

15.26. Loss of liberty, further harm to injuries sustained during arrest, delaying medical care and unmanaged extreme pain.

Page 16

TRULINCS 32370086 - WOOD, MICHAEL - Unit: SET-D-B

---------------------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/28/2022 03:13:56 PM

CLAIM # 16

16.1. LIABILTY CLAIM

BOP
JACQUEZ ISRAEL

16.2. March 26 2020 the Bureau Of Prisons and wraden for FDC Seatac implemented a policy called the Covid-19 Action Plan.

16.3. This policy took away my access to medical.

16.4. The policy took away the acess to medical through the sick call system.

16.5. Policy according to the BOP program statement requires that i had access to health services through the sick call system Monday - Friday 1st come 1st serve basis.

16.6. The BOP Action Plan gave the medical department the power to screen all sick calls and lable them as either emergent or non-emergent.

16.7. The BOP was supposed to hire more health service personell to beable to screen the excessive number of sick calls submitted during the Covid-19 pandemic.

16.8. FDC Seatac did not hire personell to handle the screening of sick calls being submitted.

16.9. The BOP and Warden Jacquez implemented a policy that relied on a sufficient number of qualified personell while the institution was grossly under staffed of officers and specially medical personell.

16.10. I have a right to recieve medical attention . my injuries and illnesses meet the serious medical needs standards.

16.11. FDC Seatacs sick calls were being screened by unqualified medical personell.

16.12. These personell did not have the medical schooling that would be required to make a sound medical decision on wether a sick call presented should be labled as emergent or non-emergent.

16.13. FDC Seatac were also using the same unqualified medical personell to do new admited detainees medical screening.

16.14. By constitution and BOP policy the medical intake screening is to be done by qualified medical personell.

16.15. Because of the placing of this unconstitutional policy i was admitted and booked into the prison prior to recieving medical attention for my serious injuries sustained during my arrest.

16.16. By being screened by nurse Posalski who was not qualified to assess my injuries .

16.17. I was placed into a isolation quarntine unit and cell with no access to medical or sick call.

16.18. Even after my condition got so bad over the 1st week of being quarantined officer roza had to call for a medical emergency.

16.19. Again because of the policy implemented by the BOP and Warden there was no stipulation put in place for my need to seek immediate medical attention.

16.20. Because of the BOP Covid-19 Action Plan i couldnt recieve attention while being quarantined even though i was tested and negative for Covid-19.

Page 17 .

TRULINCS  32370086 - WOOD, MICHAEL - Unit: SET-D-B

------------------------------------------------------------------------------------------------

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/28/2022 03:09:27 PM

16.21. The Covid-19 Action Plan implemented by the Bureau Of Prisons is directly responsible for being screened by unqualified medical staff that booked me into the prison against policy with serious injuries suffered during my arrest without prior medical clearance as required by law.

16.22. Then being quarantined in isolation with no medical access where my injuries progresses to the point i had blood in my urine and couldnt get up to eat.

16.23. The BOP and the Warden Jacquez are responsible for implementing a policy that violated my rights to medical causing further harm and ongoing pain.

### INJURY

16.24. Further harm to injuries sustained during my arrest loss of liberties and constitutional rights gauranteed by the UNITED STATES CONSTITUTION.

PAGe 18

## IV.    RELIEF

*State exactly what you want the Court to do for you. For example, you may be seeking money
damages from an individual defendant, you may want the Court to order a defendant to do
something or to stop doing something, or you may want both kinds of relief. Make no legal
arguments. Cite no cases or statutes.*

I AM seeking Monatary Damagas From All
Defennents and A Injunction Against BOP

"See Attached" "Page 18

## V.    SIGNATURE

*By signing this complaint, you represent to the Court that you believe the facts alleged to be true
to the best of your knowledge, that you believe those facts show a violation of law, and that you
are not filing this complaint to harass another person or for any other improper purpose.*

8-29-2022

Dated

Michael wooD

Plaintiff's Signature

page 19

TRULINCS  32370086 - WOOD, MICHAEL - Unit: SET-D-B

---

FROM: 32370086
TO: Ableman, Amber
SUBJECT: CASE # 2:22-cv-636-DGE-DWC
DATE: 08/28/2022 08:46:32 PM

GROUNDS FOR RELIEF

1.1. I suffered life changing traumatic injuries that have disabled me to a wheelchair and loss the use of my right shoulder. My kidneys are in stage 3 failure. The accumulation of all my injuries have rsulted in me having a stroke. i have had to seek out psycological help in dealing with the ptsd and fears presented from the lack of standards of care and on how to deal with the disabilities from my injuries.

RELIEF REQUESTED

1.2. $1,000,000 from each. The Mason County Sheriffs Department, Nathan Anderson, Ogden, Simmington and Hesler. For the failure to provide medical attention, use of force ,the illegal restraint with a dogleash,threats on my life and the intentional infliction of emotional distress.

1.3. $1,000,000  from the Bremerton police Department and $ 500,000 from each Bremerton Police Department officers Brock Gorang, Martin Garland and Meritt for failing to provide medical aid.

1.4. $500,000 from each of the US Marshals  Lilje and Doe John for failing to provide medical attention.

1.5. $10,000,000 from the Federal Bureau Of Prisons for violating constitutional rights and implementing policies that caused liberty injuries and denied me medical attention. Not providing access to health services through the sick call system. Not making provisions for being injured in quarantine to recieve medical attention.

1.6. $500,000 from Kevin Posalski for denying me medical care and assaulting me during the booking process.

1.7. $500,000 from James Corliss for denying me medical attention while i was in quarantine.

1.8. $1,000,000 from Maria Louisa Dy for failing to provide adequte medical care and failing to follow treating DR orders.

1.9. 1,500,000 from Scottie Bussell for failing to provide adequate medical care and failing to follow treating DR orders. For falsifying a medical response that was released to my family and congress that contained defamating and stigmatizing accusations that were known to be false. Delaying my medical care and the negative reflect on my sentencing.

1.10. $1,500,000 from Israel Jacquez for implementing policies that resulted in my denied medical treatment and for cconspiring with Scottie Bussell in the defamating and stigmatizing response that was sent to my family and refusing to retract this statement with full knowledge that the response was false. delaying my medical care and the negative impact it will have on my sentencing.

1.11. A injunction against the Bureau Of Prisons to recieve medical care to see a specialist for my kidney failure, to be seen by my neurologist with no further delays for my c-spine injury and brain trauma, physical therapy for my disabled shoulder, to see a cardiologist for my stroke and a retraction of my medical records and respons written to my family and congress with accusations of a heroin overdose.



Seattle P&DC 981
MON 29 AUG 2022 AM

Faparol Detention Center
Michael Wood
3350086 D-B
Po Box 13900
Seattle Wa 98198

Clerk United States District Court
United States Court House
1717 Pacific Ave Rm 3100
Tacoma Wa 98402- 3300

FILED _____ LODGED
_____ RECEIVED

AUG 31 2022

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                              DEPUTY