UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL A. WOOD,

                    Plaintiff,

        v.

UNITED STATES OF AMERICA, et
al.,

                    Defendants.

CASE NO. 2:22-CV-636-DGE-DWC

REPORT AND RECOMMENDATION

Noting Date: August 11, 2023

        This matter is before the Court on referral from the Honorable David G. Estudillo and

upon motions to dismiss by the following defendants: (1) the United States Bureau of Prisons

("BOP"), (2) John Westland and Matthew Lilje, individual defendants acting on behalf of the

U.S. Marshals Service ("USMS Defendants") and (3) the Mason County Sheriff's Office. Dkts.

33, 55, 70.[1]

--------

[1] The Court addresses a fourth motion to dismiss, filed by individual defendants employed by the Bureau
of Prisons ("Individual BOP Defendants") (Dkt. 57) and a motion to stay discovery by USMS Defendants and
Individual BOP Defendants (Dkt. 78) in a separate order.

1    For the reasons discussed below, the Court recommends

2    (1)    the BOP motion to dismiss (Dkt. 33) be granted-in-part and denied-in-part. The

3    Court recommends Plaintiff's *Bivens* claims for damages be dismissed; however, Plaintiff's

4    claims for injunctive relief against the BOP shall proceed;

5    (2)    the USMS Defendants' motion to dismiss (Dkt. 55) be granted and the USMS

6    Defendants be dismissed from this action; and

7    (3)    the Mason County Sheriff's Office motion to dismiss (Dkt. 70) be granted and the

8    Mason County Sheriff's Office be dismissed from this action.

9    **I. BACKGROUND**

10    1.    Allegations in Plaintiff's Second Amended Complaint

11    Plaintiff initiated this matter on May 7, 2022. Dkt. 1. After several orders identified

12    deficiencies in his prior complaints, Plaintiff filed his Second Amended Complaint on August

13    31, 2022. Dkt. 18. Plaintiff brings claims under 42 U.S.C. § 1983 and *Bivens v. Six Unknown*

14    *Federal Narcotics Agents*, 403 U.S. 388 (1971) against his arresting officers and their employing

15    agencies from a multi-jurisdictional task force, alleging the officers used excessive force during

16    his arrest and failed to provide medical assistance for the injuries he had sustained both prior to

17    and during his arrest. *Id*. at 5–8. Plaintiff also alleges he received delayed and inadequate

18    treatment for his injuries after he was booked into the SeaTac Federal Detention Center ("FDC

19    SeaTac"). *Id*. at 11–15.

20    Specifically, Plaintiff alleges when a multi-agency task force arrived at his property to

21    serve a warrant, he "took off running" in fear to hide. Dkt. 18 at 5. During his flight, Plaintiff fell

22    down a cliff, injuring himself. *Id*. Plaintiff alleges when officers from the Mason County

23    Sheriff's Department and Bremerton Police Department arrived, he informed them he was

24    injured and needed medical attention. *Id*. Plaintiff alleges the officers pulled him up the cliff with

a dog leash tied around his wrist, further injuring him, and exacerbated his pain by zip-tying his hands behind his back. *Id*. He contends the USMS defendants could have intervened to prevent the use of the dog leash and to summon medical assistance, but did not. *Id*. at 9. Plaintiff asserts he requested medical care from the state officers and was told he would receive it when they reached the top of the property. *Id*. at 6.

Plaintiff alleges he was not provided medical care, but was instead transported by state police officers to a remote area where he was questioned—and then to a Safeway parking lot, where he was transferred to the custody of the USMS Defendants. *Id*. at 10. Plaintiff again requested medical assistance but the USMS Defendants told him he would receive it upon arrival at the courthouse. *Id*. After Plaintiff was arraigned, he asked about receiving medical attention and the USMS Defendants told him he would have to wait until he arrived at FDC SeaTac. *Id*. at 11. Plaintiff alleges that upon arrival at FDC SeaTac, he was administered a painful COVID test but he did not receive medical attention for his injuries. *Id*.

Plaintiff alleges his injuries and severe pain were untreated during his arrest, transport, arraignment and booking into FDC SeaTac. *Id*. at 9, 10, 11. Further, Plaintiff alleges he received no assessment or treatment of his injuries or pain during his initial COVID quarantine at FDC SeaTac, where he experienced severe pain, blood in his urine and pain in his kidney, neck and shoulder. *Id*. at 18. Plaintiff alleges he received little or inadequate treatment even after his release from quarantine. *Id.* Ultimately, Plaintiff was diagnosed with a brain injury and spinal cord injury. *Id*. at 14. Plaintiff also experienced a stroke requiring transport to an outside medical facility, which was described to him as likely caused by spinal cord pressure resulting from the injuries sustained during his arrest. *Id*. at 14. Plaintiff was also diagnosed with a kidney injury that had reached Stage 2 kidney failure. *Id*.

