------------------------------------------------------------------------------------------

FROM: 32370086
TO:
SUBJECT:
DATE: 11/09/2023 07:23:24 PM

MICHAEL A WOOD

V

BUREAU OF PRIDSONS ET AL



FILED _____ LODGED
_____ RECEIVED

**NOV 2 0 2023**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

HONORABLE DAVID W CHRISTEL

NO.2:22-CV-636-DGE-DWC

ANSWER TO DEFENDENTS MOTION

FOR SUMMARY JUDGEMENT

    Your honor you gave me the opportunity to respond combining my previous answers. I do not have the money to resend over 180 documents in my exhibits to reprint these would cost over 30 dollars and postage would be 18 dollars. I "do not " have the money to do this besides i sent the only copies of this evidence that i had due to lack of funding to make copies. I am praying that the the defendents and the courts will allow me to use the previously filed responses and their exhibits along with the following reponse. If i was to re-file a complete response id be missing many of the previously supplied exhibits. If this is not possible i ask that the courts and defendents give me notice and time to procure the money hneeded and time to relocate all the exhibits ive already provided the courts. If the courts and defendents are ok with refering to the already filed responses and exhibits i am ok with moving forward. I truely apologize to the courts and the defendents for any inconviences and or delays.

EXHIBIT 1- Is the originally filed response minus the exhibits i have no way of re-providing these exhibits so im praying that you can review this previously filed answer.

EXHIBIT 2- Is the originally filed supplemental brief again minus the exhibits that i pray the courts can review the exhibits i already provided.

    I believe that i have provided more then enough information to prove exhaustion reqirements were met. The defendents didnt really provide any further information in the discovery requests. The warden obviously was oblivious to the running of his institution and does nothing but refer to and site proceedures required by policies that were not followed. I would like to state that he is absolutely mistaken when he stated that inmates in quarantine were allowed access to the electronic email systems that would of allowed access to sick calls and grievences. We inmates were never given handbooks or had aceess to grievences when they were needed for a remedy to be available it must be made available at the time its needed not weeks months after this results in the institutions ability to automatically reject the grievence as untimely. (1)The instititution has the "RESPONSIBILITY" to provide instructions on how to utilize the administrative remedy program, (2)It has the "RESPONIBILITY" to make available all grievence forms at the time they are requested and needed.(3)They are required to file and respond to grievences in the required time frames per policy. The institution has failed in meeting its

-----------------------------------------------------------------------------------------

obligations and responsibilities. I have provided evidence of lost ,unfiled, non-responded grievences the defendents can only provide the one that were filed but my evidence shows that in their own emails acknowledge that i filed grievences that they didnt repond to. They continue to say i didnt follow proper proeedures or instructions but i provided evidence that i have and they failed to repspond. Regaurdless i still attempted to start the process over, ask for instructions, ask for new grievences and the provide emails show that the unit team refused to repond.

! THE PLRA CLEARLY STATES THAT IM ONLY REQUIRED TO EXHAUST "AVAILABLE" REMEDIES. IF THE REMEDY IS "NOT"          AVAILABLE AT THE "TIME" IT IS "NEEDED" THEN THE CASE MAY PROCEED "WITHOUT" EXHAUSTION !

(1)When i was quarantined for almost 30 days without access to grievence system i was no longer required to grieve all though i still attempted to use the non-exsistent program where it took 6 months to be given a grievence form also seen in evidence previously provided where i asked for forms for months since counselors were not coming into the unit in fear of Covid ( which i also understand) meeting exhaustion requirement as can be seen in the bates exhibits provided by the defendents that i didnt access the electronic email system till July 3 2021 the day after i was released from quarantine this was due to no access see delaration Exhibit 3.(2) When the institution failed to provide instructions on how to access and use the system exhaustion requirement was met see newly aquired declarations Exhibit 4 contradicting any claim that inmates were provided an A & O handbook that contained rules and regulations.

Your Honor i can go on for eternity arguing the facts that the BOP and FDC Seatac have not been following their own policies. The main point is that i understand the reasoning that Covid-19 created hardships not only on inmates but institutional staff as well. This resulted in social distancing, short staffing and constant outbreaks requiring months of quarantines. I undertand that policicies that were implemented in normal time were disrupted during the pandemic and in its aftermath where its stll being felt. The defendents and the whole world knows this to so for the defendents to continue to try and argue that inmates were required to follow policies that were not and could not be followed by the institution is absurd.This understanding has been one sided im still be told to be understanding as to why im still waiting to be seen by neurology but can i ask the defendents to be understanding that their understaffing was the reason why i was not provided access to their programs ? Their defense argument answers this they are trying to site policy rules and proeedures that i was "REQUIRED" to follow that they were not following or providing access to "EXHAUSTION" was met before i was given access to my first grievance almost 6 months after asking for it. This has already been ruled on against the same defendents, during the same time frame, the same unit  see Exhibit 5 ( Frick v DY ). The only way ive maintained any sanity is to try to be understanding by coming up for excuses for the defendents. Im having the same difficulties at my current institution where im still not recieving care neurology appointments are continuously rescheduled due to short

---

staffing for transports. I have filed grievences that are not recieving responses where im not sure to add these to this complaint or file another. Exhibit6 is a an unanswered grievence that was properly dated by the counselor when it was given to me this is the proper way so that inmates can prove the date that it was filed unlike the FDC Seatac grievences that they dont date so that they can hang on to the indefinately when it suits them. regaurdless this also shows that the defendent BOP has a nationwide standard of practice where the grievence program and proceedures are not followed.

   To close i again pray that all my previously provided exhibits are used my finacial status should not be a reaon for not being able to properly provide the courts with the evidence needed to support my claim this is another good cause for the appointment of counsel lol.Thank you so much for your time and patience

I SWEAR UNDER PENALTY OF PURJORY THAT ALL IVE SAID IS TRUE AND CORRECT

MICHAEL A WOOD

11-09-2023

EXHIBIT #1

---------------------------------------------------------------------------------------------------

FROM: 32370086
TO:
SUBJECT: OBJECTION TO DISMISS BY BOP DEFENDENTS -1
DATE: 11/08/2023 06:53:59 PM

MICHAEL WOOD.

     V

BUREAU OF PRISONS.

HONORABLE DAVID W CHRISTEL

CASE NO: 2:22-CV-636-DGE-DWC

PLAINTIFFS ANSWER TO THE CONVERTED

MOTION TO DISMISS/SUMMARY JUDGEMENT

BY BOP DEFENDENTS

    Plaintiffs answer to converted motion for summary judgment filed by defendants BOP, DR MARIA DY, WARDEN ISRAEL JACQUEZ, KEVIN POSALSKI, SCOTTIE BUSSELL, JAMES CORLISS.

    In the 1st declaration by Danielle Rogowski the attorney advisor for BOP' FDC Seatac made in support for the motion to dismiss for failure to exhaust administartive remedies that was made under penalty of purjory pursuant to 2b U.S.C. 1746. Mrs Rogowski claiming to be familiar with the running of the institution FDC Seatac having worked there since Dec of 2020. Mrs Rogowski does not state te complete set of facts only submitting the electronic grievences that were filed which dont show the actual grievence that was filed or the full response that was given.

    In exhibit # 1 line 7 page 3 she states that the attatchments are for inmate Frick's civil claim. I am fully aware and familiar with Mr Fricks case as well as him and myself lived in the same unit and had the same problems with obtaining and recieving responses to our filed grievences due to the institution not folowing proper grievence proceedures as required by BOP policy.

    In exhibit # 1 section 9 line 8 page 3 mrs rogowski purjorizes herself stating as a fact that all inmates are required to attend a A&O. If she is in fact familiar with the running of the institution as she claims. she would know that there has been no A&O at the institution since the beginning of the pandemic nor has the institution provided new detainees with copies of the inmate handbook that gives al the rules and regulations of the institution.FDC Seatac has not complied with BOP policy since the pandemic. This is also another reason to support my objection to dismiss made by the BOP. The BOP Covid-19 action plan required that all inmates maintain a 6 ft spacing and no group gatherings which to conduct A&O would be required so inmates are not given the information as to rules and proceedures on filings of grievences as Mrs Rogowski claims. So the BOP violated there own policies supporting my liability claim under monnell. Mrs Rogowski would also of known that since her arrival all inmates were required to be quarantined for 30 days where thjere was no access to medical or grievences. then once we cleared quarantine during the pandemic we were still under the BOP's Covid-19 action plans modified operations where we were locked down for 20 hours a day with no access to unit teams who are responsible for providing inmates with grievences for months at a time leaving uis with no way to utilize the administrative remedy process. Mrs Rogowski as an attorney for FDC Seatac also would've been aware of all the complaints being made by the attorneys office and congress on the inmates behalf of the harsh conditions and denied access to medical and grievences along with the 100's of electronic emails of complaints that never recieved responses. The modified operations implaced by the BOP's Covid-19 action plan provided no measures to safegaurd the BOP policies that were already implaced to protect the rights of the inmates. we as a whole were denied standards of care and access to the administrative remedy process to properly file our complaints.

    In exhibit #1 section 9 Mrs Rogowski exhibits A-F she submits irrelevent grievences that were filed during previous terms of incarceration. Attempting to paint a picture that i have a history of not following through 2with the grievece process. These grievences were either given a favorqable response or they were discontinued because of pending release. These exhibits do not contain the actual grievence that was filed or the attatchments that i submiited with them.

----------------------------------------------------------------------------------------

In exhibit #1 Mrs Rogowskis declaration section 9 page 4 exhibit G. My rejection by the warden for my grievence filed on 1-4-22 stating i was untimely and that this was the wrong proceedure. What the grievence fails to mention is that on 1-10-22 there was another Covid-19 outbreak where i contracted Covid-19 and was put in quarantine for over a month with no access to unit team or grievences where i was denied a grievence stating that there were none being locked down for 24 hours a day i had no way to attempt to recieve one through other means where i did infact tried to respond as seen in my exhibit # ( 2 ) filed on 2-17-22 where i stated that i never recieved a response for my grievence that i submitted the week before the outbreak although it has a case # 1105789-A6A2 it does not show on the sentry submitted by Mrs Rogowski this ois further evidence that FDC Seatac has not been following proper proceedures as required by BOP policy further the grievences require that they are dated and signed these grievences have neither this makes it impossible to inquire into who recieved them and failed to file them. In cases brengettey v horton 423 f.3d 674 682 (7th cir2005). boyd v corr corp of am 380 f.3d 989 996 (6th cir 2004). lewis v washington 300 f.3d 829 833 (7th cir 2003). holding that a prisoner has properly exhausted when properly filed grievences failed to recieve a response. In case martin v snyder 2002 WL 484911 *3 (N.D Ill) rejected argument made by defendents that plaintiff should've continued to grieve failed responses. When the grievence fails to be dated there is no way to confirm when it was even recieved and when there is no signature there is no way to prove who was responsible for filing it. I cant be expected to follow proper proceedure when the agency BOP does not follow them this has left me with no proper remedy.

