WRIGHT, FINLAY & ZAK, LLP
Richard A. Meadows, WSBA 57552
rmeadows@wrightlegal.net
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Phone: (949) 477-5050
*Attorney for Plaintiff Michael A. Wood*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGON**

MICHAEL A. WOOD,

               Plaintiff,

   v.

UNITED STATES OF AMERICA, *et al.*,

               Defendants.

Case No.: 2:22-cv-00636-DGE-DWC

**THIRD AMENDED COMPLAINT**

     Plaintiff Michael A. Wood ("Wood"), by and through undersigned counsel, avers and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

    1.    Wood is a resident of Mason County, State of Washington.

    2.    On information and belief, Mason County is a municipal entity incorporated in the State of Washington.

    3.    On information and belief, Defendant Nathan Anderson was employed by the Mason County Sherrif's Office at the time of Wood's arrest and remains so today.

    4.    On information and belief, Defendant Ogden was employed by the Mason County Sherrif's Office at the time of Wood's arrest and remains so today.

    5.    On information and belief, Defendant Simmington was employed by the Mason County Sherrif's Office at the time of Wood's arrest and remains so today.

Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(425) 296-3116

6. On information and belief, Defendant Hesler was employed by the Mason County Sherrif's Office at the time of Wood's arrest and remains so today.

7. On information and belief, John Does 1–10 were employed by the Mason County Sherrif's Office at the time of Wood's arrest and remain so today.

8. On information and belief, the City of Bremerton is a municipal entity incorporated in the State of Washington.

9. On information and belief, Defendant Brock Gorang was employed by the Bremerton Police Department at the time of Wood's arrest and remains so today.

10. On information and belief, Defendant Martin Garland was employed by the Bremerton Police Department at the time of Wood's arrest and remains so today.

11. On information and belief, Defendant Meritt was employed by the Bremerton Police Department at the time of Wood's arrest and remains so today.

12. On information and belief, John Does 11–20 were employed by the Bremerton Police Department at the time of Wood's arrest and remain so today.

13. On information and belief, Defendant Lilje was employed by the United States Marshal Service at the time of Wood's arrest and remains so today.

14. On information and belief, John Does 21–30 were employed by the United States Marshal Service at the time of Wood's arrest and remain so today.

15. The United States Bureau of Prisons ("BOP") is a federal agency that operates, among other things, federal penitentiaries.

16. On information and belief, Defendant Kevin Posalski was employed by the BOP at FDC SeaTac as a nurse at the time of Wood's arrest and confinement, and remains so today.

17. On information and belief, Defendant James Corliss was employed by the BOP at FDC SeaTac as a nurse at the time of Wood's arrest and confinement, and remains so today.

18. On information and belief, Defendant Louisa Maria was employed by the BOP at FDC SeaTac as a Medical Director at the time of Wood's arrest and confinement, and remains so today.

19. On information and belief, Defendant Scottie Bussell was employed by the BOP at FDC SeaTac as a Clinical Director at the time of Wood's arrest and confinement, and remains so today.

20. On information and belief, Defendant Israel Jacquez was employed by the BOP at FDC SeaTac as a Warden at the time of Wood's arrest and confinement, and remains so today.

21. On information and belief, John Does 31–40 were employed by the BOP at SeaTac the time of Wood's arrest and confinement, and remain so today.

22. On information and belief, John Does 41–50 were employed by the BOP at FCI Victorville the time of Wood's arrest and confinement, and remain so today.

## FACTUAL BACKGROUND

### A. The Arrest

23. On June 10, 2021, Wood was at his then-residence, located at 4400 NE Hurd Rd., Tahuya, WA.

24. At approximately 5:30 a.m. a multi-agency task force entered the property to execute an arrest warrant.

25. At that time, Wood was sitting at a campfire at the bottom of the property with Mr. Karlz Portz.

26. Wood then heard the sounds of gunshots and his dogs crying out in pain, but did not hear any officers identify themselves as law enforcement.

27. Unaware of the intruders' identity, Wood took off running and ran into a barbed-wire fence that bordered the edge of a cliff descending approximately 100–150 feet into the Tahuya River.

28. Wood tangled in the fence, losing his balance and tumbling down the hill, resulting in him being knocked unconscious and partially paralyzed.

29. When Wood regained consciousness, he heard Deputy Anderson threatening, "I'll shoot you in your f****** face if you move." Wood yelled back to Deputy Anderson that he was hurt and not to shoot.

30. Deputies Ogden, Simmington, and Hesler made their way down the cliff to search Wood for weapons. When the deputies approached, Wood told them that he had been knocked unconscious in the fall and could not feel half of his body.

