1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7

8    MICHAEL A. WOOD,

               Plaintiff,

9        v.

10   UNITED STATES OF AMERICA, et al.,

11

               Defendants.

CASE NO. 2:22-CV-636-DGE-DWC

REPORT AND RECOMMENDATION

Noting Date: May 15, 2025

12

13    The District Court referred this action to United States Magistrate Judge David W.

14    Christel. Plaintiff Michael A. Wood, who is represented by counsel and proceeding *in forma*

15    *pauperis*, filed the Third Amended Complaint ("Complaint") on September 28, 2024. Dkt. 153.

16    On March 4, 2025, Defendants Mason County Sheriff's Office, Anderson, Ogden, Simington[1],

17    and Helser ("Mason County Defendants") filed a Motion for Judgment on the Pleadings (Dkt.

18    168) and, on March 6, 2025, Defendants Martin Garland and Brock Gorang filed a Motion for

19    Judgment on the Pleadings (Dkt. 169).[2]

20

21        [1] Wood names Defendants Simmington and Hesler in the Complaint. Dkt. 153. Mason County Defendants
filed the Motion for Judgment on the Pleadings on behalf of Defendants Simington and Helser. Dkt. 168. The Court

22    will refer to Simington and Helser as identified by Mason County Defendants.

    [2] Mason County Defendants filed the Motion for Judgment on the Pleadings on behalf of the Mason County

23    Sheriff's Office. Dkt .168. The Complaint names Mason County, not the Mason County Sheriff's Office, as a
defendant. The Court construes the Motion as filed on behalf of Mason County.

24

After a review of the relevant record, the Court concludes: (1) Wood stated an excessive force claim against Defendants Anderson, Ogden, Simington, and Helser; (2) Wood failed to state an excessive force claim against Defendants Garland and Gorang; (3) Wood stated denial of medical care claims against Defendants Anderson, Ogden, Simington, Helser, Gorang, and Garland; (4) Wood failed to state a state law tort of excessive force against Defendants Anderson, Ogden, Simington, Helser, Gorang, and Garland; and (5) Wood failed to state a claim against Mason County. The Court finds Wood should be granted leave to amend his claims against Mason County. Therefore, the Court recommends Mason County Defendants' Motion for Judgment on the Pleadings (Dkt. 168) be GRANTED-IN-PART and DENIED-IN-PART and Defendant Garland and Gorang's Motion for Judgment on the Pleadings (Dkt. 169) be GRANTED-IN-PART and DENIED-IN-PART

In addition, the Court has screened the claims against Defendants Merritt and the City of Bremerton under 28 U.S.C. § 1915A and finds the excessive force and state law claims against Merritt and the claims against the City of Bremerton should be dismissed. However, the denial of medical care claim alleged against Merritt should remain and Wood should be granted leave to file an amended complaint as to claims against the City of Bremerton.

## I.    Background

In the Complaint, Wood alleges that, on June 10, 2021, a multiagency task force entered the property where he was residing to execute an arrest warrant. Dkt. 153. During the execution of the arrest warrant, Wood was injured and rendered partially paralyzed. He alleges Mason County employees used excessive force during the arrest, and he alleges several Defendants,

---

Additionally, Defendants Garland and Gorang are employees of the Bremerton Police Department ("BPD"). Dkt. 153 at ¶¶ 9, 10. The Complaint also names the City of Bremerton, Merritt (a BPD employee), and John Does 11-20 (BPD employees). *See id.* at ¶¶ 8, 11-12. The Motion for Judgment on the Pleadings filed by Defendants Garland and Gorang is not applicable to the City of Bremerton, Merritt, or John Does 11-20.

1    including Mason County employees, Bremerton Police Department ("BPD") employees, and

2    U.S. Marshal Service ("USMS") employees, did not provide him with medical care during and

3    immediately after his arrest. He further alleges employees at the Federal Detention Center

4    ("FDC") SeaTac did not provide him with adequate medical care or accommodations and

5    incorrectly documented his medical issues.

6        Wood raised the following eight claims: (1) excessive force by Mason County and BPD

7    Defendants in violation of 42 U.S.C. § 1983; (2) excessive force against Mason County and BPD

8    Defendants in violation of Washington State tort law; (3) deliberate indifference by Mason

9    County and BPD Defendants in violation of § 1983; (4) deliberate indifference against SeaTac

10   Defendants under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971); (5)

11   SeaTac Defendants' actions violated the Americans with Disabilities Act ("ADA"); (6) SeaTac

12   Defendants retaliated against Wood in violation of the First Amendment under *Bivens*; (7)

13   deliberate indifference against Victorville Defendants under *Bivens*; and (8) Victorville

14   Defendants' actions violated the ADA. Dkt. 153. The Honorable David G. Estudillo, the Chief

15   District Judge assigned to this case, dismissed the BOP, the individually named USMS

16   Defendants, the Victorville Defendants, Defendant Corliss, the ADA claims, and the claims of

17   retaliation alleged against the SeaTac Defendants. Dkts. 161, 170.