1    Plaintiff alleges the USMS Defendants violated his Fourth and Fourteenth[2] Amendment

2    rights because they failed to intervene to prevent the excessive use of force, failed to summon

3    medical assistance for Plaintiff's injuries and were present when a BOP nurse administered a

4    COVID-19 test without Plaintiff's consent. *Id*. at 9–11.

5    Plaintiff also brings § 1983 claims against BOP and the Individual BOP Defendants,

6    alleging BOP employees violated his Fourth Amendment and Due Process rights by denying him

7    adequate medical care for his injuries during his booking into FDC SeaTac and during the course

8    of his pretrial confinement there. *Id*. at 11–15. Plaintiff further alleges BOP Defendants Jacquez

9    and Bussell retaliated against him in violation of his First Amendment rights after he made

10   complaints to outside sources regarding his lack of medical care, by falsely reporting that a

11   stroke Plaintiff suffered was due to a drug overdose. *Id*. at 16.

12   Plaintiff alleges Defendant Mason County Sheriff's Office violated his First, Fourth and

13   Fourteenth Amendment rights because its employees failed to summon medical assistance, used

14   excessive force during his arrest, and retaliated against him. *Id*. at 5–8. Plaintiff also alleges a

15   claim for intentional infliction of emotional distress, and asserts that the Mason County Sheriff's

16   Office should be held vicariously liable for its officers' conduct. *Id*. at 7–8.

17   Plaintiff seeks monetary damages from all defendants and an injunction against BOP

18   requiring specialist medical care for his kidney failure, spine injury, brain trauma, shoulder

19

20

21   _____

22   [2] Because the Fourteenth Amendment applies to the states, not to the Federal government, Plaintiff's due
     process claims against the Federal government defendants instead arise under the Fifth Amendment. *See Castillo v.*

23   *McFaddan,* 399 F.3d 993, 1002 n.5 (9th Cir.2005) ("The Fifth Amendment prohibits the federal government from
     depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due
     process by the several States."). Construing Plaintiff's Second Amended Complaint liberally, the Court will

24   therefore consider Plaintiff's claims against the federal defendants to be alleged under the Fifth Amendment.

1  injury and stroke, as well as a correction of his medical records to indicate his medical

2  emergency was caused by a stroke and not a drug overdose. *Id*. at 19.

3      2.  Procedural Background

4      Defendants BOP, USMS Defendants and the Mason County Sheriff's Department have

5  filed motions to dismiss. Dkts. 33, 55, 70. Plaintiff filed a response to BOP's motion. Dkt. 49.

6  BOP did not file a reply.[3] Plaintiff has also responded to the USMS Defendants' and Mason

7  County Sheriff's Office's motions (Dkts. 68, 77); neither set of Defendants has filed a reply.

8      The Court previously granted a motion by BOP to stay discovery pending the

9  consideration of its motion to dismiss. Dkt. 60. The Court addresses a second motion to stay

10  discovery brought by the USMS Defendants and Individual BOP Defendants (Dkt. 78) in a

11  separate order. A third motion to stay discovery, recently filed by individual defendants who are

12  Mason County Sheriff's Deputies (the "Individual Mason County Defendants") (Dkt. 83), is not

13  yet ripe for the Court's consideration and is not addressed here.

14      Finally, Plaintiff filed a "motion to join claims" (Dkt. 81) seeking to amend the operative

15  Complaint which the Court denies without prejudice in a separate order for failure to comply

16  with this Court's Local Civil Rule 15.

---

[3] Plaintiff also filed two additional responses that were virtually identical to Dkt. 49, which were docketed as responses to a separate motion brought by the Individual BOP Defendants (Dkt. 57) that is not addressed in this Report and Recommendation. Dkts. 61, 65. The Individual BOP Defendants filed a reply to these documents, which was limited to the issues raised in the Individual BOP Defendants' motion. Dkt. 66.

1

## II. DISCUSSION

2

**A. Legal Standard**

3

    1.  <u>Rule 12 Standard</u>

4

       A motion to dismiss can be granted only if the plaintiff's complaint, with all factual

5

allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atl.*

6

*Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

7

> To survive a motion to dismiss, a complaint must contain sufficient factual matter,
> accepted as true, to "state a claim to relief that is plausible on its face." A claim has
> facial plausibility when the plaintiff pleads factual content that allows the court to
> draw the reasonable inference that the defendant is liable for the misconduct
> alleged. The plausibility standard is not akin to a probability requirement, but it
> asks for more than a sheer possibility that a defendant has acted unlawfully.