In exhibit #1 Mrs rogowski's declaration section 9 page 5 exhibit H . I was given the improper form and instructions. The process to recieve grievences is as follows the only way to recieve a bp-9 is to show that you have already filed and recieved a response to your bp-8. Then to recieve a bp-10 you must show that you have recieved a response to your bp-9. Then to recieve a bp-11 you must how that you recieved a response to the bp-10. There is no way to skip a process so for me to have recieved a bp-11 i either had completed a bp-10 that does not show that i filed on the sentry or that i was given the wrong form and given improper instructions as i have stated by unit team. Even so i was not instructed to go back to region even though i did i was only instructed to get a letter from staff as to why i was untimely. I was given the same instructions in the corrected grievence by region as i was by the central office to get a letter from staff as to why i was untimely and to follow instructions that were given by the warden although the warden in his reply never gave instructions it only stqated that i was untimely and that this was the improper proceedure. This would all be available for view if Mrs Rogowski would of provide the actual grievences that were filed and their responses these are all things that i have asked for in my requests for discovery that the BOP has filed the motion to stay on, the courts should not grant their motion.I was never give instructions on how to proceed . In cases dole v chandler 438 f.3d 804 811-12 (7th cir 2006). wilkerson v jenkins 2010 WL 384 737 *3 ( D Md jan 27 2010) where exhaustion requirements were satisfied when no proper instructions were given. In my case the warden being his institution should've or would've known that inmates in his care were subjected to constant lock downs due to Covid-19 and quarantine proceedures implemented in the Covid-19 action plan that didnt allow for A&O that would of gave proper instructions on the administrative grievence process and that the pamdemic caused the institution to be grossly understaffed limiting the inmates in their ability to have access to unit teams and the grievence process making it impossible for us and staff to be timely.

In exhibit #1 Mrs Rogowski's declaration section 9 page 4-5 exhibit . It shows that a remedy was given where i recieved an Mri and had an upcoming doctors appointment. in caes lay v hall 2007 WL 137155 *6 (E.D Cal jan 17 2007) holding where prisoners grievence of failure to provide medical care was rsponded to that an appointment was made for the issue sufficed to reach the exhaustion requirment. I was given an MRI and told that i had an appointment coming soon to see a neurologist. dixon v gord 224 f.supp 2d 739 749 (S.D.N.Y 2002) inmates are not required tocontinue to grieve after a favorable answer was provided. Even though i was given an answer i continued to grieve anyway to be sure that i exhausted all administartive remedy reuirements since i had already been told and assured id recieve care that was never forth coming on numerous occassions. The fact that an MRI was done dont constitute standards of care as defined in the constitution as coming in the form of "diagnosis and treatment" where a MRI would not reach constitutions standards and definition of care. On multiple occassions i attempted to recieve reasons for my untimeliness as seen in my attatched exhibits also in the attattchments you can see that every issue that was brought up in my civil claim contrary to the BOP's defendents claims were brought up in my grievences putting the BOP and defendents on notice and giving plenty of time for them to attempt to provide a remedy. Seen my attatched exhibit # ( 16 ) that chronic pain and untreated medical conditions constitute a "continuing violation" not limiting the complaint to a time restraint. Also stated in the constitution    "requiring a prisoner to grieve every component of his claim seperately would have prevented him from fairly presenting his claim in its entirety the prisoners claim was concidered exhausted even though he only grieved the one component. All my claims stem from one cause of action not recieving medical care for injuries sustained during arrest and after being booked into BOP custody.As for the connection between my claims and the Covid-19 action plan policy. The policy allowed

---

for the institutions medical and administration to be ran understaffed where the Covid-19 action plan required the hiring of additional medical staff shutting down all access to medical, sick call system and proper administrative remedy processes. Creating the enviroment that allowed for my medical condition to go untreated and the delays in recieving care. Brewer v philson 2007 WL 87625 * (W.D Ark Jan 10 2007) where the claim originated from an incident that occured during arrest the claim did not require exhaustion. The claims against the BOP and defendentsare a continuation of injuries and not recieving medical care sustained duringa and following arrest. All additional claims derive from that incident. I am not required to constantly grieve every situation that stems from the original singular cause and complaint.

In my exhibit # ( 2 ) submitted on 2-17-22 although it has a case number it was not dated or signed and dont show up in the sentry files submited by Mrs Rogowski. In this grievence i appeal the fact that i never recieved a response from region for my bp -10 tha i filed on 1-04-22 during a Covid-19 outbreak this is and has been a continuous occurrence since the Covid-19 pandemic but yet we or i am expected to follow a proceedure and policy that the BOP is not following. Also in this grievence i report to the central office that it took 6 months to get a bp-9 from the institution.

In my exhibit # ( 3 ) shows that i filed anothe rgrievence on 3-10-22 that was never even filed or responded to where i grieved multiple issues that were brough into my claims. Martin v snyder 2002 WL 484911 *3 ( N.D Ill Mar 28 2002) where defendents argument that the plaintiff should still have filed more grievences about the defendents failure to respond was rejected. Armstrong v drahos 2002 WL 187502 *1(N.D Ill Feb 6 2002) holding that plaintiff never recieved a response thee was nothing to appeal

In my exhibit # ( 4 ) i attempted to recieve a reason as to why i was untimely as instructed in all the rejebitons i recieved. The warden again did not file the grievence as can be seen again there is no date, signature or case # just a reason of being untimely and that i needed to follow the instructions on the bp-11 which instructed me to get an excuse by the warden that i was atempting to do as did all rejectionsas seen in Mrs Rogowski's declaration exhibits #( G - N )in Mrs Rogowski's exhibit # ( L ) she states that i filed to exhaust after being instructed numerous times but in my submitted exhibits # ( 4 )( 5 )( 6 )( 7 ) ( 8 ) i attempted on multiple occassions asking to be excused for my untimely rejections where i never recieved any remedy. This was beyond frustrating and confusing at all levels i was sent like a dog chasing its tail this was done intentionaly the whole BOP grievence process is nothing more then a farce meant to deter, chill and thwart inmates with legitament claims from being able to meet the exhaustion requirements to bring suit.In case warren v purcell 2004 WL 1970642 *6 (S.D.N.Y sept 3 2004) holding that a bffling response to a grievence left prisoner with no clue on how to proceed or what to do next holding special circumstances justifying failure to exhaust. The responses i continued to recieve with no proper instructions was obviously done with intent. In exhibit # ( 5 ) shows that i contacted unit manager asking for an excuse that was never responded to that also stated reasons and complaints against other unit team administrators for not filing grievences that were properly turned in.In exhibit # ( 4 ) is the bp-9 asking for a reason my rievences were untimely again this was not filed or given a case number and returned improperly supporting the requirements for exhaustion. In exhibit # ( 6 ) i grieved to region about the warden at the institutional level about him not filing my grievences even after supplying region with copies of the returned grievences they still rejected my grievence again leaving no remedy meeting all exhaustion requirements.In exhibit # ( 7 ) in an appeal to central office i supplied them aswell with the requests and unfiled grievnces sent to the warden about needing an excuse as to why i was untimely and they again rejected my claim. "THIS IS THE BLUE SHIELD IN PLAIN SITE BEING IMPLEMENTED" where there is an obviouse claim that all level were presented with more than enough opportunity to reply and remedy this problem but chose not to. In exhibit # ( 8 ) is an atatchment that i submitted to my grievences that contain all alegations to all my claims that the attorneys contest being filed and not giving notice too a notice that they ignored and failed to remedy. After being completely ignored and sent on a goose chase at all levels of the BOP administartive remedy process. In exibit # ( 9 ) i attempted to email the warden through the electronic message system since he would not respond to my bp-9's. in the email i sent i informed him about not being given grievences by his staff and when they were given they would not be filed i also adressed his defamating-stigmatizing response saying i overdosed on heroin that he sent to US CONGRESSMAN KILMER and my family seen in exhibit # ( 10 )with all my concerns of the negative effect that his response had on family relations and recieving medical care. He failed to adress any of the concerns i brought to his attention and refused to re-write his response even after i supplied him with accurate medical records showing that i had no "heroin" in my system. I was threatened to loose my email privledges if i continued to email him. He responded as though my family or congress should be of no consequence . In case

---

FROM: 32370086
TO:
SUBJECT: OBJECTION TO MOTION TO DISMISS BY BOP DEFENDENTS 4
DATE: 11/08/2023 06:58:22 PM

of woodford ngo a prisoner is justified from continuing correct proceedures because of threats and or intimidations by staff. The threat of being sanctioned where i would of lost my abilities to communicate with my family and possibly lose good time i followed the BOP's administrative remedy statement that said i could skip the institutional level of the grievence process if the grievence was of a sensitive matter. As seen in exhibit # ( 11 )i was rejected by the region stating that they didnt believe that this was a sensitive matter even though i provided all the returned non-filed grievences and the threat made by the warden leavin me no other remedy or an appealable response being sent back to the institutional level where i was not being allowed to properly file this is a conspiracy by all levels of the BOP to interfere with the due process of law.

In exhibit # ( 12 ) it shows that id recieved a partial remedy by Mrs Pope where i was told that my grievence had been satisied even though i only recieved a partial remedy and was denied a bp-9 to further grieve the unresolved issues. so i filed 5 more grievences with Mrs Pope that were never filed or responded to as seen in previouse exhibit # ( 9 ) The fact that she never filed or responded meets the PLRA requirements for exhaustion. I have beyond exhausted an possible remedy and gave the BOP every opportunity to remedy the situation outside the courts.

The PLRA also reqires that a prisoner must exhaust all avenues of possible relief. To make sure of this myself and my family contacted US Congressman Kilmer and ACLU Cherie Williams as seen in exhibit # ( 13 ), The US Federal Public defenders office Colin Frieman who also said they were in contact with the ACLU as seen in exhibit # ( 14 ) and the AAAHC case # 118062 who stated they were going to investigate the matter as seen in exhibit # ( 15 ) i also filed federal tort claims against the BOP or the UNITED STATES tort #  TRT-WXR-2022-04314 tort # TRT-WXR-2023-05903 where i was given permission to bring suit in federal court for the constitutional violations and the torts of negligence and failure to provide treatment were excepted. This tort action i plan on asking the courts under supplemental jurisdiction to join my tort action with my civil claim where the courts, defendents and the jury will be given other less intrusive means to settle the claims

I am also submitting to the courts the following exhibits # ( A-1 ) anjd ( A-2 )

Exhibit ( A-1 ) Is a complaint and declaration sighned by the inmates that were incarcerated with me at the time my claims arised. In these claims and declarations one of the causes of action was the fact that we were not given access to the grievence system or administrative remedies contradicting the declaration submitted by BOP employee Rogowski.

Exhibit ( A-2 ) Is a ruling in the case by the Seattle District Court in a case brought by Christopher Frick against BOP and individual defendents. Where the BOP made the same claims for dismaissal of failure to exhaust where court denied the BOP motion to dismiss. In MR Fricks objection he also provided declarations from inmates that were locked up with myself and MR Frick stating that there is no access to administrative remedies there are also declarations from his attorney. This is admissable information since in the BOP MRS Rogowski's declaration she refered to MR Frick's case.

BOP should not be granted summary judgement in my case and it should be sent to trial and all stays on discovery should be lifted so that i can prepare for trial. I have offered multiple settlements that were less intrusive means abd would lighten the burden on the courts that have not recieved a response.

As seen i all the provided evidence i have properly exhausted all administrative remedies even after the institution and other level administrators of the process failed to follow the proper proceedures as required by policy. The exhaustion requirement was met at the informal and formal levels when the institution, region and central office failed to follow their own policies. All the arguments stated by the BOP defendents to dismiss for reasons of failure to exhaust should not be granted.When Mrs Grokowski submitted the exhibits she should of provided the courts with the grievences filed in their entirety including all attatchments.