31. The deputies yelled up to Anderson that Wood was injured and could not make it up the cliff on his own. Rather than obtaining the proper equipment to move an injured person up a cliff face, a dog leash was thrown down for the deputies to use. When the nearby deputies yelled that Wood was hurt, Deputy Anderson responded that "[Wood] doesn't care about people, so why should we care about him?" After that, Wood was tied with the dog leash and pulled up the cliff face by the task force members.

32. While being pulled, Wood felt something pop in his neck and shoulder, causing a significant amount of pain. At the top of the cliff, Wood's hands were zip tied behind his back, causing further pain.

33. Wood then told the deputies that he needed medical care. Deputy Hesler told Wood that he would receive medical care once they reached the top of the property because the ambulance could not reach the bottom of the property.

34. Once they reached the top of the property, Deputy Hesler turned Wood over to Officers Gorang, Garland, and Meritt, and informed them that Wood needed medical attention, but did not summon medical attention himself or otherwise confirm that such medical care was going to be given.

35. Officers Gorang, Garland, and Meritt placed Wood into a patrol vehicle, but did not remove his restraints. When Wood asked where the ambulance was, the officers told him that it was on the way.

36. The officers then read Wood his *Miranda* rights and told him that they were going to ask him a few questions and record the interrogation. Wood was forced to stop the interrogation within five minutes due to the amount of pain the zip ties and his injuries were causing.

37. The officers then moved Wood into the front seat of a different patrol vehicle. When he asked again where the ambulance was, Officer Gorang responded that Wood knew how far it

Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(425) 296-3116

was to the nearest fire station and that it would take an emergency vehicle forty minutes to make it to the property.

38. Officers Gorang and Garland then drove the vehicle further down the road, deeper into the woods. When Wood asked where they were taking him, they responded that they were going somewhere quiet. They also assured Wood that once he answer all of their questions, he would receive medical attention.

39. After another hour of questioning, Wood passed out. When the officers woke him, he was disoriented and confused. The officers told Wood that he must be having an adrenaline crash but continued to question him for at least another hour. During this time, Wood was in and out of consciousness and does not recall what was said.

40. Wood requested medical attention again, and the officers said that they would make sure the Marshals got him medical attention. During this time, the Marshals had left the property and Wood had to be driven to a Safeway parking lot in the nearby town of Belfair to meet with them.

41. Once they reached the parking lot, the officers informed the Marshals that Wood still required medical attention. The Marshals assured the officers that Wood would receive medical attention once they reached the U.S. District Court for arraignment

42. Wood was transferred to the Marshal's vehicle and again read his *Miranda* rights. The Marshals then told Wood that they were recording the drive and began questioning him again. When he asked about the promised medical attention, he was told that he would receive it at the courthouse. However, when he asked again during in-processing at the courthouse, he was told that he would not receive any medical attention until he arrived at FDC SeaTac.

### B. FDC SeaTac

43. Once Wood reached FDC SeaTac, he was removed from the Marshal's vehicle. While still fully restrained and being held by the Marshals, Nurse Posalski performed a Covid-19 q-tip nostril swab without any warning or requesting consent. Wood, surprised by the swab, jerked backwards, causing further pain and injury to his neck.

Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(425) 296-3116

44.     The Marshals informed Posalski that Wood had been injured during the arrest and needed medical attention, stating that he had been knocked unconscious and suffered trauma to his neck and shoulder. Posalski told the Marshals that Wood would receive medical attention during the screening process. However, Wood was placed into quarantine without receiving any medical attention.

45.     While in quarantine, the symptoms from Wood's injuries steadily worsened. The pain increased substantially, he began to feel pain in his kidneys, and there was blood in his urine. At one point, Nurse Corliss was called into quarantine to see Wood as a medical emergency. Wood again requested to see a doctor, but Nurse Corliss stated that Wood could not leave quarantine and, at most, he could give him a shot for the pain.

46.     After being released from quarantine, Wood was taken to get x-ray screening done. He was informed that he had suffered trauma to the c-section of his spine and that he would meet with a provider the next week to go over treatment options, including possible surgery, but this appointment never occurred. Wood was prescribed pain medication, but specifically requested that he not receive opiates due to an allergy.

47.     After being release from quarantine, Wood, for over a month, put in almost daily sick call requests for the worsening pain in his neck and shoulder.

48.     At one point, Wood suffered a seizure caused by his injuries. He was taken to the emergency room at a local hospital by Dr. Ian Schreiner. Upon his release, FDC SeaTac personnel were instructed that he should have a follow-up examination the next day, see a cardiologist, and have a CAT scan and MRI done. Dr. Schreiner also instructed that Wood be returned to St. Mary's if immediately if he experienced any further symptoms like the ones that had led to his seizure. None of these instructions were followed and Wood did not receive any follow-up care.