18       On March 4, 2025, Mason County Defendants filed a Motion for Judgment on the

19   Pleadings ("Mason County Motion"). Dkt. 168. Wood filed a response on March 26, 2025, and

20   Mason County Defendants filed a reply on April 1, 2025. Dkts. 171, 173. On March 6, 2025,

21   Defendants Garland and Gorang filed a Motion for Judgment on the Pleadings. Dkt. 169.

22   Plaintiff filed a response on March 27, 2025, and, on April 3, 2025, Defendants Garland and

23   Gorang filed a reply. Dkts. 172, 174.

24

1

## II.    Legal Standard

Mason County Defendants and Defendants Garland and Gorang move for dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(c). Dkts. 168, 169. A motion for a judgment on the pleadings "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of Los Angeles,* 179 F.3d 698, 699 (9th Cir. 1999). Because a Rule 12(b)(6) motion to dismiss and a Rule 12(c) motion are functionally identical, the motion to dismiss standard applies to Rule 12(c) motions. *Dworkin v. Hustler Magazine Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989).

A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

1    While the Court must accept all the allegations contained in a complaint as true, the Court

2    does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare

3    recitals of the elements of a cause of action, supported by mere conclusory statements, do not

4    suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984); *Pena*

5    *v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe a complaint

6    liberally, such construction "may not supply essential elements of the claim that were not

7    initially pled." *Pena*, 976 F.2d at 471.

8    **III.    Request for Judicial Notice**

9    Mason County Defendants request the Court take judicial notice of Wood's arrest

10   warrant, which they attached to the Motion. *See* Dkt. 168. In deciding a motion for judgment on

11   the pleadings, the court generally is limited to the pleadings and may not consider extrinsic

12   evidence. *See* Fed. R. Civ. Proc. 12(d) (stating that a Rule 12(c) motion for judgment on the

13   pleadings should be converted into a Rule 56 motion for summary judgment if matters outside

14   the pleadings are considered by the court). However, "[i]t is well-settled that materials properly

15   attached as exhibits to the complaint and matters that are subject to judicial notice may ... be

16   considered in evaluating a motion for judgment on the pleadings." *Thomas v. Fin. Recovery*

17   *Servs.*, 2013 WL 387968, *2 (C.D.Cal. Jan. 31, 2013) (citing *Amfac Mortg. Corp. v. Ariz. Mall of*

18   *Tempe, Inc.,* 583 F.2d 426, 429–30 & n. 2 (9th Cir.1978); *Buraye v. Equifax,* 625 F.Supp.2d 894,

19   896–97 (C.D.Cal.2008)). Further, under the doctrine of incorporation by reference, a party may

20   seek to incorporate a document into a complaint "if the plaintiff refers extensively to the

21   document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342

22   F.3d 903, 908 (9th Cir. 2003); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,

23   1002–03 (9th Cir. 2018) (explaining the application of the incorporation-by-reference doctrine).

24

Wood's claims arise from law enforcement officers' execution of an arrest warrant. *See* Dkt. 153. However, Wood's claims are not related to execution of the arrest warrant, but Defendants' conduct after entering the property. To the extent Mason County Defendants are attempting to use the arrest warrant to show the Mason County Defendants' state of mind, the Court finds that is improper at this stage. The Court, therefore, will take judicial notice of the fact there was an arrest warrant, but declines to take judicial notice of the contents of the arrest warrant. *See Beckway v. DeShong*, 717 F. Supp. 2d 908, 912 n.1 (N.D. Cal. 2010) (court took judicial notice of the existence of documents from the criminal proceeding against the plaintiff, but did not accept as true the facts alleged in the documents "[s]ince it would be inappropriate to take judicial notice of a fact that is subject to reasonable dispute") (internal quotation marks omitted).

## IV.    Discussion

In the Motions, Mason County Defendants and Defendants Garland and Gorang assert Wood has failed to state a claim for which relief can granted as to the excessive force claims, the deliberate indifference claims, and the state law claims. Dkts. 168, 169. The Mason County Defendants also assert Wood has not alleged a claim against Mason County under *Monell*. Dkt. 168.