8

9

10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).

11

       A complaint must contain a "short and plain statement of the claim showing that the

12

pleader is entitled to relief." Rule 8(a)(2). "Specific facts are not necessary; the statement need

13

only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

14

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading

15

must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556

16

U.S. at 678.

17

       While the Court must accept all the allegations contained in a complaint as true, the Court

18

does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare

19

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

20

suffice." *Id.*; *Jones v. Cmty. Development Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th

21

Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state

22

§ 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) *as amended* (Oct. 9, 1992).

23

24

1   While the Court is to construe a complaint liberally, such construction "may not supply essential

2   elements of the claim that were not initially pled." *Id.* at 471.

3      2.   Section 1983

4         Plaintiff alleges Defendants violated his federal constitutional rights. His claims against

5   state and local officials are governed by 42 U.S.C. § 1983, which provides for an action against

6   state or local officials for the violation of federal constitutional or statutory rights. To state a

7   claim under § 1983, a plaintiff must show: (1) plaintiff suffered a violation of rights "secured by

8   the Constitution and laws of the United States," and (2) "the alleged deprivation was committed

9   by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Benavidez v.*

10  *Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021). The first step is to identify the specific

11  constitutional or statutory right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

12        To satisfy the second prong, a plaintiff must allege facts showing how individually

13  named defendants caused, or personally participated in causing, the harm alleged in the

14  complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. Int'l Bus. Machines*

15  *Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). A person subjects another to a deprivation of a

16  constitutional right when committing an affirmative act, participating in another's affirmative act,

17  or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th

18  Cir. 1978). Sweeping conclusory allegations against an official are insufficient to state a claim for

19  relief. *Leer*, 844 F.2d at 633. Further, a § 1983 suit cannot be based on vicarious liability alone, but

20  must allege the defendant's own conduct violated the plaintiff's civil rights. *City of Canton, Ohio*

21  *v. Harris*, 489 U.S. 378, 385–90 (1989).

22     3.   *Bivens* Claim

23        Section 1983 applies only to claims against state actors and therefore does not provide a

24  cause of action against the federal officials alleged to have violated Plaintiff's Constitutional

1  rights. Instead, a damages action against a federal official for Constitutional violations must be

2  brought under *Bivens*, 403 U.S. 388. *Bivens* actions are the judicially crafted counterparts to §

3  1983 and are identical except for the replacement of a state actor with a federal actor. *Van Strum*

4  *v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991). The Court  in *Bivens* explained that the remedy filled

5  a gap in cases where sovereign immunity bars a damages action against the United States.

6  *Bivens,* 403 U.S. at 409–10. To sustain a *Bivens* cause of action, a plaintiff must name a federal

7  actor and show (1) he suffered a violation of rights protected by the Constitution or created by

8  federal statute, and (2) the violation was proximately caused by a person acting under color of

9  federal law. *Id.*; *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

10  **B.  Motion to Dismiss Mason County Sheriff's Office (Dkt. 70)**

11       Defendant Mason County Sheriff's Office ("Sheriff's Office") seeks dismissal on the

12  ground that it is not an entity capable of being sued. Dkt. 70.[4] Plaintiff contends the Sheriff's

13  Office should not be dismissed because a municipality may be held liable for constitutional

14  violations and Mason County officers allegedly violated his rights. Dkt. 77 at 1–2.

15       The Sheriff's Office is not a legal entity subject to suit in a 42 U.S.C. § 1983 action.

16  Section 1983 applies to the actions of "persons" acting under color of state law. A local

17  governmental agency is not a "person" under § 1983. *Bradford v. City of Seattle*, 557 F. Supp. 2d

18  1189, 1207 (W.D. Wash. 2008) (holding the Seattle Police Department is not a legal entity

19  capable of being sued under § 1983), citing *Nolan v. Snohomish Cnty.*, 59 Wn.App. 876, 883

20  (1990). Instead, the proper defendant in a municipal liability claim is the municipality itself—the

21

22

23       [4] The Second Amended Complaint also brings claims against the Individual Mason County Defendants.
    Dkt. 18 at 3. Those defendants have filed an Answer in this case and recently filed a separate motion to dismiss,
24  which is not yet ripe for consideration and is not addressed here. Dkt. 85.

1  city or county—and not the municipal department. *Id*; *see also Wright v. Clark Cnty. Sheriff's*

2  *Office*, No. 3:15-cv-05887 BHS-JRC, 2016 WL 1643988, *2 (W.D. Wash. April 26, 2016).