I SWEAR UNDER THE PENALTY OF PURJORY THAT ALL I SAID IS TRUE AND CORRECT

MICHAEL WOOD
8-07-23

Exhibit #2

----------------------------------------------------------------------------------

FROM: 32370086
TO:
SUBJECT: ANSWER TO BOP SUPPLEMENTAL BRIEF
DATE: 11/08/2023 06:57:59 PM

MICHAEL A WOOD                                              HONORABLE DAVID W CHRISTEL

      V

BUREAU OF PRISONS ET AL                                    NO. 2:22-CV-636-DGE-DWC

                                                           PLAINTIFFS ANSWER RE:

                                                           INDIVIDUAL BOP DEFENDENTS

                                                           SUPPLEMENTAL BRIEF

The defendants have failed in proving a remedy was available. I've covered almost every thing in my answer to the converted motion to summary judgement that i can without the unanswered discovery requests that i sent to the defendants on 8-07-23 ( see exhibit 1 copy of the responded requests) that instructions given by the court only pertained to the exhaustion request. As of the current date of filing this answer i have not received anything. I ask that the courts compel this discovery and allow me the opportunity to supplement my answer. I am unable to exhaust court rules of trying to receive discovery i cant conduct a conference call unless the defendants initiate the process in which my speech impairment ( aphasia ) will make understanding difficult.

The defense in their argument only provide a "generalized" retrieval of my filed grievances and not the grievances themselves that as seen in my exhibits in my answer to the converted motion i obviously made multiple attempts giving the defendants multiple opportunities to provide me with the information needed to follow instructions given to me on my appeals. Again the defense argues that all inmates are " REQUIRED " to attend A&O and sign for the receiving of the inmate handbook. 1st if an inmate is "REQUIRED" to follow a program the BOP is "REQUIRED" to provide the program to be followed. The defendant "KNOW" that staff and inmates were unable to follow normal procedures during the pandemic that modified operational plans were in place by the BOP COVID-19 ACTION PLAN that made it impossible. Yet the defendants are trying to hold me to properly utilize a system that they were not following at all. The defense could of provided the following documents to prove that an A&O was conducted BP-5597 BP-5518 or copy of the A&O master check list but didn't because no A&O was conducted. They then intentionally submit a intake form misrepresenting that this form was signed on 3-28-19 when it is from 3-28-14. to make it look like i recently was informed of the rules and regulations even if this form was from 2019 i was not arrested until 2021. Further if you look at the form it was clearly filled out after it was signed which is a standard of practice by the BOP during intake. The ink used does not match my signature so Mrs. Rogowski's statement that " I " signed for the book is knowingly false. This form was signed and dated at the exact time that the intake screen was entered into the computer supporting that this form was filled out after i signed it . This is all irrelevant anyways since it was from almost 9 years ago. Mrs. Rogowski also vindictively provided the form in her EX C violating my privacy rights this is a sensitive form and was not sealed before entering it into evidence. This is now a public document that has put my security and safety at risk in the prison. She knew of it sensitivity because she did attempt to black out my birthdate. I will be asking for compensation for this violation.

The defense continues to claim that i never attempted to fix the deficiencies in my grievances but as seen in my exhibits attached to the converted motion i clearly contacted the warden and other administrative staff for a reason never receiving a reply. The fact that i could not even get a BP-8 for over 5 months completes exhaustion requirement. The fact that administrative staff were returning grievances without filing them completes exhaustion. The staff were obviously put on notice of serious medical need posing life threats and treated my grievances with deliberate indifference.

NO REMEDY WAS MADE AVAILABLE

MICHAEL A WOOD

Exhibit #3

---

FROM: 41174509
TO:
SUBJECT:
DATE: 11/09/2023 07:49:51 PM

DECLARATION OF NICK STRONG

I WAS IN SEATAC IN 2022 I WAS NEVER PROVIDED AN INMATE HANBOKK OR ATTENDED AN A-O WHERE I WAS GIVEN RULES AND REGULATIONS AS REQUIRED BY POLICY. I WAS THEN PLACED INTO QUARANTINE WHERE I WAS NOT GIVEN ACCESS TO THE ELECTRONIC EMAIL SYSTEM WE WERE ONLY ALLOWED 2 OR 3 CALLS A WEEK AND A SHOWER EVERY 3 DAYS. THERE WAS NO ACCES TO MEDICAL OR SICK CALL. UNIT TEAM AND MEDICAL STAFF WOULD IGNORE YOU AND WALK FAST PAST YOPUR DOOR AND THE UNIT OFFICERS WOULD SAY THAT I HAD JUST AS GOOD OF CHANCE OF GETTING THEM TO LISTEN TO ME AS THEY DID. I SAW MANY NEW PEOPLE WHO WERE BEING DENIED MEDICAL CARE SPECIALLY PEOPLE WHO WERE DETOXING. MEDICAL WAS NON-EXSISTENT. AFTER BEING RELEASE INTO GENERAL POPULATION THERE WAS STILL NO ACCESS TO MEDICAL I WAS NEVER EVEN GIVEN MY INITIAL EXAME. I TRIED TO PLACE SICK CALLS AND WAS NEVER SEEN AT ALL EXCEPT FOR COVID OUTBREAKS WHEN I TRIED TO GET BP-8S I WAS DENIED BY UNIT COUNSELORS FLAT OUT AND WHEN A VISITING COUNSELOR GAVE ME THE ACTUAL COUNSELOR ASKED HOW I GOT THE BP-8 WHEN I TURNED IT IN AND I NEVER RECIEVED A RESPONSE MONTHS LATER I ASKED FOR ONE AND I WAS TOLD THAT THEY DONT GIVE OUT FORMS NO MORE THAT THEY TYPED THEM INTO THE COMPUTER AS YOU STATE YOUR GRIEVENCE I DID THIS AND NEVER RECIEVED A RESPONSE. I HAVE BEEN DOING TIME WITH MR WOOD SINCE 2022 IN SEATAC AND I WATCHED THE DECLINE IN HIS HEALTH WE ARE NOW TOGETHER WITH A OUPLE OTHER GUYS THAT WERE THERE TO AND WE ALL CANT BELIVE HOW BAD HE HAS GOTTEN OVER THE LAST COUPLE YEARS THERE IS STILL NO MEDICAL HERE AT VICTORVILLE ARE SICK CALL DAYS ARE ONLY ON MONDAYS AND USUALLY WERE ARE ON A LOCK DOWN IT TAKES MONTHS TO BE SEEN EVEN THEN NO CARE IS PROVIDED I PRAY TO GOD I DONT GET SICK OR HURRT AND END UP LIKE MR WOOD  THANK YOU

I SWARE UNDER PENALTY OF PURJORY EVERYTHING I SAID IS TRUE AND CORRECT

Exhibit #4

--------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, _Trey Johnson_

     DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

x _trey Johnson_ SIGNED
x _03-05-23_ DATED

KING COUNTY, SEATTLE, WA 98198

TRULINCS 63840509 - STEPHENS, JEFFREY - Unit: SET-D-B

--------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, _Jorge Navorrete_

　　　　DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE
ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY
COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM
WHILE AT FDC SEATAC.

X _____ SIGNED

X _03 - 05 - 2023_ DATED

KING COUNTY, SEATTLE, WA 98198

------------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, Trejo - Gomez

      DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X _____ SIGNED

X _____ DATED

KING COUNTY, SEATTLE, WA 98198

--------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, _Radford Carter_

     DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X _____ SIGNED
X 03/05/23 _ DATED

KING COUNTY, SEATTLE, WA 98198

--------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, *Pedro A. Parra*

     DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X_____SIGNED

X_____3/5/23_____DATED

KING COUNTY, SEATTLE, WA 98198

----------------------------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, _Jorge V_____

    DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X _Jorge V_____ SIGNED
X _3/05/23_____ DATED

KING COUNTY, SEATTLE, WA 98198

------------------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, Rafael Ramirez

     DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X _____ SIGNED
X 03-05-23 DATED

KING COUNTY, SEATTLE, WA 98198

---

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, _Jeffrey Stephens_

      DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X _____ SIGNED

X _____3/5/23_____ DATED

KING COUNTY, SEATTLE, WA 98198

---------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, *Dwight Chrenline*

      DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

x _____ SIGNED

x __5/6/23_____ DATED

KING COUNTY, SEATTLE, WA 98198

------------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, _CHRISTOPHER CRAWFORD_

      DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE
ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY
COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM
WHILE AT FDC SEATAC.

X _C.S.M_____ SIGNED

X _3/6/2023_____ DATED

KING COUNTY, SEATTLE, WA 98198

---------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, Craig Jordan

DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X Craig Jordan SIGNED
X March 5 1q 2023 DATED

KING COUNTY, SEATTLE, WA 98198

TRULINCS 63840509 - STEPHENS, JEFFREY - Unit: SET-D-B

------------------------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, Curtis Snipes

      DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X _____ SIGNED

X 3-5-23 _____ DATED

KING COUNTY, SEATTLE, WA 98198

---

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, _Steven E. Strauss_

      DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X _____ SIGNED

X ___03/05/23___ DATED

KING COUNTY, SEATTLE, WA 98198

------------------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I. _Justen Smith_ # 49193-086

     DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE
ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY
COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM
WHILE AT FDC SEATAC.

X _Justen Smith_ SIGNED

X _3-5-23_ DATED

KING COUNTY, SEATTLE, WA 98198

----------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, _Theod Irons_

     DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X _____ SIGNED

X _3-5-23_____ DATED

KING COUNTY, SEATTLE, WA 98198

------------------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, James Maigers

     DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X _James Maigers_ SIGNED

X _3/5/23_ DATED

KING COUNTY, SEATTLE, WA 98198

---------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, _Joshua Birk_

      DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X _John Bh_   SIGNED

X _3/5/2023_   DATED

KING COUNTY, SEATTLE, WA 98198

--------------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, _João Ricardo DeBorba_

    DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X_____ SIGNED

x 03/05/2023 DATED

KING COUNTY, SEATTLE, WA 98198

---------------------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, Entz, Zachary D.

     DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X _____ SIGNED

X _____ 3/5/23 DATED

KING COUNTY, SEATTLE, WA 98198

---

FROM: 63840509
TO:
SUBJECT: DECLARATION
DATE: 03/05/2023 12:35:21 PM

I, *Robby L. Robinson*

       DECLARE UNDER PENALTY OF PERJURY THAT I HAVE SIGNED MY NAME HERE AND/OR IN THE ATTACHED DOCUMENTS, AND THAT IN THE ATTACHED DOCUMENTS I WROTE MY REGISTER NUMBER AND/OR MY COMPLAINT AGAINST THE BOP REGARDING UNDUE DIFFICULTY WITH THE ADMINISTRATIVE REMEDY PROGRAM WHILE AT FDC SEATAC.

X_____ SIGNED

X__3-5-2023__ DATED

KING COUNTY, SEATTLE, WA 98198

②

cop-outs with "<u>No</u>" responses back from Medical health Services at FDC-SeaTac.

Sept-Oct 2022 I was able to finally get to see and talk with Counselor Pope after 90% of US [inmates] were once again exposed to the Covid-19 variant and where once again placed under "Isolation Status" without any treatment for the illness and locked in our rooms for 18 days. "No phone calls" AND "No Computer Access" too inform our family and loved ones.

Counselor Pope reluctantly had gotten my BP-8 Signed off so I could move ahead to file a BP-9. It took me another two weeks to get someone to give me a BP-9 form. I asked Mr Harris on how to proceed forward and he said ask around to the inmates. I was taken back that there was "<u>No formal</u>" written process, that pre-trial inmates, that have never been in the federal system ever in there life without not knowing what to do.