49.     Over the next few months, Wood filed almost daily sick call requests explaining that his condition had worsened and that he had not received any of the follow-up care or appointments that he was supposed to have. At one point, he was told by Nurse Posalski to not put "neck" in his sick call requests, but even doing that did not result in Wood being seen or the requests acted upon.

Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(425) 296-3116

50.   On about mid-October, Wood suffered a stroke from complications to the injuries sustained during his arrest and the lack of follow-up care. Wood was rendered further disabled by this stroke, resulting in him requiring a wheelchair and other assistance to move and to care for himself. At no point during his time at FDC SeaTac was Wood's medical care level upgraded to reflect his disabilities, nor did SeaTac staff provide him with the assistance he needed.

51.   Although Wood had no drugs in his system, his stroke was falsely reported as an overdose, in both conversations amongst staff and in his medical records.

52.   After Wood's stroke, he was examined by Defendant Bussell, who finally ordered a CAT scan and MRI. During the examination, Defendant Bussell told Wood that he was concerned Wood would have another stroke, diagnosed Wood with having a traumatic brain injury and spinal cord injury, and that the stroke had likely been caused by high blood pressure resulting from pressure on Wood's spinal cord from his injuries. The lab results further revealed that Wood's kidney had been injured and that it was in Stage 2 renal failure.

53.   Throughout his time at FDC SeaTac, Wood told family members and others about his injuries and the lack of medical care, as well as filing multiple grievances. On information and belief, Defendant Jacquez was aware of Wood's grievances and was contacted by members of Congress, representatives from the ACLU, and others concerning lack of proper medical care at FDC SeaTac.

54.   On at least one occasion, Defendant Jacquez threatened to take away Wood's email privileges if Wood continued to contact Defendant Jacquez and outside parties regarding Wood's lack of medical care. Wood was also threatened by other SeaTac Defendants for exercising his right to free speech.

55.   FDC SeaTac either did not or could not provide Wood with the specialty care and rehabilitation that he required to improve his condition.

///

///

///

Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(425) 296-3116

C. **FCI Victorville**

56.    After Wood was transferred to FCI Victorville, he experienced many of the same issues as at FDC SeaTac. Although Wood filed a significant number of sick call requests and grievances, he was not provided with proper medical care or accommodations for his disabilities.

57.    Ultimately, he was not even evaluated for his disabilities and serious medical needs until he filed for compassionate release.

58.    During his time at Victorville, Wood's medical condition worsened due to the lack of care.

**CLAIMS**

**Count 1**

**Violation of 42 U.S.C. § 1983 – Excessive Force**

**Against Mason County and BPD Defendants**

59.    Wood realleges and incorporates by reference Paragraphs 23–42 fully herein.

60.    At no point did Wood resist arrest, nor did he attempt to flee once he was aware that the potential trespassers on the property were law enforcement.

61.    Once Wood realized that the Defendants were law enforcement on the property, he called out to them from the bottom of hill, telling them that he was unarmed, injured, and needed assistance up the hill.

62.    Rather than use proper equipment to move Wood, Defendants tied his hands with a dog leash and pulled him up the hill, despite him telling them repeatedly that it was further aggravating his injuries.

63.    Defendants knew, or reasonably should have known, that pulling an injured, non-resisting arrestee up a steep hill with improper equipment would be an excessive use of force.

64.    Because of Defendants' use of excessive force, Wood has suffered severe injury.

///

///

///

Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(425) 296-3116

**Count 2**

**Violation of Washington Law – Tort – Excessive Force**

**Against Mason County and BPD Defendants**

65. Wood realleges and incorporates by reference Paragraphs 23–42 fully herein.

66. Washington law provides the right to freedom from arrest without excessive force.

67. At no point did Wood resist arrest, nor did he attempt to flee once he was aware that the potential trespassers on the property were law enforcement.

68. Once Wood realized that the Defendants were law enforcement on the property, he called out to them from the bottom of hill, telling them that he was unarmed, injured, and needed assistance up the hill.

69. Rather than use proper equipment to move Wood, Defendants tied his hands with a dog leash and pulled him up the hill, despite him telling them repeatedly that it was further aggravating his injuries.

70. Defendants knew, or reasonably should have known, that pulling an injured, non-resisting arrestee up a steep hill with improper equipment would be an excessive use of force.

71. Because of Defendants' use of excessive force, Wood has suffered severe injury.

**Count 3**

**Violation of 42 U.S.C. § 1983 – Deliberate Indifference**

**Against Mason County and BPD Defendants**

72. Wood realleges and incorporates by reference Paragraphs 23–42 fully herein.

73. On multiple occasions after Wood was arrested, he informed Defendants that he was in significant pain and needed medical attention.