### A.  *Factual Background*

In the Complaint, Wood alleges that, on June 10, 2021, a multiagency task force entered the property where he was residing to execute an arrest warrant. Dkt. 153. Wood was sitting at a campfire with non-party Karlz Portz. *Id*. Wood heard gunshots and his dogs crying; he did not hear any officers identify themselves. *Id*. "Wood took off running and ran into a barbed-wire fence that bordered the edge of a cliff descending approximately 100-150 feet into the Tahuya

River." *Id*. at ¶ 27. "Wood tangled in the fence, losing his balance and tumbling down the hill, resulting in him being knocked unconscious and partially paralyzed." *Id*. at ¶ 28. Wood alleges that, when he regained consciousness, Defendant Anderson, a Mason County Sheriff's Office deputy, threatened to shoot Wood if he moved and Wood responded that he was hurt and not to shoot. *Id*. at ¶ 29.

Defendants Ogden, Simington, and Helser, Mason County Sheriff's Office deputies, went down the cliff to search Wood for weapons. *Id*. at ¶ 30. Wood explained that he could not feel half his body and was knocked unconscious. *Id*. Ogden, Simington, and Helser notified Anderson that Wood was injured and could not make it back up the cliff. *Id*. at ¶ 31. "[A] dog leash was thrown down for the deputies to use" to move Wood up the cliff face. *Id*. When deputies told Anderson that Wood was hurt, Anderson responded, "Wood doesn't care about people, so why should we care about him?" *Id*. (cleaned up). Wood was tied with the dog leash and pulled up the cliff by the task force members. *Id*. "While being pulled, Wood felt something pop in his neck and shoulder, causing a significant amount of pain. At the top of the cliff, Wood's hands were zip tied behind his back, causing further pain." *Id*. at ¶ 32.

Wood requested medical care. Helser told Wood he would receive care when they reached the top of the property because an ambulance could not reach the bottom of the property. *Id*. at ¶ 33. At the top of the property, Helser turned Wood over to Defendants Gorang, Garland, and Meritt, BPD officers. *Id*. at ¶ 34. Helser informed Gorang, Garland, and Meritt that Wood needed medical attention; however, Helser did not summon medical care for Wood or otherwise confirm that medical care was going to be provided. *Id*.

Gorang, Garland, and Meritt placed Wood into a patrol vehicle without removing his restraints. *Id*. at ¶ 35. They told Wood an ambulance was on the way. *Id*. They then read Wood

his *Miranda* rights, asked him a few questions, and recorded the interrogation. *Id*. at ¶36. Within

five minutes, Wood had to stop the interrogation because of his pain level from the zip ties and

injuries. *Id*.

Wood was moved to a different patrol vehicle, and he was told by Gorang that it would

take an emergency vehicle at least forty minutes to travel to the property. *Id*. at ¶ 37. Garland and

Gorang drove Wood deeper into the woods and assured Wood that, once he answered all their

questions, he would receive medical treatment. *Id*. at ¶ 38. Wood passed out after another hour of

questioning. *Id*. at ¶ 39. Wood was disorientated and confused, but Garland and Gorang

continued to question Wood for at least another hour. *Id*. Wood was in and out of consciousness

and does not recall what was said. *Id*. "[T]he officers said they would make sure the Marshals

got him medical attention." *Id*. at ¶ 40. Wood was driven to a Safeway parking lot to meet the

Marshals. *Id*.

"[Garland and Gorang] informed the Marshals that Wood still required medical

attention." *Id*. at ¶ 41. "The Marshals assured the officers that Wood would receive medical

attention once they reached the U.S. District Court for arraignment." *Id*. When he arrived at the

courthouse, Wood was told he would not receive any medical attention until he arrived at FDC

SeaTac. *Id*. at ¶ 42.

B.  *Excessive Force*

In the Ninth Circuit, courts "analyze all claims of excessive force that arise during or

before arrest under the Fourth Amendment's reasonableness standard[.]" *Coles v. Eagle*, 704

F.3d 624, 627 (9th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386 (1989)). "[T]he

'reasonableness' inquiry in an excessive force case is an objective one: the question is whether

the officers' actions are 'objectively reasonable' in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision in hindsight." *Id*. at 396 (*citing Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (citing *Graham*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

To determine whether an officer used excessive force, the nature and quality of the intrusion must be weighed against the countervailing governmental interest in the use of that force. *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001). The Court considers the following factors in its analysis: (1) the severity of the crime or situation to which the officer was responding; (2) whether the plaintiff posed an immediate threat to the safety of the officer or others; (3) whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight; (4) the amount of time and any changing circumstances during which the officer had to determine the type and amount of force that appeared to be necessary; and (5) the availability of alternative methods to subdue the plaintiff. *Smith v. City of Hemet,* 394 F.3d 689, 701 (9th Cir. 2005); *see Graham,* 490 U.S. at 397.

i.   Mason County Defendants

Mason County Defendants assert the excessive force claim against Defendants Anderson, Ogden, Simington, and Helser ("individual Mason County Defendants") fails as a matter of law

because the Fourth Amendment does not require the use of specialized equipment to move an arrestee. Dkt. 168. The question before the Court is whether the Complaint sufficiently alleges the individual Mason County Defendants used excessive force when moving Wood up the cliff face with a dog leash.