3        Plaintiff has not named Mason County as a defendant in this action, nor has he identified

4  any municipal policy or custom that was the moving force behind the alleged violation of his

5  constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692,

6  694 (1978) (local governments may be held liable under § 1983 only where a municipal policy or

7  custom is the "moving force" behind the constitutional violation). Instead, Plaintiff contends

8  only that the Sheriff's Office should be held liable for the actions of its employees. Dkt. 18 at 7–

9  8; Dkt. 77 at 1–2. But a municipality may not be held vicariously responsible for the acts of its

10  employees. *Monell*, 436 U.S. at 694.

11        The Sheriff's Office is not a municipality that can be sued under § 1983. The Court

12  therefore recommends the Sheriff's Office's motion to dismiss (Dkt. 70) be granted and the

13  Mason County Sheriff's Office be dismissed from this action.

14  **C.  Motion to Dismiss Bureau of Prisons (Dkt. 33)**

15        Defendant BOP argues that as a Federal Government agency, it has not waived its

16  sovereign immunity and may not be held liable under *Bivens*. Dkt. 33 at 5–7. BOP further argues

17  it has not been properly served with process and Plaintiff failed to exhaust his administrative

18  remedies. *Id*. at 4, 8–9. Plaintiff argues he has also brought claims for injunctive relief, for which

19  a sovereign immunity waiver is supplied by the Administrative Procedure Act ("APA"), 5 U.S.C.

20  § 702. Dkt. 49 at 2.[5]

21

22  _____

23        [5] Plaintiff also argues BOP may be held liable under *Monell* for its implementation of policies violating his constitutional rights. Dkt. 49 at 1. *Monell* holds that municipalities are "persons" who may be sued under § 1983.

24  436 U.S. at 690. It does not apply to a United States government or its agencies, which are not covered by § 1983.

1      1.  <u>Claims for Damages</u>

2          All of Plaintiff's claims against BOP allege violation of his Constitutional rights and seek

3  to hold BOP liable for the alleged violations. *See* Dkt. 18 at Claim 10 (Fourth Amendment claim

4  for "medical assault"), Claims 11–14 (Due Process claims for deliberate indifference to serious

5  medical needs), Claim 15 (First Amendment Claim for retaliation). Plaintiff's Claim 16,

6  although labelled "liability claim," similarly asserts a constitutional violation by BOP. *Id.* at

7  Claim 16. Plaintiff alleges Defendants denied Plaintiff his "right to receive medical attention"

8  under the "serious medical needs standards," which resulted in "loss of liberties and

9  constitutional rights guaranteed by the UNITED STATES CONSTITUTION." Dkt. 18 at 18.

10  Each of Plaintiff's claims for damages against BOP therefore arises under *Bivens*.

11          *Bivens* does not provide a cause of action for damages against the United States or its

12  agencies or, as such, against a governmental official in his or her official capacity. *F.D.I.C. v.*

13  *Meyer*, 510 U.S. 471, 484–86 (1994) (*Bivens* does not recognize a claim against a governmental

14  agency); *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157,

15  1173 (9th Cir. 2007) ("the Supreme Court has refused to extend Bivens remedies from

16  individuals to agencies"). A *Bivens* action can be maintained only against federal officials in

17  their individual capacities. *Morgan v. United States*, 323 F.3d 776, 780 n.3 (9th Cir. 2003)

18  (citation omitted). Further, such officials may not be held liable for the unconstitutional conduct

19  of their subordinates under a theory of supervisory liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676

20  (2009). A plaintiff must plead that each defendant, through the individual's own actions, violated

21  the Constitution. *Id*.

22          Because BOP cannot be held liable for damages under *Bivens*, the Court recommends the

23  BOP's motion to dismiss (Dkt. 33) be granted-in-part and the *Bivens* claims against the BOP for

24  damages be dismissed.

2. Claims for Injunctive Relief

    *a.   Sovereign Immunity*

Plaintiff contends the Government has separately waived its sovereign immunity for injunctive relief. Dkt. 49 at 2 (citing 5 U.S.C. § 702). Thus, the unavailability of a *Bivens* claims does not require dismissal of the injunctive claims.

Relief that is solely equitable in nature does not fall under *Bivens. See Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016) ("A *Bivens* action is not necessary in suits, such as this one, which seek equitable relief against the federal government, because the Administrative Procedure Act waives sovereign immunity for such claims. 5 U.S.C. § 702"). The APA provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . ..