I filled it out and attached my BP-8 to the BP-9 and when I saw Mr Harris I asked what to do next with this paperwork? He said I could give it to him to deliver it to the proper department and person to be typed up. Mr Harris made a comment to me that has always stuck, "do you trust me to deliver these documents to the right person?" I said, I believe "Yes", I have never heard anything back since.

My BP-8, BP-9 both unanswered as of today March 5th 2023. I put in a BP-9/10 to regional with <u>No Response</u>.

95906-509          March 5, 2023

Zachary D. Ertz #48215-086
I have attempted here at FDC Seatac,
to file BP-8's, sensitive 10's and informal
conflict resolution at least 8 times since
November 2022. No staff have assisted me
with this, infact I have been told by
my counsler several times that he
would NOT file against medical, to just go
on ahead and file a BP9. This wont work, which
he is aware of, his the reason I'm writing this
Thankyou 3/4/23, Zach Ertz #48215-086

Justen Smith # 49193-086. Here At FDC Seatac & FCI Herlong
Ive Never Been Shown How to Fill out A BP 8 too they
make It Almost Impossable to Ever Get

Robby Robinson #44768-086 I have never had the admh.
remedies explained to me and have been denied
BP-8, BP-9 sensitive, BP-7, BP-10 sensitive, and
have had no response to an extreme amounts of
emails copouts to medical and wardens since 2015.
3-4-2023

Curtis Snipes 26026-086
I'VE BEEN HERE AT FDC SEATAC FOR 23 MONTHS
TRYING TO GET TO AN OUTSIDE HOSPITAL FOR
SURGERY. I R HAVENT GOTTEN THE SURGERY BUT
IT TOOK CLOSE TO ONE YEAR TO GO. I SHOULDNT
TO WAIT THIS LONG. NOW I'M HAVING ISSUES
WITH MY KNEES. THE MEDICAL HERE IS HORRIBLE?
I HAVE NEVER BEEN INSTRUCTED HOW TO FILE
ANY BP 8s - 9's or 10's. I DID THEM ON MY OWN!

James Mayers 02448-510 I have been here for
11 Months and I have never been Helped or even Shown
How to Send a BP-9. I still to this day dont
Know How.

74044-308

Rafael A Conez - Never instructed for grievance *on how*
tryed filing BP8-BP9 was trown away by counselor
Rafael Ramirez - S3063-509 Vision problems Filed BP8 No response
Navarrete Jorge - 84777509, Never instructed on how to file claims at all.
Fernando Lopez - 50021-086
Valdez Jorge 66737-308 Never instructed on how
Trejo Gamez 50066-086 Never instructed on how
Raymundo Epidio Galvez #34300510
Valenzuela Betancourt Juan Manuel #14119-510
Parra Pedro - 76738509, Never instructed on how to File claims at all.
Vieyra Guillermo - 27685510
AlCARAR Manduño JUAN de Dios
Alejandro URQUIVEZ - A651510
Juan Lugo Enriquez - 27906510
Alejandro Macias - 10031-310
Francisco Lopez - 73080-509
José Ibarra - 20034-509
Juan Enrique Hernandez 59963-408
OSCAR BODRIGUEZ - 44446-086
DANIEL VAZQUEZ ARROYO - 207-72-510
Ernesto Casillas - 20766-510
~~Scott Smith 16060~~

Craig Jordan - 38548-509 I tried file a BP8 Form c/o Smith
I was told medical is short staff right now so I should wait
a few days before i give it back (turn in) I have it dated
and still have it he never had time for me to turn it in.
This is serval month ago no staff has ever told or help me fill it
out only other inmates.

• Trey Johnson 74389-509
When I first arrived at seatac I informed
the People in Processing I have medical issues I'd
Like to get figured out soon as Possible, when
I made it up to my unit there was no stable way
to get the Process Rolling I was Just told the same Thing
said to everyone "That were under staffed" and was
givin no option of a grievence until speaking
with another in mate

Joshua Buck 98235-509    I have medical issues that were never answered, I filled both BP8 & BP9 with no response. One counselor left then another was assigned. The new counselor stated "lets let medical catch up." There has been no further response! So I was forced to refile, cause apparently they lost my original. But Im still being denied another form. Also no staff member knows how to file! I've never been given clear instructions!    _John Buck_

Jeffrey Stephens    63840-509    _Stephens_
After sending cop-outs regarding a medical issue for over a month, I approached counselor Pole in 09/22 to file a BP-8. I was given a scanned copy of my request, but she never got a response from medical. After waiting 3 weeks, I went to see if I had a response, and Pole told me that I was supposed to follow up with her regularly about the BP-8 so she did not proceed to get a response from medical. She never told me that I had to follow up with her regularly; I was just expecting an answer. She then told me to check back in two days. I wasn't able to see her until five days later where she ignored me and said that she'd "get around to it," and to check in again six days later. ~~That day to six days~~ later when I saw her, we were locked down for the entire day, so I asked her when she had walked by my door if she had received a response, and she said to only bother her about that during office hours, and she's not in her office; I was locked down, so I couldn't go to her office. Pole then left as Counselor and was replaced by Counselor Smith. In 11/2022, I asked Smith about my BP-8 request. He told me that I had to file again, meaning that the last one was functionally lost — I never received a response for my BP-8 and have yet to be seen by medical for this issue! Also, I was told by Counselor Pole that I had to get a response on a BP-8 before getting a response on a BP-9. I now know, from later asking other inmates, that this isn't always true. No staff member ever instructed me on how to file administrative remedies, and in fact, I was given wrong information by staff

TRULINCS 04141510 - CRAWFORD, CHRISTOPHER - Unit: SET-D-B

------------------------------------------------------------------------------------------

FROM: 04141510
TO: F Unit Team
SUBJECT: ***Request to Staff*** CRAWFORD, CHRISTOPHER, Reg# 04141510, SET-D-B
DATE: 02/13/2023 01:37:07 PM

To: Giere
Inmate Work Assignment: none

I have requested grievance forms from smith to exhaust my options before filing tort claims and he denied me saying "it's too much work". I have already sent in one tort claim to regional and I plan to send off 2 more. I see this as an attempt to circumvent my rights and prevent a lawsuit from being filed and I am documenting it as such. I will also be noting this in the civil case(s) I will be filing.

My grievances revolve around a wrist injury I sustained in October, causing massive pain and lose of function that hasn't had anything done about. I reported it about 20 times, spoke to nurses and nurse practitioners filed paper kites, spoke to smith etc.. 2 and 3 months ago radiology and orthopedic appts were scheduled and nothing has been done. The radiology appt was even refiled, pushing it out further.

I also requested (had requested actually, by intake) an optometry appt on the day I arrived, June 2 2022. It was approved in January after 7 months. In that time I have had to wear the same pair of weekly wear contacts, suffering multiple eye infections. Either that or I cant see anything farther than LITERALLY 1 foot in front of my face. Then commissary stopped selling contact solution in November so now my contacts are gone.

Finally I have been asking to see psychology since I arrived to address my extensively documented mental health issues and it wasn't until I became suicidal in November that I got to speak to anyone. AT that time I was told I could speak to a psychiatrist about medication and that has yet to happen.

I need glasses and nothing is being done. I did not ask to be stuck in this crap-hole and I have not been found guilty of anything. I was sent to the hole for 5 said in august for not tucking in my shirt and at that time I was lectured that all that was required of this facility was that my health and safety be looked after and neither of those have been done. I will be filing civil cases and I will be charging this facility with conspiracy to obstruct as well as neglect and pain and suffering.

Sincerely
C. Scott Crawford

---

FROM: 04141510
TO: F Unit Team
SUBJECT: ***Request to Staff*** CRAWFORD, CHRISTOPHER, Reg# 04141510, SET-D-B
DATE: 02/01/2023 08:37:44 PM

To:
Inmate Work Assignment: none

***Correction***

"BP8 grievance form"
-----CRAWFORD, CHRISTOPHER on 2/1/2023 7:23 PM wrote:

>

The following is for record/investigative purposes pertaining to my already filed tort claim for lack of medical care.

Today, February 1st, I requested a BPA grievance form so as to exhaust all my resources to attempt to resolve my issue. I was denied on the grounds that "it was too much work".

I cant exhaust all my avenues of resolution under those circumstances but I have tried and this should be taken into consideration upon investigation of my tort claim

Thank you.
Christopher Crawford

TRULINCS 63840509 - STEPHENS, JEFFREY - Unit: SET-D-B

-----------------------------------------------------------------------------------------

FROM: 63840509
TO: F Unit Team
SUBJECT: ***Request to Staff*** STEPHENS, JEFFREY, Reg# 63840509, SET-D-B
DATE: 10/07/2022 03:24:05 PM

To: C. Fernandez
Inmate Work Assignment: None

Hello Case Manager Fernandez,

Just to bring to your attention, I've been trying to file a BP-8 for upwards of a month now with Counselor Pope. I just want to be seen by medical for reasons to do with pain that I experience that I believe has to do with my pancreas, the possiblity of being pre-diabetic. I thought I filed a BP-8 with her early in September, but apparently that never actually happened. I was given a scanned copy of my request, but she never got word from medical. I learned this as I was approching to her to file a BP-9, but she told me that I needed a response on my BP-8 first. Before this I had been continually requesting sick calls to Medical directly for over a month, not to mention previous copouts some months prior that never got answered.

I was under the impression to that I would get an answer from them. I waited 3 weeks and then went to file my BP-9 on Tuesday 9/27. Pope then told me that I was suppose to follow up with her regularly about the BP-8 (she never told me to do this, I was just expecting an answer--and in now way did she express that the BP-8 was not filed as of then). She then told me to check back in with her about the BP-8 in two days, Thursday 9/29. I wasn't able to see her this day but I did run into her I believe on Saturday 10/1; I asked her if there was any update on a response and she said she would get around to it. She says check with her today, Friday 10/7. While we were on lock down this morning, she was walking around the unit, I ask her through my door if she had gotten a reply from medical about my BP-8 (that was initially filled out, and I thought filed, one month prior) and she says to only bother her about that during office hours, she's not in her office. Obviously I can't go to her office, I'm locked down.

I am being clearly slow walked to even file a BP-8. It's when she'll get around to it. When I waited a excessive amount of time to follow up, she disparaged me for not checking up regularly (despite never telling me to do so). Now I am checking up regularly, she first tells me to check back in 2 days, and then 8 days after that, still nothing. This could basically just go on forever. This is what we're having to deal with to file a BP-8. Should I just file a BP-9 to regional?

Thank you for reading.

------------------------------------------------------------------------------------------------

FROM: 63840509
TO:
SUBJECT: October 2023 note: Admin Remedy
DATE: 10/16/2023 08:32:18 PM

In late 2022, I had issues filing an informal for issues that I believed had to do with my pancreas. This episode is summarized in a electronic copout I sent to Officer Fernandez who was the Unit Manager at the time (in the copout, I address him as Case Manager but that was a mistake; he was the Unit Manager). After this copout, I never got a response to my BP-8 that I had submitted to Counselor Pope.

I was told in December by nurse Durano that I would get blood work and then I have a sick-call and that this would happen quickly. Over a month passed until I got my blood work, and after that I never was seen by sick call. In any case, despite trying to grieve, I never got a response on even an informal resolution and I was never seen by sick call. I had noticed that the symptoms I was experiencing would go down if I limited my sugar and caffeine intake. So, I just adjusted my diet and gave up on the administrative remedy process and on being seen by sick call.