74. Rather than provide him with said attention, or take him to a location where he could receive such attention, Defendants repeatedly interrogated Wood over several hours.

75. Defendants knew, or reasonably should have known, that pulling Wood up a steep hill by using a dog leash would cause Wood new injuries or result in the aggravation of his existing injuries.

Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(425) 296-3116

76.     Defendants knew, or reasonably should have known, that not allowing Wood to be assessed by medical personnel and treated would result in the aggravation of his injuries.

77.     Because Defendants' ignored Wood's condition and refused to give him care, Wood suffered extreme injury.

## Count 4

### *Bivens* Claim – Deliberate Indifference

### Against SeaTac Defendants

78.     Wood realleges and incorporates by reference Paragraphs 23–58 fully herein.

79.     The SeaTac Defendants were notified on multiple occasions of Wood's medical needs and the need to accommodate for his disabilities, by both Wood and others.

80.     The SeaTac Defendants were also informed, or a reasonable person in the Defendants' place could have drawn the inference, that failure to provide Wood with the recommended medical care would both cause him substantial harm in that it could cause serious new injury and further aggravate his existing injuries.

81.     Because the SeaTac Defendants failed to provide Wood with medically necessary care or Wood's already existing injuries worsened and he sustained new injury.

## Count 5

### Violation of the ADA

### Against SeaTac Defendants

82.     Wood realleges and incorporates by reference Paragraphs 23–58 fully herein.

83.     Due to the injuries sustained in his arrest and from the subsequent lack of care, Wood was rendered disabled and unable to properly care for himself without assistance and accommodation.

84.     The ADA provides guidelines for minimum necessary accommodations that must be provided to disabled person.

Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(425) 296-3116

85. The SeaTac Defendants failed to provide the accommodations mandated by the ADA, causing severe harm to Wood and limiting his ability to fully participate and interact with his environment, as well as take care of himself.

### Count 6

### *Bivens* **Claim – Retaliation**

### **Against SeaTac Defendants**

86. Wood realleges and incorporates by reference Paragraphs 23–58 fully herein.

87. As he is required to do, Wood filed requests for sick call, and grievances when those requests were ignored. Wood also spoke with family members and other outside contacts regarding his lack of medical care.

88. In direct response to Wood exercising his protected right of free speech, the SeaTac Defendants threatened Wood on multiple occasions with restriction of privileges or worse.

### Count 7

### *Bivens* **Claim – Deliberate Indifference**

### **Against Victorville Defendants**

89. Wood realleges and incorporates by reference Paragraphs 23–58 fully herein.

90. The Victorville Defendants were notified on multiple occasions of Wood's medical needs and the need to accommodate for his disabilities, by both Wood and others.

91. The Victorville Defendants were also informed, or a reasonable person in the Defendants' place could have drawn the inference, that failure to provide Wood with the recommended medical care would both cause him substantial harm in that it could cause serious new injury and further aggravate his existing injuries.

92. Because the Victorville Defendants failed to provide Wood with medically necessary care or Wood's already existing injuries worsened and he sustained new injury.

///

///

///

THIRD AM. COMPL. – Page 11

Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(425) 296-3116

**Count 8**

**Violation of the ADA**

**Against SeaTac Defendants**

93. Wood realleges and incorporates by reference Paragraphs 23–58 fully herein.

94. Due to the injuries sustained in his arrest and from the subsequent lack of care, Wood was rendered disabled and unable to properly care for himself without assistance and accommodation.

95. The ADA provides guidelines for minimum necessary accommodations that must be provided to disabled person.

96. The Victorville Defendants failed to provide the accommodations mandated by the ADA, causing severe harm to Wood and limiting his ability to fully participate and interact with his environment, as well as take care of himself.

**PRAYER FOR RELIEF**

WHEREFORE, Wood prays for judgment against Defendants for the following:

97. For compensatory damages in an amount to be determined at trial, but exceeding $75,000;

98. For punitive damages in an amount to be determined at trial;

99. For an order directing the BOP to correct Wood's medical record to reflect that he did not have an overdose;

100. For reasonable attorneys' fees and costs as provided by statute or common law; and

101. For other such relief as the Court deems appropriate.

DATED: September 27, 2024.          **WRIGHT FINLAY & ZAK, LLP**

*/s/ Richard A. Meadows*
Richard A. Meadows, WSBA 57552
rmeadows@wrightlegal.net
*Attorney for Plaintiff Michael A. Wood*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on September 27, 2024.

Date: September 27, 2024

_/s/ Richard A. Meadows_
Richard A. Meadows

Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(425) 296-3116