As detailed above, the individual Mason County Defendants, knowing Wood could not make it up the cliff face on his own and was suffering from a head injury and a loss of feeling in half his body, decided to tie him with a dog leash and pull him up the cliff face. Wood has alleged facts showing he did not pose an immediate threat to the safety of the officers or others. Wood, unaware police had entered the property where he was residing, heard gunshots and his dogs crying, so he fled. Dkt. 153. Wood fell down a cliff face and was injured. Based on the allegations, the individual Mason County Defendants did not engage with Wood until after he had injured himself. At that time, Wood communicated his injuries to the individual Mason County Defendants. *See* Dkt. 153 at ¶¶ 30-31. These defendants acknowledged that Wood could not make it up the cliff face on his own. *Id*. Defendant Anderson questioned why they should care about Wood. *Id*. at ¶ 31.

The facts show Wood did not pose a threat to the officers or others at the time the individual Mason County Defendants used the alleged excessive force – pulling him up the cliff face with a dog leash. Further, the allegations do not show Wood was resisting arrest or attempting to evade arrest at the time the officers used the alleged excessive force. While Wood admits he was fleeing, once he fell, was knocked unconscious and lost feeling in half his body, the circumstances changed. The allegations show Mason County Defendants did not discuss or consider other alternatives. Instead, they tied Wood with a dog leash and pulled him up the cliff face despite knowing about his injuries.

This is not a case in which officers were forced to make split-second judgments in tense, uncertain, and rapidly evolving circumstances. The scene was secure, Wood was not trying to evade arrest or flee, and Wood was injured. The allegations in the Complaint are sufficient, at this stage, to find the individual Mason County Defendants' decision to pull Wood up the cliff face with a dog leash was unreasonable and an officer in their position should have known the decision was unreasonable. *See Mills v. Fenger*, 216 F. App'x 7, 9 (2d Cir. 2006) (finding the court could not conclude it was reasonable for officers to drag the arrestee down three flights of stairs by his handcuffs when the arrestee had informed the officers of his injury, offered to hop down the stairs on one leg, and was later assisted by the officers in hopping from the building to the patrol car); *Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1007 (D. Ariz. 2012) (denying summary judgment where two officers dragged an injured arrestee "in a forward-facing position so that his knees were in contact with the asphalt for nearly 400 feet as they brought him to an ambulance"). Therefore, the Court finds Wood has sufficiently pled an excessive force claim against Defendants Anderson, Ogden, Simington, and Helser.

ii.    Defendants Garland and Gorang

Defendants Garland and Gorang assert they were not involved in Wood's arrest and, therefore, cannot be liable for excessive force under the Fourth Amendment. Dkt. 169. Wood does not object to dismissing the excessive force claims against Defendants Garland and Gorang. Dkt. 172. Therefore, the Court finds the excessive force claims alleged against Defendants Garland and Gorang should be dismissed.

1

C.  *Denial of Medical Care*

2

Wood next alleges he was denied adequate medical treatment at the time of his arrest.

3 Dkt. 153. Mason County Defendants and Defendants Garland and Gorang maintain Wood has

4 not alleged a Fourteenth Amendment deliberate indifference claim. *See* Dkts. 168, 169.

5

The first issue before the Court is the applicable legal standard – the Fourth or Fourteenth

6 Amendment. "[F]or persons who are detained by police in the course of an arrest, the Fourth

7 Amendment's prohibition on the use of excessive force protects against the deprivation of

8 necessary medical care." *D'Braunstein v. California Highway Patrol*, 131 F.4th 764, 769 (9th

9 Cir. 2025) (citing *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1098–99 (9th Cir. 2006)). In the

10 case of pretrial detainees who have not been convicted of a criminal offense, the right is sourced

11 to the Fourteenth Amendment. *Id.*

12

Here, Wood is alleging he was denied objectively reasonable post-arrest medical care.