5 U.S.C. § 702.

"Because BOP is an agency within the meaning of the APA, sovereign immunity does not bar [a prisoner's] claim" for equitable relief. *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005). *See also Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020) (holding "the district court had the authority both to entertain Plaintiffs' constitutional challenges and to grant injunctive relief in response to them," citing *Simmat* with approval.).

Thus, sovereign immunity does not bar Plaintiff's request for injunctive relief from BOP. The Court therefore addresses BOP's additional arguments with respect to those claims.

    *b.   Service of Process*

BOP asserts it was not properly served with process and argues it should therefore be dismissed. Dkt. 33 at 4.

1    When a court grants a litigant leave to proceed IFP, "[t]he officers of the court shall issue

2    and serve all process." 28 U.S.C. § 1915(d); *see* Fed. R. Civ. P. 4(c)(3) (the Court must order

3    service be made by a United States marshal or deputy marshal if the plaintiff is authorized to

4    proceed IFP under 28 U.S.C. § 1915). "[A]n incarcerated pro se plaintiff proceeding in forma

5    pauperis is entitled to rely on the U.S. Marshal for service of the summons and complaint, and,

6    having provided the necessary information to help effectuate service, [a] plaintiff should not be

7    penalized by having his or her action dismissed for failure to effect service where the U.S.

8    Marshal or the court clerk has failed to perform the duties required of each of them under 28

9    U.S.C. § 1915(c) and Rule 4 of the Federal Rules of Civil Procedure." *Puett v. Blandford*, 912

10   F.2d 270, 275 (9th Cir. 1990). "So long as the prisoner has furnished the information necessary

11   to identify the defendant, the marshal's failure to effect service is 'automatically good cause

12   within the meaning of Rule 4([m]).'" *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994)

13   (*quoting Sellers v. United States*, 902 F.2d 598, 603 (7th Cir. 1990)).

14   Here, the Court was provided adequate information to accomplish service. Any errors in

15   service cannot be held against Plaintiff and instead serve as good cause for an extension of time

16   to perfect service. *Walker*, 14 F.3d at 1422. The Court is reissuing service upon BOP

17   contemporaneously with this Report and Recommendation. Accordingly, the Court recommends

18   BOP's motion to dismiss on the basis of failure to effect service be denied.

19   c.  *Exhaustion of Administrative Remedies*

20   BOP argues Plaintiff's claims should be dismissed because Plaintiff has failed to exhaust

21   his administrative remedies as required by the Prisoner Prison Litigation Reform Act of 1995

22   ("PLRA"), 42 U.S.C. § 1997e(a). Dkt. 33 at 8–9. Exhaustion in cases covered by § 1997e(a) is

23   mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). All "available" remedies must be

24   exhausted. *Id.*

1    However, "failure to exhaust under the PLRA is 'an affirmative defense the defendant

2    must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (quoting *Jones v.*

3    *Bock*, 549 U.S. 199, 204 (2007)). BOP therefore bears the initial burden "to prove that there was

4    an available administrative remedy, and that the prisoner did not exhaust that available remedy."

5    *Id*. at 1172 (citing *Hilao v. Est. of Marcos*, 103 F.3d 767, 788 n.5 (9th Cir. 1996)). If the

6    Defendant meets its burden to show an available administrative remedy, "the burden shifts to the

7    prisoner to come forward with evidence showing that there is something in his particular case

8    that made the existing and generally available administrative remedies effectively unavailable to

9    him." *Id*. (citing *Hilao*, 103 F.3d at 788 n.5). The "ultimate burden of proof remains with the

10   defendant." *Id*. (citing *Jones*).

11   When alleging a plaintiff failed to exhaust administrative remedies, a defendant may

12   move for dismissal under Fed. R. Civ. P. 12 only in the extremely rare event the plaintiff's

13   failure to exhaust administrative remedies is clear on the face of the complaint. *Albino v. Baca*,

14   747 F.3d 1162, 1166 (9th Cir. 2014). "Otherwise, defendants must produce evidence proving

15   failure to exhaust" in a summary judgment motion brought under Rule 56. *Id.*

16   Here, BOP has not met its initial burden. It has submitted no evidence demonstrating

17   there was an available administrative remedy, and no evidence of whether or not Plaintiff

18   participated in any such process. The Court therefore recommends BOP's motion to dismiss for

19   failure to exhaust administrative remedies be denied without prejudice. BOP may re-file a

20   motion for summary judgment, supported by appropriate evidence.[6]

21   

22   _____

23   [6] The Court previously stayed all discovery as to the BOP until the resolution of the BOP's pending Motion
     to Dismiss. Dkt. 60. That motion will not be resolved until the Honorable David G. Estudillo, the Chief District
     Judge assigned to this case, determines whether to adopt this Report and Recommendation. Therefore, at this time,
     discovery remains stayed, in full, as to the BOP. The Court notes the parties are not prohibited from filing a motion

24   to lift the stay.