Now about a year later, it's still apparent that the administrative remedy process is broken and sick call basically doesn't exist. On September 18, 2023 I broke my big left toe after slipping while walking the tier in my unit. My toe was purple, swollen, there were dark red lines on the joints, and was, and still is, painful to move it. I showed pill-line nurse Riedl-Figueroa my toe on September 20, 2023. She had me prescribed ibuprofen, and mentioned that I she would try to scheduled me for an x-ray but that they are backed up and to not expect an appointment anytime soon. I told her, and also have sent multiple copouts saying that I need to be seen by sick-call. Now it is nearly a month after my accident and I have not been seen by sick-call. Also, I filed a BP-8 to Counselor Smith on 9/27/23.

3 weeks have passed and there has been no response. I followed up with him at one point about where my BP-8 was and he said that he wasn't sure where it was, or what has happened so far, and that he would have to go find it.

TRULINCS  04141510 - CRAWFORD, CHRISTOPHER - Unit: SET-D-B

----------------------------------------------------------------------------------------

FROM: 04141510
TO: F Unit Team
SUBJECT: ***Request to Staff*** CRAWFORD, CHRISTOPHER, Reg# 04141510, SET-D-B
DATE: 10/16/2023 08:14:47 PM

To: lavatai
Inmate Work Assignment: none

late in 2022 I filed multiple cop outs and a BP-8 about my messed up thumb (tendonitis) as well as a BP-8 about optometry. My thumb issue was eventually resolved, after 5 months of pain and immobility of that thumb but my BP-8 was never answered. Same for my BP-8 about optometry. It has be 17 months since a optometry appointment was requested by medical and over 10 months since I was approved yet still I have not seen optometry. My BP-8 was never answered and i have to be able to get glasses. I have been wearing one crusty contact and I am almost blind without it. Out of frustration I have given up with the grievance process. It sucks here. It's basically nonexistent. I have been told it is too much work to follow up or that I am being entitled.

Exhibit #5

------------------------------------------------------------------------------------

FROM: Fri, Jamie
TO: 63840509
SUBJECT: report and recomendation part 1
DATE: 05/11/2023 07:36:11 PM

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER FRICK,

Plaintiff,

v.

DR. DY, et al.,

Defendants.

Case No. C22-801-JHC-MLP

REPORT AND RECOMMENDATION

## I. INTRODUCTION

This is a prisoner civil rights action proceeding under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). Plaintiff Christopher Frick ("Plaintiff"), proceeding pro se and in forma pauperis ("IFP"), is an individual who was confined at the Federal Detention Center ("FDC") in SeaTac, Washington, at the time he filed this action. 1 Plaintiff has filed an amended complaint alleging various deprivations of his constitutional rights related to the handling of his Crohn's disease, dental health, and the COVID-19 pandemic during his incarceration at FDC SeaTac. (See Third Am. Compl. (dkt. # 52) at 2-10.)

1 On December 14, 2022, the Honorable Richard A. Jones temporarily released Plaintiff from custody in his underlying criminal case for purposes of obtaining treatment for his medical conditions in the community. See United States v. Frick, CR21-110-RAJ-1 (W.D. Wash.), dkt. ## 126-27. Plaintiff remains on home detention on an appearance bond. Id., dkt. ## 133, 151.

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 1 of 20

REPORT AND RECOMMENDATION - 2

This matter comes before the Court on: (1) Defendants' Motion to Dismiss ("Defendants' Motion"); (2) Plaintiff's "Motion to Strike Defendants' Motion and Request for Sanctions" ("Plaintiff's Motion"); and (3) Defendants Kevin Posalski and T. Thomas's Motion to Join Co-Defendants' Motion to Dismiss ("Defendants' Motion for Joinder"). (Defs.' Mot. (dkt. # 59); Pl.'s Mot. (dkt. # 63); Defs.' Joinder Mot. (dkt. # 68).)

Defendants generally contend that Plaintiff's amended complaint should be dismissed for

---

failure to exhaust his administrative remedies prior to bringing this action.2 (Defs.' Mot. at 1-2.) Plaintiff filed a response opposing Defendants' Motion, and Defendants filed a reply. (Pl.'s Resp. (dkt. # 62); Defs.' Reply (dkt. # 64).) Based on Plaintiff's request, this Court additionally authorized a supplemental response and reply to allow Plaintiff time to receive records from FDC SeaTac. (Order (dkt. # 72); Pl..'s Supp. Resp. (dkt. # 73); Defs.' Supp. Reply (dkt. # 75).) Having considered the parties' motions, the governing law, and the balance of the record, the Court recommends that: (1) Defendants' Motion for Joinder (dkt. # 68) be GRANTED; (2) Plaintiff's Motion (dkt # 63) be DENIED; and (3) Defendants' Motion to Dismiss (dkt. # 59) be DENIED, as further explained below.

II. BACKGROUND

A. Plaintiff's Claims

On January 3, 2023, this Court directed Plaintiff's third amended complaint be served on Defendants. (Dkt. # 54.) Plaintiff asserts claims in his third amended complaint against ten FDC SeaTac employees: (1) Chief Dentist James Parker; (2) Dr. Maria Dy; (3) Unit DC Counselor

2 Defendants assert in a footnote that Plaintiff has no remedy for his claims because they are an impermissible extension of Bivens and Defendants are otherwise entitled to qualified immunity. (Defs.' Mot. at 1 n.1 (citing Ziglar v. Abbasi, 137 S. Ct. 1843, 1845-55 (2017); Egbert v. Boule, 142 S. Ct. 1793, 1803 (2022)).) Defendants did not specifically raise these defenses in the instant motion, but note that they reserve the right to raise these defenses at a later time. (Id.)

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 2 of 20

REPORT AND RECOMMENDATION - 3

Jeffrey Smith; (4) Unit DB Counselor Jason Behling; (5) Unit Team Supervisor Christopher Fernandez; (6) Warden Israel Jacquez; (7) Clinical Director Scotty Bussell; (8) Health Service Administrator ("HSA") Giles Durano; (9) Acting Assistant HSA Kevin Posalski; and (10) HSA "T. Thomas." (Third Am. Compl. at 1-2; see also Defs.' Mot. at 2-3.)

In his first count, Plaintiff alleges Dr. Dy and Chief Dentist Parker violated his Fifth Amendment rights, resulting in deliberate indifference to his medical needs, when they failed to properly treat his Crohn's disease by prescribing him prednisone for flare ups between June 2021 and August 2022, and failing to monitor adverse effects of the medication, and when they failed to schedule any follow up appointments or lab work. (Third Am. Compl. at 2-3.) Based on this treatment, Plaintiff alleges he has suffered from uncontrolled flares of his Crohn's disease, abdominal pain, internal bleeding, and other related ailments. (Id. at 3.)

Plaintiff alleges in his second count that Chief Dentist Parker violated his Fifth Amendment rights, resulting in deliberate indifference to his serious dental health needs. (Third Am. Compl. at 3-4.) Plaintiff claims that in June 2021, he reported experiencing pain in an anchor tooth used to support his partial denture. (Id. at 3.) Upon examination at that time, Chief

Dentist Parker allegedly advised Plaintiff that his anchor tooth was cracked and exposing a tooth nerve, which was causing him pain. (Id.) Plaintiff alleges that following that examination he was refused further examination and treatment, and as a result, he continues to suffer from serious dental pain, his anchor tooth will no longer support his partial denture, and his inability to chew has caused adverse effects on his diet and Crohn's disease. (Id. at 3-4.)

Plaintiff's third count alleges that Unit DC Counselor Smith, Unit DB Counselor Behling, and Unit Team Supervisor Fernandez violated his Fifth Amendment due process rights, resulting in deliberate indifference to his safety. (Third Am. Compl. at 4.) Plaintiff alleges that Defendants Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 3 of 20 REPORT AND RECOMMENDATION - 4

Smith, Behling, and Fernandez facilitated a series of inmate moves on January 10, 2022, while FDC SeaTac was in a COVID-19 lockdown, that exposed him to COVID-19. (Id.) Plaintiff alleges that during these inmate moves, though he had tested negative for COVID-19, he was transferred into a cell that had housed inmates who had tested positive for COVID-19. (Id. at 4.) As a result, Plaintiff alleges he contracted COVID-19. (Id.) Despite having tested positive for COVID-19, Plaintiff alleges that he was then told to continue working as a unit orderly, allowing for further spread of the virus. (Id.) Based on his exposure and contraction of COVID-19, Plaintiff claims that he now suffers from, inter alia, symptoms of long-term COVID-19, more frequent Crohn's disease flares, and a worsening of his compromised immune system causing him severe cramping, bleeding, and vomiting. (Id. at 4-5.)

Plaintiff alleges in his fourth count a claim under Monell v. Dep't. of Soc. Servs. of City of New York, 436 U.S. 658 (1978). (Third Am. Compl. at 5.) Specifically, Plaintiff alleges that Warden Jacquez as the policy maker for FDC SeaTac, Clinical Director Bussell as the manager of inmate healthcare, and the Federal Bureau of Prisons ("BOP") as the implementing party responsible for the COVID-19 action plan, each violated his Fifth Amendment constitutional rights of informed consent and access to medical health services.3 (Id.) Plaintiff alleges that the BOP implemented the COVID-19 action plan in March 2020, which resulted in Plaintiff being forcibly tested for COVID-19 and being placed in quarantine for nearly a month without access to medical or the sick call system. (Id.) Plaintiff alleges that Warden Jacquez authorized a policy of allowing for forcible testing instead of allowing Plaintiff the option to choose segregation over

3 Though named in this count, Plaintiff did not list the BOP as a defendant in his amended complaint and has previously been advised that it is not a viable party for a Bivens claim. (See dkt. ## 10 at 4-5, 17 at 12 ("Plaintiff has asserted a claim against BOP, but Plaintiff failed to name the BOP as a Defendant in his proposed amended complaint, and as Plaintiff has been previously advised, there can be no Bivens cause of action against a federal agency. See FDIC v. Meyer, 510 U.S. 471, 484-486 (1994).").)

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 4 of 20

forced testing. (Id.) Plaintiff further alleges that Clinical Director Bussell failed to have Plaintiff properly screened by medical personnel upon his arrival or to direct the medical staff to respond to Plaintiff's multiple complaints requesting treatment for his conditions. (Id.) As a result of these policies, Plaintiff alleges that he has suffered "bodily assault," a black eye, lack of medical treatment, and emotional pain and suffering from not having received proper medical care. (Id. at 5-6.)

In his fifth count, Plaintiff alleges that Clinical Director Bussell and HSA Durano violated his Fifth Amendment rights to due process, resulting in deliberate indifference to his medical needs. (Third Am. Compl. at 6.) Plaintiff alleges that Clinical Director Bussell and HSA Durano both failed to review or act on his multiple requests for medical care regarding his Crohn's disease and dental issues, specifically claiming to have sent "over 100 medical sick call requests" over the last 14 months without receiving a reply or an appointment. (Id.) Plaintiff further claims that HSA Durano failed to follow up about the long-term effects of continued prednisone use on his Crohn's disease, failed to give access to assistance from outside health care providers, and failed to schedule a dental appointment to extract or fix his cracked anchor tooth. (Id.) Plaintiff asserts that he suffered from severe Crohn's disease flare ups, blood loss, cramping, medication side effects, emotional distress, and tooth pain as a result of the lack of medical care. (Id.)

In his sixth count, Plaintiff alleges that Acting Assistant HSA Posalski and HSA T. Thomas violated his Fifth and Eighth Amendment rights to adequate medical care, resulting in deliberate indifference to his medical needs.