13 *See* Dkt. 153. These claims are related to the period of time between Wood's seizure and transfer

14 into USMS custody. Therefore, the Fourth Amendment applies in this case. *See Est. of Cornejo*

15 *ex rel. Solis v. City of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015) (finding the Fourth

16 Amendment, not Fourteenth, applied because the arrestee's seizure lasted at least until the

17 arrestee arrived at the police station). As the Defendants have not argued Wood failed to state a

18 claim under the applicable Fourth Amendment legal standard, the Court could recommend denial

19 of Defendants' motions Wood's medical need claims for this reason. Regardless, the Court will

20 discuss whether Wood has stated a denial of medical care claim.

21

In *Tatum*, the Ninth Circuit determined that suspects have a Fourth Amendment right to

22 "objectively reasonable post-arrest [medical] care" until the end of the seizure. 441 F.3d at 1099.

23 Officers must "seek the necessary medical attention for a detainee when he or she has been

24

injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Id.* (quoting *Maddox v. City of Los Angeles,* 792 F.2d 1408, 1415 (9th Cir. 1986)).

The Fourth Amendment does not require officers to provide "what hindsight reveals to be the most effective medical care for an arrested suspect." *Tatum*, 441 F.3d at 1098. However, "[a] police officer may violate the Fourth Amendment by failing to act in a reasonably prompt manner." *Espinoza v. California Highway Patrol*, 2016 WL 4943960, at *3 (E.D. Cal. Sept. 16, 2016) (citing *Holcomb v. Ramar*, 2013 WL 5947621, at *4 (E.D. Cal. Nov. 4, 2013)). "Whether the officers acted reasonably and were sufficiently 'prompt' depends in part on the length of the delay and the seriousness of the need for medical care." *Holcomb*, 2013 WL 5947621, at *4.

The Court recognizes Wood used the term "deliberate indifference" in the Complaint and recognizes the Ninth Circuit recently issued an opinion analyzing a post-arrest medical care claim under both the Fourth and Fourteenth Amendments. *See* Dkt. 153; *D'Braunstein*, 131 F.4th at 769.[3] The Ninth Circuit did not explain why it analyzed the post-arrest denial of medical care under both the Fourth and Fourteenth Amendments. *See D'Braunstein*, 131 F.4th at 769. Further, the Ninth Circuit has found the Fourteenth does not apply in post-arrest cases. *See Est. of Cornejo ex rel. Solis*, 618 F. App'x at 920 (finding defendants incorrectly argued the Fourteenth Amendment applied prior to a post-arrest failure to provide medical care); *Fair v. Turley*, 2025 WL 1190124 (9th Cir. 2025) (finding Fourth Amendment applied to post-arrest medical care claim and making no mention of the Fourteenth Amendment). Here, any legal inconsistencies are immaterial because the Ninth Circuit stated the Fourth and Fourteenth Amendments have a

---

[3] *D'Braunstein* was issued after Defendants filed their Motions for Judgment on the Pleadings. It is not clear in their Motions why they argued the Fourteenth Amendment. It is also not clear why Wood responded only to the Fourteenth Amendment argument and did not address the Fourth Amendment. Nonetheless, the Court will decide if Wood has stated a claim based on the allegations in the Complaint.

1    similar "objective reasonableness" standard. *See D'Braunstein*, 131 F.4th at 769. In the

2    Fourteenth Amendment context, the standard is one of "objective deliberate indifference" in the

3    face of a "substantial risk" of the plaintiff "suffering serious harm." *Gordon v. County of*

4    *Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). "[T]he common underlying constitutional question

5    reflected in Fourth and Fourteenth Amendment case law is whether an officer's provision (or

6    deprivation) of medical care was objectively unreasonable." *D'Braunstein*, 131 F.4th at 769.

7    Thus, in analyzing Woods' medical care claims the court applies the "objective reasonableness"

8    standard.

9        i.   Mason County Defendants

10       The allegations in the Complaint show the individual Mason County Defendants were

11   aware Wood had been knocked unconscious and could not feel half his body. Dkt. 153 at ¶ 30.

12   Ogden, Simington, and Helser stated Wood could not travel up the cliff face on his own. Dkt.

13   153 at ¶¶ 30-31. Anderson, knowing of Wood's injuries, stated "why should we care about

14   him?" *Id*. Rather than seek medical care at that time, a dog leash was thrown down to be used to

15   pull Wood up the cliff face. *Id*. While being pulled, Wood felt something pop in his neck and

16   shoulder and it caused a significant amount of pain. *Id*. at ¶ 32. Wood states he repeatedly told

17   Defendants pulling him up the hill with the dog lease was further aggravating his injuries. *Id*. at ¶

18   62. After he reached the top of the cliff and his hands were zip tied behind his back, Wood again

19   notified the individual Mason County Defendants that he needed medical care. *Id*. at ¶¶ 32-33.