1    In summary, the Court recommends BOP's motion to dismiss (Dkt. 33) be granted-in-

2    part and denied-in-part. The Court recommends Plaintiff's *Bivens* claims for damages be

3    dismissed; however, the Court recommends Plaintiff's claims for injunctive relief against BOP

4    proceed.

5    **D.  Motion to Dismiss U.S. Marshals Service Defendants (Dkt. 55)**

6        The USMS Defendants argue the Court should not create a damages remedy under

7    *Bivens* in this context. *See* Dkt. 55 at 8–20.[7]

8        In *Bivens*, the Supreme Court recognized an implied cause of action to seek damages

9    against federal narcotics officers for an unreasonable search and seizure under the Fourth

10    Amendment. *Bivens*, 403 U.S. at 389–90. The Supreme Court subsequently recognized a *Bivens*

11    action in two other contexts. *See Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a Fifth

12    Amendment claim for gender discrimination in employment); *Carlson v. Green*, 446 U.S. 14

13    (1980) (recognizing an Eighth Amendment claim asserting cruel and unusual punishment against

14    prison officials for failing to treat the prisoner's asthma). "*Bivens*, *Davis*, and *Carlson*[] represent

15    the only instances in which the [Supreme] Court has approved an implied damages remedy under

16    the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). Although the Supreme

17    Court has not overruled *Bivens*, it has declined to recognize any new contexts since its decision

18    in *Carlson*. *See id.* at 1857 (noting *Bivens* is "settled law" but expanding the *Bivens* remedy is

19    now a "'disfavored' judicial activity").

20

21

22

---

23        [7] The USMS Defendants also contend Plaintiff has not adequately alleged facts stating a claim against
them. Dkt. 55 at 5–8. The Court does not reach this argument because the Court concludes a *Bivens* cannot be
24    recognized here.

To help the lower courts determine whether to recognize a *Bivens* claim, the Supreme Court developed a two-step framework. *See Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022).

> First, [courts] ask whether the case presents "a new *Bivens* context"—*i.e.*, is it "meaningful[ly]" different from the three cases in which the Court has implied a damages action. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." If there is even a single "reason to pause before applying *Bivens* in a new context," a court may not recognize a *Bivens* remedy.

*Id.* (citations omitted). The Supreme Court clarified that the two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* It also made clear that "similar allegations of excessive force," "almost parallel circumstances," or a "similar 'mechanism of injury'" as *Bivens* "are not enough to support the judicial creation of a cause of action." *Id.* A plaintiff must now always "satisf[y] the 'analytical framework' prescribed by the last four decades of intervening case law." *Id.* (quoting *Ziglar*, 137 S. Ct. at 1859).

Relevant to this case, the Supreme Court has recently issued two decisions declining modest extensions of *Bivens* in excessive force claims. In *Hernandez v. Mesa*, the Supreme Court declined to extend *Bivens* to an excessive force claim against a Border Patrol agent who shot a child across the border because doing so had national security implications. 140 S. Ct. 735, 747 (2020). In *Egbert*, the Supreme Court declined to extend *Bivens* to an excessive force claim by a Border Patrol agent against a Washington resident in his own home because the claim also had national security concerns. 142 S. Ct. at 1805.

Recently, the Ninth Circuit stated "[u]nder *Egbert*, rarely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly." *Mejia v. Miller*, 61 F.4th 663, 669 (9th Cir. 2023). In *Mejia*, the Ninth Circuit held the plaintiff could not assert a *Bivens* claim based on

excessive force against a Bureau of Land Management ("BLM") officer because it presented a new context and special factors existed making Congress more suitable than the judiciary to create a cause of action. *Id.* More recently, the Ninth Circuit reaffirmed the very narrow boundaries for expanding a Bivens claim, holding *Bivens* could not be extended to recognize a due process claim for adverse employment actions by the Bureau of Land Management. *Harper v. Nedd*, 71 F.4th 1181 (9th Cir. 2023). The court stated "the Supreme Court means what it says: *Bivens* claims are limited to the three contexts the Court has previously recognized and are not to be extended unless the Judiciary is better suited than Congress to provide a remedy." *Harper*, 71 F.4th at 1183.

The Court now considers whether Plaintiff's claim against the USMS Defendants presents a "new context" or "special factors" under the Supreme Court's two-step framework.

1. <u>New Context</u>

According to the Supreme Court, a case may present a new context if there is a difference in,

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1860.