4 (Third Am. Compl. at 7.) Plaintiff claims that both

4 Plaintiff was previously advised that the Eighth Amendment was an improper vehicle for bringing his claims as a pretrial detainee. (See dkt. # 17 at 10 ("Because Plaintiff is currently a pretrial detainee . . . the Eighth Amendment has no applicability because the government 'does not acquire the power to punish

----------------------------------------------------------------------------------------------

FROM: Fri, Jamie
TO: 63840509
SUBJECT: report and recomedation part1-b
DATE: 05/11/2023 07:36:11 PM

HSA Posalski and T. Thomas failed to treat his Crohn's disease and failed to monitor his lab results and high blood pressure, which they were court ordered to treat by Judge Jones in his criminal case. (Id. (citing United States v. Frick, CR21-110-RAJ-1 (W.D. Wash.), dkt. ## 121, 126).)

Plaintiff alleges that both HSA Posalski and T. Thomas also failed to provide him release medications despite being aware that he was being released to receive care for his medical ailments. (Third Am. Compl. at 7.) Plaintiff claims that he had to go to the emergency room shortly after being released due to "acute steroid withdrawal" because he was not provided release medications. (Id.) Plaintiff further notes that, in November 2022, HSA Posalski provided him ibuprofen, which is contraindicated for his medical conditions, in place of previously prescribed painkillers and left him with no pain medication after an oral surgery. (Id. at 7-8.) Plaintiff claims that as a result of the lack of medical care, he has now developed other medical conditions, including high blood pressure, steroid addiction, and heart issues, and that he has suffered from prolonged mouth pain. (Id. at 8.)

Finally, Plaintiff alleges in his seventh count that Warden Jacquez violated his Fifth Amendment rights, resulting in deliberate indifference to his safety, by implementing and overseeing FDC SeaTac's Primary Care Provider Team health service program. (Third Am. Compl. at 8-10.) In sum, Plaintiff claims that Warden Jacquez is responsible for short staffing at FDC SeaTac since January 2020, which has resulted in an insufficient electronic sick call system that allowed for his medical conditions to go untreated. (Id. at 8-9.) As such, Plaintiff claims inter alia that his treatment while at FDC SeaTac consisted solely of documenting his worsening condition, continuing ineffective steroid treatment that caused him to become dependent on such with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.' Ingraham v. Wright, 430 U.S. 651, 672 n.40 (1977).").)

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 6 of 20

REPORT AND RECOMMENDATION - 7

---------------------------------------------------------------------------------

treatment, and failing to address life-threatening blood pressure readings that resulted in heart complications. (Id. at 9-10.)

Plaintiff seeks $10 million in compensatory damages and $30 million in punitive damages, and he requests that the charges in his criminal case be dismissed due to his conditions of confinement. (Third Am. Compl. at 10.)

B. BOP Administrative Remedy Program

Per Defendants, FDC SeaTac utilizes the BOP Administrative Remedy Program for inmates to submit complaints concerning their confinement. (Brieschke Decl. (dkt. # 60) at ¶¶ 3, 5 (citing 28 C.F.R. §§ 542.10-542.19).) All inmates upon arrival at any BOP institution, via initial placement or transfer, are required to attend "Admissions and Orientation," which covers what the program is, what it is used for, and how to access it. (Id. at ¶ 8.)

The inmate must first seek informal resolution of their issue through their institution's staff using an informal resolution form referred to as a BP-8. (Brieschke Decl. at ¶ 4 (citing 28 C.F.R. § 542.13).) After seeking an informal response on a BP-8, the inmate may then submit a formal complaint to the institution's warden by filing a BP-9 if the informal response to the BP-8 is unsatisfactory. (Id. (citing 28 C.F.R. § 542.14).) If the institution's warden denies the BP-9,. the inmate may then appeal the denial to the Regional Director of the region in which they are confined by filing a BP-10. (Id. (citing 28 C.F.R. § 542.15(a)).)

If the Regional Director denies the BP-10, the inmate may then appeal to BOP's General Counsel in Washington, D.C by filing a BP-11 within 30 days of the Regional Director's response. (Brieschke Decl. at ¶ 4; see also id. at ¶ 9(I) (citing 28 C.F.R. § 542.15(a)).) Exhaustion of administrative remedies does not occur until the inmate has requested and been denied relief at each level. (Id.)

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 7 of 20

REPORT AND RECOMMENDATION - 8

------------------------------------------------------------------------------

C. Plaintiff's Administrative Remedy History

Plaintiff was in custody at FDC SeaTac from May 20, 2021, until December 15, 2022. (Second Brieschke Decl. (dkt. # 65) at ¶ 3.) Relevant to the period of Plaintiff's allegations, on May 23, 2022, Plaintiff filed a BP-9 that requested: (1) medical care for his Crohn's disease; (2) an explanation for why he was being given medication for his Crohn's disease that was contraindicated for his condition; (3) a special diet due to difficulties he was having eating because of his dental issues; and (4) an explanation for why he was let go from his inmate job. (See Brieschke Decl. at ¶ 9(E); Pl.'s Resp. at 10, 14, 24.) The remedy was rejected the same day because Plaintiff did not submit the required number of copies, because it contained too many issues, and because it did not relate to issues contained in his previously filed BP-8.5 (Id.)

Plaintiff was advised to correct his remedy and to re-submit within five days. (Id.) On July 11, 2022, Plaintiff re-filed the same remedy. (Brieschke Decl. at ¶ 9(F).) However, this remedy was also rejected on the same day because it contained too many issues. (Id.) Plaintiff was advised to correct and re-submit within five days, but per Defendants' records, Plaintiff did not re-submit this remedy. (Id.)

On August 3, 2022, Plaintiff filed a new BP-9 again requesting both medical and dental attention for his ailments. (Brieschke Decl. at ¶ 9(G); Pl.'s Resp. at 13.) This remedy was closed on September 1, 2022. (Brieschke Decl. at ¶ 9(G).)

On October 17, 2022, Plaintiff appealed the September 1, 2022 decision, but this remedy was rejected the same day by the BOP Regional Director because Plaintiff did not appeal on the proper form. (Id. at ¶ 9(I); Pl.'s Resp. at 23.) Based on Defendants' records, an appeal of this

5 A submitted "remedy" allows an inmate to file a complaint or grievance concerning their confinement in BOP's Administrative Remedy Program. (See Brieschke Decl. at ¶ 3 (citing 28 C.F.R. §§ 542.10-542.19); see also Second Brieschke Decl. at ¶ 3.)

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 8 of 20

REPORT AND RECOMMENDATION - 9

remedy would have been due to BOP's General Counsel by November 17, 2022, but Plaintiff did not appeal. (Brieschke Decl. at ¶ 9(I).)

On August 15, 2022, Plaintiff filed a remedy complaining about FDC staff, "being placed in cell 29", and COVID-19 issues at FDC Sea-Tac. (Brieschke Decl. at ¶ 9(H).) Per Defendants' records, this remedy was closed the same day, and Plaintiff did not appeal. (Id.) Therefore, based on Defendants' records, Defendants represent that Plaintiff did not exhaust the BOP Administrative Remedy Program with regard to any of the issues he raises in his third amended complaint. (Id. at ¶ 10.)

However, Plaintiff asserts that several of his filed administrative remedies were either not considered, not responded to, or not tracked by Defendants' database. (Pl.'s Resp. at 1.) Plaintiff has submitted in support of this assertion a record of an administrative remedy appeal he alleges he filed on October 3, 2022, with regard to his medical and dental issues, but indicates he never received a response to. (Id. at 11-12.) Plaintiff has also submitted correspondence concerning multiple inquires he made to FDC SeaTac staff about the status of his administrative remedies. (Id. at 14-17, 19.) Based on this correspondence, it appears that Plaintiff's BP-9 that he filed with regard to his request for medical care for his Crohn's disease and a special diet was lost by FDC staff, though Plaintiff was advised based on his inquiry that it had been rejected. (Id. at 15-16.) Plaintiff additionally provides evidence of inquiries he sent to FDC staff on May 22-23, 2022, and on June 8, 2022, that indicate he had filed multiple administrative remedy requests over the past six months, but had received only one response about having too many issues listed in his remedy. (Pl.'s Resp. at 17, 19-21.) Across these inquiries, Plaintiff sought explanation for why his administrative remedies were disappearing or otherwise being denied. (Id.) Based on Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 9 of 20 REPORT AND RECOMMENDATION - 10

this evidence, Plaintiff avers several of his remedies either received no response or were designated "as lost and never returned." (See id. at 19.)

D. Plaintiff's Additional Evidence

Plaintiff has also submitted to the record a declaration from Paula Olson, his appointed defense counsel in his criminal case, who has represented Plaintiff since June 2021. (Olson Decl. (dkt. # 74).)

Per Ms. Olson, she learned early in her representation of Plaintiff that he had significant medical issues that were being unattended to while confined at FDC SeaTac. (Olson Decl. at 1.) Based on his lack of received medical attention for his Crohn's disease and cracked tooth, Ms. Olson filed several motions seeking review of Plaintiff's detention status, which as noted above, ultimately resulted in Plaintiff's temporary release by Judge Jones to obtain treatment. (Id.; see also United States v. Frick, CR21-110-RAJ-1 (W.D. Wash.), dkt. ## 126-27.) Ms. Olson further states that Plaintiff informed her on many occasions of "emails and electric copouts" he sent to medical staff at FDC SeaTac, as well as his efforts to appeal any unfavorable response to the

--------------------------------------------------------------------------------

warden. (Olson Decl. at 1-2.) Ms. Olson asserts that she is "aware and [has] seen multiple grievances that [Plaintiff] filed that were not responded to." (Id. at 2.)

Finally, in an attached exhibit to Ms. Olson's declaration, Plaintiff has submitted several signed declarations and statements from at least 20 FDC SeaTac inmates regarding their inability to exhaust their administrative remedies with regard to requests to seek medical attention while confined at FDC SeaTac. (See Olson Decl., Ex. 1 (dkt. # 74-1) at 1-29.) In general, the inmate statements represent that FDC SeaTac Unit Counselors routinely fail to file inmate remedies, only accepting inmate remedies after a significant delay or otherwise refusing to accept inmate

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 10 of 20

REPORT AND RECOMMENDATION - 11

remedies at all.

6 (See id. at 23-27.) The inmates' statements further claim that any remedies that are accepted regularly do not receive responses, and as a result, the FDC SeaTac inmates are unable to exhaust their administrative remedies. (See id.) The inmates' statements also represent that none of them were given an orientation, handbook, and/or guide by FDC SeaTac staff as to how to file a remedy under the BOP's Administrative Remedy Program, and that they do not receive assistance from FDC SeaTac staff on how to properly fill out the required forms. (See id.)

III. DISCUSSION

--------------------------------------------------------------------------------

FROM: Fri, Jamie
TO: 63840509
SUBJECT: recomedtation and report the rest of part 1b
DATE: 05/11/2023 07:36:11 PM

A. Defendants' Motion for Joinder

First, Defendants' Motion for Joinder seeks to join Defendants' Thomas and Posalski to Defendants' Motion. (Defs.' Joinder Mot.) At the time Defendants' Motion was initially filed, Defendants Thomas and Posalski had not yet obtained representation from the Department of Justice. (See Defs.' Mot. at 1, n.1.) However, both subsequently obtained representation prior to Defendants' Motion becoming ripe for the Court's consideration. (See dkt. # 67.)