20   Helser told Wood that he would receive medical care at the top of the property and, once they

21   reached the top of the property, Helser notified Defendants Garland, Gorang, and Merritt that

22   Wood needed medical attention. *Id*. at ¶¶ 33-34.

23

24

1    Despite their knowledge that Wood was experiencing unconsciousness and partial

2    paralysis and admitting Wood needed medical care, the individual Mason County Defendants

3    declined to provide Wood with *any* medical treatment. First, these defendants did not promptly

4    summon the necessary medical help for Wood on the cliff face. Instead, Wood was pulled up the

5    cliff face with a dog leash. Then, after Wood experienced additional injuries while being pulled

6    up the cliff face, Helser assured Wood he would receive medical care at the top of the property.

7    However, upon reaching the top of the property, the individual Mason County Defendants did

8    not summon the necessary medical help or take Wood to a medical facility. In sum, the

9    allegations show the individual Mason County Defendants knew of Wood's injuries and

10   admitted Wood needed medical attention, but did not promptly summon medical care or take

11   Wood to a medical facility.

12       Moreover, Wood has sufficiently pled facts showing individual Mason County

13   Defendants acted with reckless disregard for Wood's safety and well-being. Wood was unable to

14   feel half his body and had lost consciousness. The individual Mason County Defendants knew of

15   his injuries and knew he needed medical care. The allegations are sufficient to show Wood

16   "faced a substantial risk of serious harm due to a serious medical need, such that a failure to

17   summon prompt medical attention could result in further significant injury." *D'Braunstein*, 141

18   F.4th at 770 (cleaned up). The facts are sufficient to show a reasonable officer in the individual

19   Mason County Defendants' positions would have called for medical support. Based on the

20   allegations in the Complaint, Wood has sufficiently alleged a claim of denial of post-arrest

21   medical care against Defendants Anderson, Ogden, Simington, and Helser.

22       The allegations in the Complaint also show Defendants Garland and Gorang were aware

23   Wood was in severe pain and had been injured. Helser told Defendants Garland and Gorang that

24

Wood needed medical attention. Dkt. 153, ¶ 34. Further, Wood was passing out from pain while

Defendants Garland and Gorang attempted to question him for at least two hours. *Id*. at ¶¶ 35-40.

Defendant Garland and Gorang also falsely told Wood an ambulance was coming, but continued

to question Wood and drove Wood further into the woods. *Id*. at ¶ 38. They told Wood he would

receive medical attention once he answered their questions. *Id*. 38. Rather than provide medical

care, Defendants Garland and Gorang denied Wood medical care, questioned him for several

hours, told him if he answered questions he could have medical care, and then delivered him to

the USMS without providing medical care. *Id*. at ¶¶ 35-40. Based on the allegations in the

Complaint, the facts are sufficient to show a reasonable officer in Defendant Gorang's or

Garland's position would have promptly summoned medical support or taken Wood to a medical

facility.

Moreover, as with the individual Mason County Defendants, Wood has sufficiently pled

facts showing Defendant Garland and Gorang acted with reckless disregard for Wood's safety

and well-being. Wood expressed that he was in pain and needed medical attention; he also

continued to lose consciousness. Defendants Garland and Gorang refused to summon medical

care and falsely told Wood he would receive medical care after he answered all their questions.

These allegations are sufficient to show Wood "faced a substantial risk of serious harm due to a

serious medical need, such that a failure to summon prompt medical attention could result in

further significant injury." *D'Braunstein*, 141 F.4th at 770 (cleaned up). For these reasons, Wood

has sufficiently alleged a claim of denial of post-arrest medical care against Defendants Garland

and Gorang.

1

D.  *Qualified Immunity*

2

Defendants assert they are entitled to qualified immunity. Dkt. 168, 169. When

3

defendants assert qualified immunity in a motion to dismiss, "'dismissal is not appropriate unless

4

[the Court] can determine, based on the complaint itself, that qualified immunity applies.'"

5

*O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844,

6

851 (9th Cir. 2001)). Although a defendant is entitled to raise qualified immunity in a motion to

7

dismiss, generally speaking, it is better addressed in the context of a motion for summary

8

judgment. *See Wong v. United States*, 373 F.3d 952, 956-57 (9th Cir. 2004) (noting it is difficult

9

for courts to decide qualified immunity at the motion to dismiss stage because it forces the Court

10

to decide "far-reaching constitution questions on a nonexistent factual record," and suggesting

11

the issue is better left for summary judgment).