A case also now presents a new context if the defendant is employed by a different agency than the one at issue in *Bivens*. *See Egbert*, 142 S. Ct. at 1806 (concluding the question is "whether a court is competent to authorize a damages action not just against Egbert but against Border Patrol agents generally"); *see also Mejia*, 61 F.4th at 668 ("the question is whether to create a cause of action against all of an agency's officers"). This appears to have the effect of

making all *Bivens* claims for excessive force new contexts because the agency at issue in *Bivens* no longer exists. *See Egbert*, 142 S. Ct. at 1815 (Sotomayor, J., Breyer, J., and Kagan J., concurring in part and dissenting in part) (noting the Federal Bureau of Narcotics is defunct). Indeed, in *Mejia*, the Ninth Circuit concluded the claim against the BLM officer was a new context because, among other reasons, the Supreme Court has never "recogniz[ed] a *Bivens* excessive force claim against a BLM officer." 61 F.4th at 668.

      Significantly here, district courts have similarly found new *Bivens* contexts in recent decisions based on the type of agency at issue—and have specifically found cases involving United States Marshals Service employees present a new context. *See, e.g.*, *Lewis v. Westfield*, No. 16-CV-1057, 2022 WL 16924177, at *3 (E.D.N.Y. Nov. 14, 2022), *appeal docketed*, No. 22-3060 (2d Cir. November 30, 2022) (finding a new context because the "defendants are Deputy Marshals, rather than federal narcotics agents"). *See also Hammond v. Two Unknown Named Agents of United States Marshals Serv.*, No. CV 4:20-4298-JFA-TER, 2023 WL 2025206, at *5 (D.S.C. Jan. 9, 2023), *report and recommendation adopted,* No. CV 4:20-4298-JFA-TER, 2023 WL 2025171 (D.S.C. Feb. 15, 2023) (dismissing *Bivens* claims against Deputy U.S. Marshals for excessive force and failure to protect because they arose in a new context); *McIntyre v. United States Marshal Serv.*, No. CV181268KMMAH, 2023 WL 2447424, at *5 (D.N.J. Mar. 10, 2023) (noting "numerous courts have concluded that claims arising from alleged excessive force by Deputy U.S. Marshals" present a new context) (collecting cases).

      Here, plaintiff does not point to a Supreme Court case recognizing a *Bivens* claim for excessive force and failure to intervene against a USMS deputy, and the Court is aware of none. Relatedly, this case also presents a new context because the legal mandate under which the USMS Defendants operated differs from the legal mandate at issue in *Bivens.* The officers in

1  *Bivens* conducted a warrantless arrest, 403 U.S. at 389. Here, Plaintiff alleges the USMS

2  Defendants were members of a multi-agency task force serving a warrant. Dkt. 18 at 5., Dkt. 54

3  at 5. *See, e.g., Lewis*, 2022 WL 16924177, at *3 (finding a new context because the defendants

4  were executing an arrest warrant); *Oliveras v. Basile*, 440 F. Supp. 3d 365, 371–72 (S.D.N.Y.

5  2020) (same).

6          The Court concludes Plaintiff's claims present a new context for *Bivens* claims. The

7  Court therefore analyzes whether special factors exist making Congress more suitable than the

8  Judiciary to create a cause of action.

9          2.  Special Factors

10         The Supreme Court "has not defined the phrase 'special factors counselling hesitation,'"

11  but it has recognized the "inquiry must concentrate on whether the Judiciary is well suited,

12  absent congressional action or instruction, to consider and weigh the costs and benefits of

13  allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1858. In fact, the Supreme Court

14  clarified that the pertinent question now is "whether there is any reason to think that Congress

15  might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803. As the Ninth

16  Circuit stated, "[u]nder *Egbert*, rarely if ever is the Judiciary equally suited as Congress to

17  extend *Bivens* even modestly." *Mejia*, 61 F.4th at 669.

18         The Court notes two special factors counselling hesitation to extend *Bivens* in this

19  context. First, the Court is not better suited than Congress to determine the systemwide

20  consequences that could result if *Bivens* is extended to apply to USMS officers. This factor is

21  consistent with the Ninth Circuit's recent holding that "Fourth Amendment excessive force

22  claims against BLM officers would have 'systemwide consequences' for BLM's mandate to

23  maintain order on federal lands, and uncertainty about these consequences provides a reason not

24  to imply such a cause of action." *Mejia*, 61 F.4th at 668.