As detailed above, Plaintiff's third amended complaint raises claims against both Defendants Thomas and Posalski for alleged violations of his Fifth and Eighth Amendment rights to adequate medical care based on their alleged failure to treat his Crohn's disease and dental health. (See Third Am. Compl. at 7-8.) These claims are of the same constitutional import and dimension as those brought against the other FDC SeaTac Defendants. (See id. at 3-6.) In addition, Defendants Thomas and Posalski similarly claim that Plaintiff has failed to exhaust his

6 Plaintiff's submitted evidence also includes "TRULINCS" communications between two FDC SeaTac inmates and FDC SeaTac staff from October 2022 and February 2023 evincing the inmates' difficulties and delay in being able to file the required BP-8 and BP-9 forms for BOP's Administrative Remedy Program. (Olson Decl., Ex. 1 at 27-29.) However, it is unclear from these submissions whether these inmates' inquiries were responded to by FDC SeaTac staff.

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 11 of 20

REPORT AND RECOMMENDATION - 12

administrative remedies with respect to the claims asserted against them. (Defs.' Joinder Mot. at 2-3.)

Defendants Thomas and Posalki's arguments are both factually and legally appropriate for consideration in conjunction with Defendants' Motion. Plaintiff has also not submitted any opposition to Defendants Thomas and Posalski joining in Defendants' Motion. Therefore, Defendants' Motion for Joinder should be granted.

B. Plaintiff's Motion to Strike and Request for Sanctions

Next, Plaintiff's Motion requests that the Court strike Defendants' Motion and issue sanctions against Defendants for failing to mail him copies of Defendants' Motion. (Pl.'s Mot. at 1.) Plaintiff avers that Defendants mispresented to the Court that their motion was sent by certified mail as he did not receive it. (Id.) Plaintiff represents that he only learned of Defendants' Motion after talking with his defense counsel in his criminal case, who discovered

the motion had been filed and informed Plaintiff. (Id.) Plaintiff notes this is the second time Defendants have misrepresented a certified mail filing, pointing to an earlier filing in this case that Defendants represented as mailed to Plaintiff on November 3, 2022, but that was in fact mailed on November 9, 2023. (Id. at 1-2, 7-8 (citing dkt. ## 37, 41).)

Defendants respond that their motion to dismiss was filed on February 13, 2023. (See Defs.' Mot.) Defendants' attached certificate of service notes that Defendants served Plaintiff by first class mail on February 13, 2023, at his registered address on PACER. (Id. at 12.) Defendants further respond that even if Plaintiff did not receive the motion in the mail, there is no prejudice to Plaintiff as he admits he obtained a copy by February 27, 2023, and was able to timely respond. (Defs.' Resp. (dkt. # 66) at 2.) Plaintiff did not file a reply to Defendants' response

---

FROM: Fri, Jamie
TO: 63840509
SUBJECT: report and reccomendation prt2
DATE: 05/11/2023 07:21:10 PM

C. Defendants' Motion to Dismiss
Defendants' Motion argues that they have met their burden to demonstrate that Plaintiff
failed to exhaust his administrative remedies prior to filing this action, and therefore, are entitled
to judgment as a matter of law. (Defs.' Mot. at 1-2, 7-11.) Defendants additionally contend that
Plaintiff has failed to cite to any affirmative acts by FDC SeaTac officials that demonstrate that
he was prevented from fully exhausting any of his submitted remedies relating to claims
contained in his third amended complaint. (Id.; Defs.' Supp. Reply at 2-4.)
Plaintiff counters that he should not be required to fully exhaust his available
administrative remedies because several of his administrative remedies went missing or
remained unanswered. (See Pl.'s Resp.; Pl.'s Supp. Resp.) As such, Plaintiff argues that he has
exhausted his available administrative remedies and that any failure to exhaust should be
Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 13 of 20
REPORT AND RECOMMENDATION - 14

excused because Defendants have abused the administrative remedy system to cause the process
to go uncompleted.7
(Pl.'s Supp. Resp. at 2-9, 11-12.)
i. Exhaustion Legal Standards
The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought
with respect to prison conditions under section 1983 of this title, or any other Federal law, by a
prisoner confined in any jail, prison, or other correctional facility until such administrative
remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under the PLRA, a prisoner
must exhaust "available" administrative remedies before filing suit. Woodford v. Ngo, 548 U.S.
81, 85 (2006), accord, Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that
exhaustion is mandatory under the PLRA"); Albino v. Baca, 747 F.3d 1162, 1165 (9th Cir. 2014)
(en banc). The prisoner must complete the administrative review process in accordance with the
applicable rules. Woodford, 548 U.S. at 92-95 (finding "proper" exhaustion means full
compliance with all procedural requirements of an institution's grievance process).
Defendant bears the initial burden of showing there was an available administrative
remedy and that plaintiff did not exhaust that remedy. Albino, 747 F.3d at 1169, 1172. Once that
showing is made, the burden shifts to plaintiff to demonstrate he exhausted his administrative
remedies or to "come forward with evidence showing that there is something in his particular

----------------------------------------------------------------------------------

case that made the existing and generally available administrative remedies effectively unavailable to him" by "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. at 1172 (citation omitted). Because failure to

7 Plaintiff additionally argues that Judge Jones's decision to allow him to be temporarily released pending his criminal trial should "exhaust the remedy requirement by default." (Pl.'s Supp. Resp. at 13-14.) Though it is clear Judge Jones viewed Plaintiff's lack of treatment for his medical issues at FDC SeaTac as warranting his temporary release, Judge Jones's determination in Plaintiff's criminal case is irrelevant to the issue before this Court of whether Plaintiff exhausted his available administrative remedies before filing suit.

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 14 of 20

REPORT AND RECOMMENDATION - 15

exhaust is an affirmative defense Defendants must plead and prove, the ultimate burden rests with Defendants. Id.

Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to plaintiff, shows a failure to exhaust. Albino, 747 F.3d at 1166, 1168; Fed. R. Civ. P. 56(a). If, however, material facts are disputed, then "summary judgment should be denied" and disputed factual questions relevant to exhaustion should be decided by the court "in a preliminary proceeding." Albino, 747 F.3d at 1166, 1168. If administrative remedies have not been exhausted at the time an action is brought, the action must be dismissed without prejudice. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam); see also Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by Albino, 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").

ii. Analysis

Here, Defendants have submitted evidence that the BOP provides an administrative remedy process and that Plaintiff failed to completely exhaust it for any of his claims. (See Brieschke Decl. at ¶¶ 9-10.) Defendants' evidence demonstrates that Plaintiff filed at least three administrative remedies relating to the claims contained in his complaint, including one remedy that was at least appealed to the BOP Regional Director, but that none were appealed to BOP's General Counsel. (Id. at ¶¶ 9(E)-(I), 10.) This would suggest that Plaintiff generally understood the BOP's Administrative Remedy Program and that it was available to him. Plaintiff also appears to not dispute that he did not fully exhaust the program's appeal process with respect to the claims contained in his complaint. (See Pl.'s Supp. Resp. at 5-7.) Consequently, Defendants

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 15 of 20

REPORT AND RECOMMENDATION - 16

--------------------------------------------------------------------------------

have met their initial burden of showing there was an available administrative remedy and that Plaintiff did not exhaust that generally available remedy.

However, Plaintiff in turn has submitted evidence with his response that several of his remedies were either not responded to by FDC SeaTac staff or were otherwise lost by FDC SeaTac staff such that BOP's Administrative Remedy Program was not effectively available to him. (See Pl.'s Resp. at 11-12, 15-19; Olson Decl.) Furthermore, Plaintiff represents and submits that inmates at FDC SeaTac do not receive any formal training in how to properly utilize the BOP's Administrative Remedy Program and that the only way for him to seek relief for his medical issues was through the review of his detention order in his criminal case. (See Pl.'s Supp. Resp. at 4 (citing Olson Decl., Ex. 1), 12-14.)

An administrative process is available if it is "capable of use." Ross v. Blake, 578 U.S. 632, 643 (2016). The Supreme Court has explained administrative remedies are deemed "unavailable" to an inmate: (1) where the administrative remedy "operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is opaque and incapable of use; and (3) where administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643-44; see also Fuqua v. Ryan, 890 F.3d 838, 850 (9th Cir. 2018). Consequently, "acts by prison officials preventing the exhaustion of administrative remedies may make administrative remedies effectively unavailable." See Luyster v. Bishop, 2022 WL 13925792, at *4 (W.D. Wash. Oct. 24, 2022) (citing Nunez v. Duncan, 591 F.3d 1217, 1224-25 (9th Cir. 2010)). The Ninth Circuit has also "refuse[d] to interpret the PLRA so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 16 of 20
REPORT AND RECOMMENDATION - 17

indefinite delay in responding to grievances." Id. (citing Brown v. Valoff, 422 F.3d 926, 943 n.18 (9th Cir. 2005) (quoting Lewis v. Washington, 300 F.3d 829, 831-32 (7th Cir. 2002)).

Viewing the evidence in the light most favorable to Plaintiff, this Court finds that genuine issues of material fact exist as to the effective availability of Plaintiff's administrative remedies at FDC SeaTac. Based on the evidence submitted by Plaintiff, Plaintiff routinely inquired as to the status of his administrative remedies, why they were missing, why he was not receiving a response to his filed remedies, and why his remedies were being denied. (See Pl.'s Resp. at 14-17, 19-21.) In at least one instance, FDC SeaTac staff admitted to having lost Plaintiff's BP-9 form for one of his remedies at issue in this case. (See id. at 15.) Several of Plaintiff's inquiries also appear to have not been responded to by FDC SeaTac staff. (See id. at 17, 19-21.) Plaintiff has further represented that his requests to obtain forms to submit remedies, or re-submit previously denied remedies, were either delayed for months or not responded to by FDC SeaTac staff to allow him to appropriately proceed through the process. (See Pl.'s Resp. at 2, 5-6; Pl.'s Supp. Resp. at 11-12.) Plaintiff has substantiated his difficulties progressing through the BOP's Administrative Remedy Program with evidence of the above-considered inquiries to FDC SeaTac submitted with his response, and through his criminal counsel's declaration in which counsel testifies that she is aware of and has seen remedies Plaintiff filed that were not responded to or addressed. (See Olson Decl. at 1-2.) Plaintiff has also provided several signed statements and declarations from FDC SeaTac inmates with Ms. Olson's declaration who all corroborate Plaintiff's account given their own difficulties exhausting administrative remedies to obtain medical attention while confined at FDC SeaTac. (See id., Ex. 1 at 23-27.)

In addition, Defendants have not submitted any information as to what specific training or handbooks were provided to Plaintiff to utilize BOP's Administrative Remedy Program. See

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 17 of 20

REPORT AND RECOMMENDATION - 18

Albino, 747 F.3d at 1174-76 (finding defendants failed to demonstrate available administrative

-------------------------------------------------------------------------------------

remedy where defendants failed to provide evidence showing inmates were told how to use the grievance procedure). Defendants submit that such training is provided to inmates at the time of admission into a BOP institution as part of their orientation. (See Brieschke Decl. at ¶ 8.) Defendants have not, however, submitted any evidence as to what was actually provided to Plaintiff, what is provided to FDC SeaTac inmates at orientation, or whether any other supplemental materials exist to help inform inmates how to progress through the BOP's Administrative Remedy Program.8 Plaintiff's evidence also suggests that such training is not provided at the time of admission to FDC SeaTac and that many inmates only know of the administrative remedy process because another inmate told them (Olson Decl., Ex. 1 at 23-27). See King v. McCarty, 781 F.3d 889, 896 (7th Cir. 2015), overruled on other grounds by Henry v. Hulett, 969 F.3d 769 (7th Cir. 2020) (en banc) ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."); see also Albino, 747 F.3d at 1174-76.