12

At the time of the alleged incident, there was clearly established law that officers may not

13

use excessive force during an arrest and officers cannot deny prompt medical attention. *See*

14

*D'Braunstein*, 131 F.4th at 771 ("it is clearly established that officers must seek to provide an

15

injured detainee or arrestee with objectively reasonable medical care in the face of medical

16

necessity creating a substantial and obvious risk of serious harm, including by summoning

17

medical assistance"); *Pourny v. Maui Police Dep't, Cnty. of Maui*, 127 F. Supp. 2d 1129, 1143

18

(D. Haw. 2000) (finding no reasonable officer would have believed dragging and tossing an

19

arrestee in handcuffs was constitutional and not an excessive use of force). Therefore, based on

20

the allegations in the Complaint, the Court finds qualified immunity is not appropriate at this

21

time and recommends the qualified immunity defenses be denied without prejudice.

22

23

24

1

E. *State Law Claims*

2

Wood alleges a state law tort claim of excessive force. Dkt. 153 at ¶¶ 65-71. Mason

3

County Defendants and Defendants Garland and Gorang move for dismissal of Wood's state law

4

claims. Dkts. 168, 169. Specifically, Mason County Defendants assert there is no state law tort

5

claim of excessive force and, even if the Court interprets the claim as assault and battery, it

6

should be dismissed. Dkt. 168. Defendants Garland and Gorang contend they were not involved

7

in Wood's arrest and, therefore, cannot be liable under state law claims related to the arrest. Dkt.

8

169. Wood failed to respond to these arguments in his responses to the Motions for Judgment on

9

the Pleadings. Dkts. 171, 172.

10

Pursuant to this Court's Local Rules, Wood's failure "to file papers in opposition to a

11

motion ... may be considered by the court as an admission that the motion has merit." *See* Local

12

Civil Rule ("LCR") 7(b)(2). As Wood has not opposed dismissal of the state law claims, the

13

Court finds that Wood has admitted the Defendants' arguments have substantial merit and

14

recommends the state law claims be dismissed.

15

F. *Monell Claims*

16

Mason County Defendants argue Wood's claims against Mason County should be

17

dismissed because Plaintiff fails to identify a custom or policy that caused the alleged violations

18

of his constitutional rights. Dkt. 168. Wood concurs, but requests leave to file an amended

19

complaint or dismissal without prejudice.

20

Mason County Defendants argue that leave to amend should not be granted because the

21

delay prejudices defendants and any amendment would be futile because no individual Mason

22

County Defendant has violated Wood's rights or breached a duty to Wood. Dkt. 173 at 5. The

23

Court recognizes that this case has been pending for several years. However, counsel for Wood

24

did not file the Complaint until September 28, 2024, and the parties did not file a joint status

report until February 28, 2025. The parties have requested, and the Court has approved, a discovery period that does not expire until April of 2026. *See* Dkts. 166, 167. Therefore, the claims in the Complaint are in the early stages of litigation and Mason County Defendants have not shown prejudice. Further, as discussed above, the undersigned concludes the Complaint has sufficiently stated claims against the individual Mason County Defendants; thus, Mason County Defendants' argument that an amendment would be futile is unpersuasive. Accordingly, the Court finds the claims against Mason County should be dismissed, but Wood should be allowed to file an amended complaint realleging claims against Mason County.

## V.    Screening under §1915A

Defendants Merritt and City of Bremerton were named in the Complaint, but have not been served. As the Court granted Wood *in forma pauperis* status under 28 U.S.C. § 1915(a), the Court has undertaken service in this case. However, the Court must subject cases commenced to pursuant to § 1915(a) to a mandatory screening. Further, under the Prison Litigation Reform Act of 1995, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* at (b); 28 U.S.C. § 1915(e)(2); *see Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998). Therefore, the Court will screen the Complaint to determine if Wood has sufficiently stated a claim against Merritt and the City of Bremerton.

A. *Defendant Merritt*

Wood alleges Helser "turned Wood over to Officers Gorang, Garland, and Merritt[, a BPD employee], and informed them that Wood needed medical attention[.]" Dkt. 153, ¶ 34.[4] Merritt, along with Gorang and Garland, placed Wood into a patrol vehicle without removing his restraints. *Id.* at ¶ 35. When Wood asked about an ambulance, Gorang, Garland, and Merritt ("the officers") told Wood it was on the way. *Id*. The officers then read Wood his *Miranda* rights and began interrogating him. *Id*. at ¶ 36. Wood stopped the interrogation within five minutes due to the pain from the zip ties and his injuries. *Id*. "The officers then moved Wood into the front seat of a different patrol vehicle." *Id*. at ¶ 37.

Wood alleges excessive force, deliberate indifference, and state law claims against Merritt. *See* Dkt. 153. The Court finds Wood has not alleged Merritt personally participated in the use of force – pulling Wood up the cliff face with a dog leash. Therefore, the Court recommends any excessive force claim against Merritt be dismissed. As Merritt was not involved in the use of force, the Court also finds Wood has not stated any state law claim related to the use of force and recommends the state law claims against Merritt be dismissed.