1    Other district courts considering whether *Bivens* can be expanded to provide a remedy

2 against USMS deputies have similarly found Congress, rather than the courts, to be better suited

3 to address the systemwide consequences of recognizing a claim. *See Hammond*, 2023 WL

4 2025206 at *4 ("[p]otential liability for how pre-trial detainees are handled is a matter best left to

5 Congress."); *Logsdon v. United States Marshal Serv.*, No. CV 21-253-KHV, 2023 WL 205052,

6 at *4 (E.D. Okla. Jan. 13, 2023) ("courts are not 'undoubtedly better positioned than Congress'

7 to create a damages action for claims against a new category of defendants such as Deputy U.S.

8 Marshals.") (quoting *Egbert*, 142 S.Ct. at 1803);  *McIntyre*, 2023 WL 2447424, at *6 ("implying

9 a damages remedy [against Deputy U.S. Marshals] presents questions better fit for Congress to

10 address").

11    As the Supreme Court stated, "[e]ven in a particular case, a court likely cannot predict the

12 'systemwide' consequences of recognizing a cause of action under *Bivens*. That uncertainty

13 alone is a special factor that forecloses relief." *Egbert*, 142 S. Ct. at 1803–04 (citations omitted).

14 The Court cannot predict the systemwide consequences here, and it is therefore more

15 appropriately a Congressional inquiry.

16    Second, plaintiff has an alternative remedy available to him. The Supreme Court stated

17 that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has

18 authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 142 S. Ct. at

19 1804 (quoting *Ziglar*, 137 S. Ct. at 1858). It does not matter that the remedy does not provide

20 complete relief. *See id.*

21    Courts rejecting the extension of *Bivens* claims to USMS deputies have found the

22 Marshals Service provides a grievance program that is a sufficient alternative. As the court in

23 *Lewis* noted, the Director of the Marshals Service is "statutorily obligated to 'supervise and

24

1   direct the United States Marshals Service in the performance of its duties.'" *Lewis*, 2022 WL

2   16924177, at *4 (citation omitted). Regulations require the Director to investigate alleged

3   improper conduct, and the Marshals Service has a grievance process that may be utilized to

4   report such conduct. *Id*. Moreover, the *Lewis* court observed the Attorney General is required to

5   ensure nonfrivolous allegations of misconduct are reported to the Inspector General, and

6   Congress has authorized the Department of Justice Inspector General to investigate such claims.

7   *Id*. The court in *Lewis* concluded that "*Egbert* made clear that remedial schemes of this sort

8   'foreclose a *Bivens* action.'" *Id. See also McIntyre*, 2023 WL 2447424 at *7 (finding the USMS

9   remedial structure sufficient to foreclose a *Bivens* action), *Clutts v. Lester*, No. 20-CV-80-CJW-

10  KEM, 2023 WL 3901489, at *6 (N.D. Iowa June 8, 2023) (collecting cases finding USMS

11  internal grievance procedure provides an available alternative remedial structure). The Ninth

12  Circuit recently held that a similar grievance program of the Bureau of Land Management

13  offered an alternative remedy sufficient to foreclose an expansion of *Bivens*. *Mejia*, 61 F.4th at

14  669.[8]

15       Plaintiff's claims against the USMS Defendants present a new context for a *Bivens* claim

16  and at least two special factors which counsel against extending *Bivens* to this context. The Court

17  therefore recommends *Bivens* not be extended to provide an implied cause of action for

18  plaintiff's excessive force and failure to intervene claims. Accordingly, the Court recommends

19  the USMS Defendants' motion to dismiss (Dkt. 55) be granted and the USMS Defendants be

20  dismissed from this action.

21

22  ─────────────────────

23       [8] Courts have also found the ability to file a tort claim under the Federal Tort Claims Act ("FCTA")
     provides an alternative remedy, even if it does not provide the exact same relief as a *Bivens* claim. *See, e.g. Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020) (availability of FTCA claim was a "special factor" counseling against extending *Bivens*, even though it would not provide the same relief or give plaintiff everything he seeks); *McIntyre*, 2023 WL 2447424 at *8 (FTCA offered alternative remedy).

24

**III. CONCLUSION**

For the reasons discussed above, the Court recommends:

(1)     Defendant BOP's motion to dismiss (Dkt. 33) be granted-in-part and denied-in-part. The Court recommends Plaintiff's *Bivens* claims for damages be dismissed; however, the Court recommends Plaintiff's claims for injunctive relief against the BOP proceed;

(2)     the USMS Defendants' motion to dismiss (Dkt. 55) be granted and the USMS Defendants be dismissed from this action; and

(3)     the Mason County Sheriff's Office's motion to dismiss (Dkt. 70) be granted and the Mason County Sheriff's Office be dismissed from this action.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on August 11, 2023, as noted in the caption.

Dated this 21st day of July, 2023.

David W. Christel
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 21