At a minimum, and on this record, it is clear that genuine issues of material fact also exist as to what information Plaintiff received regarding the BOP's Administrative Remedy Program to render it effectively available and capable of use. Such information and training would likely have allowed Plaintiff to avoid the repeated procedural hurdles that appear to have plagued him in attempting to navigate Defendants' administrative scheme to exhaust the claims contained in his third amended complaint. (See Pl.'s Resp. at 14-17, 19-21; Brieschke Decl. at ¶ 9(E)-(H).)

8 Plaintiff's supplemental response suggests that admission orientation packets are provided to inmates at orientation and are supposed to be signed off to evince that they received orientation. (Pl.'s Suppl. Resp. at 4.) Plaintiff represents that no such orientation is provided to inmates at FDC SeaTac, or at least, that it has not existed for some time. (Id.)

Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 18 of 20

REPORT AND RECOMMENDATION - 19

Where material facts are disputed with regard to an inmate's failure to exhaust, "summary judgment should be denied, and the district judge rather than a jury should determine the facts." Albino, 747 F.3d at 1166. This Court finds that genuine issues of material fact exist precluding summary judgment given the part

---------------------------------------------------------------------------------------------

FROM: Fri, Jamie
TO: 63840509
SUBJECT: report and recomendation part 2b
DATE: 05/11/2023 07:36:11 PM

Where material facts are disputed with regard to an inmate's failure to exhaust,
"summary judgment should be denied, and the district judge rather than a jury should determine
the facts." Albino, 747 F.3d at 1166. This Court finds that genuine issues of material fact exist
precluding summary judgment given the parties' conflicting evidence as to the effective
availability of the BOP's Administrative Remedy Program at FDC SeaTac for Plaintiff.
Accordingly, Defendants have failed to meet their burden to demonstrate that Plaintiff failed to
fully exhaust his available administrative remedies as to the claims contained in his third
amended complaint, and therefore, Defendants' Motion should be denied.
IV. CONCLUSION
Based on the foregoing, the Court recommends that: (1) Defendants' Motion for Joinder
(dkt. # 68) be GRANTED; (2) Plaintiff's Motion (dkt. # 63) be DENIED; and (3) Defendants'
Motion (dkt. # 59) be DENIED. A proposed Order accompanies this Report and
Recommendation.
Objections to this Report and Recommendation, if any, should be filed with the Clerk and
served upon all parties to this suit by no later than twenty-one (21) days after the filing of this
Report and Recommendation. Failure to file objections within the specified time may affect your
right to appeal. Objections should be noted for consideration on the District Judge's motion
calendar fourteen (14) days after they are served and filed. Responses to objections, if any, shall
be filed no later than fourteen (14) days after service and filing of objections. If no timely
objections are filed, the matter will be ready for consideration by the District Judge on June 2,
2023.
The Clerk is directed to send copies of this Report and Recommendation to the parties
and to the Honorable John H. Chun.
Case 2:22-cv-00801-JHC-MLP Document 76 Filed 05/08/23 Page 19 of 20
REPORT AND RECOMMENDATION - 20

Dated this 8th day of May, 2023.
A
MICHELLE L. PETERSON
United States Magistrate Judg

Exhibit #6

## REQUEST FOR ADMINISTRATIVE REMEDY
### INFORMAL RESOLUTION

## INSTITUTION (CIRCLE ONE) FCI I   FCI II   USP   CAMP

**NOTICE TO INMATE:** Be advised that before filing a Request for Administrative Remedy form BP-229 (except as provided in §542.13(b)), you shall attempt to informally resolve your complaint through your Correctional Counselor. Briefly state the complaint below and list what efforts you have made to resolve your complaint informally. State names of staff contacted.

1. Complaint and resolution you expect: I filed an original BP-8 on 7-13-23 That Became moot when I was told I was Being transferd. The transfer was Denied for population control. Attatched is a list Of ADA violations that I'm Asking to Be fixed or that I Be Tranfered To A low care level 3 institution my correct Security & medical levels I'm not recieving medical for Disabilities

2. Efforts you have made to informally resolve: I have filed BP-8 & Talked to Mrs lara & haas & mr turner I have wrote congress & BOP Director & ADA & will Add these claims to my current civil matter if not remadied I dont Belong here

Michael Wood II _____ 32370086 _____ 9-22-23

Inmate's Name/Signature       Reg. No.        Date

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FOR STAFF USE ONLY

| 9-19-23 | | | |
|---|---|---|---|
| Date Form Issued | Date Form Returned | BP-9 Issued | BP-9 Returned |

Steps taken to resolve complaint and conclusion: _____

_____

_____

_____

_____

Counselor Signature _____        Date _____

Unit Manager's Comments: _____

_____

Unit Manager Signature _____        Date _____

**Distribution:** If complaint is **NOT** informally resolved - Forward this original form attached to BP-9 Form to the Administrative Remedy Clerk.

Accomadations

1) I have not been assigned a fulltime companion to transport me to prison activites & programs this is because of budget issues Boll V Wolfish 441 U.S 520 99 S.Ct costs cannot be a determining factor in Determining madical needs. An orderly was assigned at $2^{to} a month for 30 hours a month that dont even cover transportation to all the meals. All activity meals are only 1 way where volunteers are reluctant to provide transportation where they are subjected to being stuck while r engage in whatever activity. So this usually leaves me sitting in front of buildings trying to find a ride. I can never find anyone to take me to & from pill line because its a 2 hour wait in the elements with no protection from rain wind sun. I always miss breakfest because everyone is gone when r get ready

2) There are "no" handicap tables outside my cell in the entire facility This extremely effects my ability to eat meals in the dining hall, use the tables in class rooms, use the computers within the units & law library. ability to use & set-up a type writter Danying acces to courts since im rn aactive lawsuit against BOP & appeal an my criminal case

3) There are door plates that prevent me from entering or leaving the shower, housing units & program areas. my chair has been flipped numerous times going in & out of buildings causing minor injures & the need for a new chair after the wheel was bent

4) Recreation has no aquipment suitable to my disability The one piece it has r cannot use. I cant access baseball, soccer,

Under the 8th Amendment prisoners with disabilities are provided with constitutional protections. When accepting custody a prison must take them as they find them & provide facilities compatable with their disability under the Federal disability statutes The Federal ADA & section 504 of the rehabilitation Act apply to my disabilities. Involving vision, speech mobility & shoulder impairments. Along with major Bodily functions that include Brain, neurological & kidney functions. These are all qualifiers of a Disability. Armstrong v Wilson 942 F.Supp 1252 (N.D Cal 1996) Aff'd 124 F.3d 1019 (4th cir 1997) Hold that "All" my conditions qualify as Being disabled. limiting major life activities & functions under the ADA Title II & 504 of the rehabilitations Act. This institution needs to make Accomadations & Adjustments for my disabilities or resubmit my transfer to a suiteble facility that was denied due to "population control" where it lowered my security level through programming & good Behavior Muhhammad v U.S 66 Supp 2d 582 594-95 (N.D Tex 1998) ADA violation was presented By not transfering inmate to suitable facility. my transfer was obviously denied not to population control But costs Bell v Wolfish 441 U.S 520 99 S.ct 1861 (1971) costs cannot Be a concideration when my transfer was also for medical needs. This Brings up Discrimination elements under ADA Henrietta D v Bloomberg 331 F.3d 261 276-77 (2d cir 2003) where the increased cost of transport is the result of my disability. this discrimina-tory action Based off my disability or plausibly in retaliation to my civil lawsuit against BOP Has denied me the Benefits that are enjoyed By other prisoners. The lower medical facility wouldve offered access to all activities & provided me with the Appropriate mental & medical care that I need.

FOOTBALL FIELDS, BOCCEE courts or outside T.V Areas Due to no sidewalks, limiting me to the BasketBall courts which to Access require Being transported out A narrow sidewalk that has no curbs or rails in Areas that have over 1 FT Drop offs on the sides & have no Access to A track

5) HANDicapped related maintnance issues include HANDicap showers that Are Always out of order, clothing hooks within the cell that Are 6 FT off the ground & if I use other surfaces to hang my wet towell or clothes I'm subject to Disciplinary Actions or confiscation of items, missing handicap rail next to toilet in cell

6) I'M excluded from participating in Unicore which is A higher incentive program where maximum time credits can Be Applied for early release through the FSA. RAines v state of Florida 983 F.Supp 1362 (N.D. Fla 1997) violating ADA statutes This exclusion is solely Based off my reliability of A wheelchair

7) Inadequate medical care Jorganson v Schiedler 87 or App 100 741 p.2d 528 529 (or App 1987) medical care comes in the form of A diagnosis & treatment, I have not recieved Treatment As Described in Bell v Wolfish 441 U.S (1979) that describes treatment as that Would Be Available to a non prisoner in the community. I Entered the institutions with injuries sustained During Arrest that progressed to A stroke on 10-13-21 Then to Being Disabled while in BOP care. Appointments have Been scheduled 8-10 times over The last 2½ years where I've Been a no show & they needed to Be rescheduled over & over, medical has

done nothing more than document my worsening condition & further disabilities Greene v Dailey 414 F3d 645 655 (7th cir 2005) holding substandard care. The fact I have not been treated by my specialist I've been denied rehabilitative activities leaving me in my disabled state no mat for kidney failure where under 42 U.S.C 12102(2) kidney function is a major life function. I have been diagnosed & denied treatment for the following diagnosed ADA recognized disabilit Hemiplegia, Spinal Stenosis, Degenerate Bone Disease, Degenerate Bone Disease in c-spine, Frozen left shoulder, Aphasia, Palanopsia, Stage III CKD These are all qualified conditions requiring treatment under Title II ADA & 502 rehabilitation Act. Medical care is also an activity that I'm being deprived

8) I have tried to access mental services "multiple" times without a reply. I was documented as suffering from coping & adjustment issues in regaurds to my disabilities & illnesses, Anxiety Disorder Depression & possible PTSD affecting my daily activities & abilities to program.

9) The facts are that this is all caused by mental & medical health services gross understaffing. These are all issues that are unrelated to my ADA, medical, mental health needs. Deginini v pung 420 F.2d 525 529 (8th cir 1990) where the efficiency to provide adequate care & accomodations are caused by the unorganiz & control within the institutions administration violating statutes & constitution protections under the 8th Amendment ADA & Rehabilitations Act

Relief

Im asking that my Transfer Be immediately resubmitted. The reasoning of population control is not A proper reason to turn down my transfer After R have Been programming & have stayed Disciplinary Free Since my incarceration. Population control is "lipstick on a pig" I was turned Down to Difficulties with transport & or retaliation For my Civil Suit. I Am Being Denied Access to medical & mental health services From the highest gain of FTC FSA incentive programs Due to Discriminatory reasons. RF I Cant get my transfer or All Institutional Handicap Access issues resolved R Ask that this Be Denied so that R can ADD these claims to my Civil case or to File A tort Action. This was thought to Be resolved when I originally Filed A grievance on 7-13-23 when R was told R was Being transferred which wouldve made this claim moot. Im Also Asking For possible compassionate release where if this Institution & BOP would comply with The Application of FSA & FTC's iD have served out half my Sentence.

Thank you

Micheal Wood

9-22-23

Fabaral Correctional Institution #1
Michael WOOD
32370 086
PO BOX 3725
Atlanta CA 92301

FILED _____ LODGED
_____ RECEIVED

NOV 20 2023

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

LEGAL
MAil

U.S District courthouse
Clerk OF COURT
1717 Pacific Ave Rm 3100

Tacoma Wa 98402