The Court, however, finds Wood has sufficiently alleged a claim of denial of post-arrest medical care against Merritt based on his failure to promptly summon medical help for Wood or take Wood to a medical facility. As discussed above, officers must "seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Tatum*, 441 F.3d at 1099. Here, the allegations show Merritt was aware Wood was injured and

---

[4] Wood has identified Defendant Merrit in the Complaint. Dkt. 153. However, based on the record, it appears the correct spelling is Merritt. *See* Dkt. 26.

needed medical attention. Rather than promptly summoning medical help or taking Wood to a

medical facility, Merritt falsely told Wood an ambulance was on the way, read him his *Miranda*

rights, and began interrogating Wood despite his injuries. Wood was forced to stop the

interrogation due to his injuries and Merritt still did not summon medical help. While Merritt's

interactions with Wood appear to be minimal, the Court finds the Complaint sufficiently alleges

Merritt had knowledge of Wood's serious medical needs and failed to promptly summon medical

help. The allegations are sufficient to show a reasonable officer in Merritt's position would have

promptly summoned medical support or taken Wood to a medical facility. Therefore, the Court

finds Wood has sufficiently stated a claim of denial of post-arrest medical care against Merritt.

      B.    *City of Bremerton*

      Wood names the City of Bremerton as a defendant. Dkt. 153, ¶ 8. A local government

unit or municipality can be sued as a "person" under § 1983. *Monell v. Dep't of Social Servs. of

City of New York*, 436 U.S. 658, 691–94 (1978). However, a municipality cannot be held liable

under § 1983 solely because it employs a tortfeasor. *Id*. at 691. A plaintiff seeking to impose

liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that

caused his or her injury. *Bryan County Commissioners v. Brown*, 520 U.S. 397, 403 (1997)

(citing *Monell* 436 U.S. at 694). A plaintiff must also demonstrate the municipality, through its

deliberate conduct, was the "moving force" behind the injury alleged. *Id*. at 404. Liability may

also exist where there is a "policy of inaction and such inaction amounts to a failure to protect

constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992).

      Wood fails to allege facts showing the City of Bremerton is liable under *Monell*. Rather,

it appears the City of Bremerton has been named because it is responsible for its employees'

alleged constitutional violations. Wood fails to show that the City of Bremerton's employees

acted through an official custom or policy that resulted in the use of excessive force and the inadequate treatment he received. Therefore, the Court finds the claims against the City of Bremerton should dismissed, but, as with Mason County, Wood should be allowed to file an amended complaint realleging claims against the City of Bremerton.

**VI.    Conclusion**

For the above stated reasons, the Court recommends Mason County Defendants' Motion for Judgment on the Pleadings (Dkt. 168) be GRANTED-IN-PART and DENIED-IN-PART as follows: The excessive force and denial of post-arrest medical care claims alleged against Anderson, Ogden, Simington, and Helser remain; Wood's state law claims be dismissed; and Wood's claim against Mason County be dismissed, but Wood be granted leave to file an amended complaint as to claims against Mason County.

The Court also recommends Defendant Garland and Gorang's Motion for Judgment on the Pleadings (Dkt. 169) be GRANTED-IN-PART and DENIED-IN-PART as follows: Wood's claim of denial of post-arrest medical care alleged against Garland and Gorang remain and Wood's excessive force and state law claims alleged against Garland and Gorang be dismissed.

Finally, the Court has screened the claims against Defendants Merritt and the City of Bremerton and finds the excessive force and state law claims against Merritt and the claims against the City of Bremerton should be dismissed. However, the claim of denial of post-arrest medical care alleged against Merritt remains and Wood should be granted leave to file an amended complaint as to claims against the City of Bremerton.

The Court notes that any amended complaint will act as a complete substitute for the previous Complaint. Therefore, Wood must include all defendants and claims that remain in this case and must exclude all previously dismissed claims from any amended complaint.

1    Objections to this Report and Recommendation, if any, should be filed with the Clerk and

2 served upon all parties to this suit not later than **fourteen (14) days** from the date on which this

3 Report and Recommendation is signed. Failure to file objections within the specified time may

4 affect your right to appeal. Objections should be noted for consideration on the District Judge's

5 motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may

6 be filed by **the day before the noting date**. If no timely objections are filed, the matter will be

7 ready for consideration by the District Judge on **May 15, 2025**.

8    Dated this 30th day of April, 2025.

9

10    David W. Christel
      United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 23